**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Eastern _____ District of New York _____
(State)

Case number (*If known*): _____ Chapter 11

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/20

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

1. **Debtor's name**

   Amsterdam House Continuing Care Retirement Community, Inc.

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

   The Amsterdam at Harborside
   The Harborside
   Harborside Legacy Fund
   Harborside Legacy Foundation

3. **Debtor's federal Employer Identification Number (EIN)**

   1 1 – 3 7 1 1 7 6 4

4. **Debtor's address**

   Principal place of business

   300    E. Overlook
   Number    Street

   _____

   Port Washington    NY    11050
   City    State    ZIP Code

   Nassau
   County

   Mailing address, if different from principal place of business

   _____    _____
   Number    Street

   _____
   P.O. Box

   _____    _____    _____
   City    State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   _____    _____
   Number    Street

   _____

   _____    _____    _____
   City    State    ZIP Code

5. **Debtor's website (URL)**

   https://theamsterdamatharborside.com/

| Debtor | Amsterdam House Continuing Care Retirement Community, Inc. | Case number *(if known)*_____ |
|---|---|---|
| | Name | |

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☑ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply:*

☑ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

<u>6</u>  <u>2</u>  <u>3</u>  <u>3</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check* **all** *that apply*:

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| Debtor | Amsterdam House Continuing Care Retirement Community, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☐ No

☑ Yes.  District  Eastern District of New York   When 07/22/2014   Case number 8-14-73348-ast
MM / DD / YYYY

District _____  When _____  Case number _____
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes.  Debtor _____   Relationship _____

District _____   When _____
MM / DD / YYYY

Case number, if known _____

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number      Street

_____

_____
City                    State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

**Statistical and administrative information**

| Debtor | Amsterdam House Continuing Care Retirement Community, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

| 13. Debtor's estimation of available funds | Check one: |
|---|---|
| | ☑ Funds will be available for distribution to unsecured creditors. |
| | ☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

| 14. Estimated number of creditors | ☐ 1-49 | ☑ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|---|
| | ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| | ☐ 200-999 | | |

| 15. Estimated assets | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☑ $100,000,001-$500 million | ☐ More than $50 billion |

| 16. Estimated liabilities | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☑ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| 17. Declaration and signature of authorized representative of debtor | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
|---|---|
| | I have been authorized to file this petition on behalf of the debtor. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 06/14/2021
       MM / DD / YYYY

✗ /s/ _____    James Davis
Signature of authorized representative of debtor    Printed name

Title  President and Chief Executive Officer

Debtor     Amsterdam House Continuing Care Retirement Community, Inc.     Case number (if known)_____
           Name

**18. Signature of attorney**     ✗ _____     Date     06/14/2021
                                    Signature of attorney for debtor                MM   / DD / YYYY

                                    Thomas R. Califano, Esq.
                                    _____
                                    Printed name
                                    Sidley Austin LLP
                                    _____
                                    Firm name
                                    787        Seventh Ave
                                    _____
                                    Number     Street
                                    New York                              NY       10019
                                    _____      _____   _____
                                    City                                 State     ZIP Code

                                    (212) 839-5300                       tom.califano@sidley.com
                                    _____      _____
                                    Contact phone                        Email address

                                    2286144                              New York
                                    _____      _____
                                    Bar number                           State

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**www.nyeb.uscourts.gov**

**STATEMENT PURSUANT TO LOCAL**
**BANKRUPTCY RULE 1073-2(b)**

**DEBTOR(S)**: Amsterdam House Continuing Care Retirement Community, Inc. **CASE NO.**: 21-_____

       Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor (or any other petitioner) hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

**[NOTE:** Cases shall be deemed "Related Cases" for purposes of E.D.N.Y. LBR 1073-1 and E.D.N.Y. LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases: (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one or more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).**]**

☐ **NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.**

☒ **THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:**

1. **CASE NO.:** 14-73348     **JUDGE:** Alan S. Trust     **DISTRICT/DIVISION:** E.D.N.Y.

**CASE STILL PENDING: (YES/NO):** No    *[If closed]* **Date of closing:** January 30, 2015

**CURRENT STATUS OF RELATED CASE:** Confirmed
                    **(Discharged/awaiting discharge, confirmed, dismissed, etc.)**

**MANNER IN WHICH CASES ARE RELATED** *(Refer to NOTE above)*: Debtor is the same

**REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES:** Land, buildings, and improvements affiliated with the property located at
300 E Overlook, Port Washington, New York  11050

2. **CASE NO.:** _____     **JUDGE:** _____     **DISTRICT/DIVISION:** _____

**CASE STILL PENDING: (YES/NO):** _____ *[If closed]* **Date of closing:** _____

**CURRENT STATUS OF RELATED CASE:** _____
                    **(Discharged/awaiting discharge, confirmed, dismissed, etc.)**

**MANNER IN WHICH CASES ARE RELATED** *(Refer to NOTE above)*: _____

**REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES:** _____
_____

**[OVER]**

**DISCLOSURE OF RELATED CASES (cont'd)**

3.  **CASE NO.:** _____    **JUDGE:** _____    **DISTRICT/DIVISION:** _____

**CASE STILL PENDING: (YES/NO):** _____    *[If closed]* Date of closing: _____

**CURRENT STATUS OF RELATED CASE:** _____
(Discharged/awaiting discharge, confirmed, dismissed, etc.)

**MANNER IN WHICH CASES ARE RELATED** *(Refer to NOTE above)*: _____

**REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES:** _____

_____

**NOTE: Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not be eligible to be debtors. Such an individual will be required to file a statement in support of his/her eligibility to file.**

**TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:**

I am admitted to practice in the Eastern District of New York (Y/N):  Y_____

**CERTIFICATION (to be signed by pro-se debtor/petitioner or debtor/petitioner's attorney, as applicable):**

I certify under penalty of perjury that the within bankruptcy case is not related to any case now pending or pending at any time, except as indicated elsewhere on this form.

_____
**Signature of Debtor's Attorney**

_____
**Signature of Pro-se Debtor/Petitioner**

300 E. Overlook
**Mailing Address of Debtor/Petitioner**

Port Washington, New York 11050
**City, State, Zip Code**

_____
**Email Address**

(516) 472-6636
**Area Code and Telephone Number**

**Failure to fully and truthfully provide all information required by the E.D.N.Y. LBR 1073-2 Statement may subject the debtor or any other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the dismissal of the case with prejudice.**

**NOTE:** Any change in address must be reported to the Court immediately IN WRITING. Dismissal of your petition may otherwise result.

## OFFICER'S CERTIFICATE
### June 9, 2021

I, James Davis, being the duly appointed President and Chief Executive Officer of Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Amsterdam at Harborside ("The Harborside"), hereby certify as follows:

1. I am a duly qualified and elected President and Chief Executive Officer of The Harborside and, as such, I am familiar with the facts herein certified and I am duly authorized to certify the same on behalf of The Harborside;

2. Attached hereto is a true, correct, and complete copy of the resolutions of the Board of Directors of The Harborside, duly adopted and approved on June 7, 2021, in accordance with The Harborside's corporate organizational documents; and

3. Such resolutions have not been amended, altered, annulled, rescinded, modified or revoked since their adoption and remain in full force and effect as of the date hereof. There exist no subsequent resolutions relating to the matters set forth in the resolutions attached hereto.

**IN WITNESS WHEREOF**, the undersigned has executed this certificate as of the 9th day of June, 2021.

Name: James Davis
President & CEO, Amsterdam House
Continuing Care Retirement
Community, Inc.

1

## RESOLUTIONS OF THE BOARD OF DIRECTORS OF
## AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.

Effective as of this 7th day of June, 2021, pursuant to a special meeting of the board of directors (the "Board of Directors") of Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Amsterdam at Harborside, a New York not-for-profit corporation ("The Harborside"), on the same date, at which a quorum was present, upon a motion duly made and seconded and acting pursuant to The Harborside's organizational documents, the members of the Board of Directors took the following actions and adopted the following recitals and resolutions:

**WHEREAS**, with the benefit of the advice and recommendations of their legal and financial advisors (the "Advisors"), the Board of Directors has determined to authorize the filing the Chapter 11 Case (defined below);

**WHEREAS**, the Board of Directors has considered presentations made by, and has reviewed and had the opportunity to ask questions about the materials presented by, the management (the "Management") and the Advisors of The Harborside regarding the liabilities, liquidity, and prospects of The Harborside, the strategic alternatives available to The Harborside, and the impact of the foregoing on The Harborside's business;

**WHEREAS**, the Board of Directors has had the opportunity to consult with the Management and the Advisors of The Harborside to fully consider, and has considered, the strategic alternatives available to The Harborside;

**WHEREAS**, the Board of Directors has supervised and directed the Management and Advisors of The Harborside in evaluating its strategic options, including a refinancing of funded debt and asset sales;

**WHEREAS,** The Harborside has engaged in good faith negotiations with UMB Bank, N.A., as trustee (the "Trustee"), Amsterdam Continuing Care Health System, Inc. ("ACCHS"), its sole member, and certain holders of the Bonds (as defined in the Plan Support Agreement (defined below)) (the "Consenting Holders"), regarding the terms of a comprehensive restructuring as set forth in that certain Plan Support Agreement by and among The Harborside, ACCHS, the Trustee, and the Consenting Holders, in the form annexed hereto as **Exhibit A** (as may be amended in accordance with its terms, the "Plan Support Agreement");

**WHEREAS**, the Board of Directors, with the advice of the Management and Advisors, on behalf of The Harborside, has determined that it is in the best interests of The Harborside, its creditors, and other parties-in-interest that petitions be filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") by The Harborside seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS**, the Board of Directors has determined that it is in the best interest of The Harborside and its creditors, employees, residents, and other parties in interest to approve the following resolutions:

## Commencement of Chapter 11 Case

**NOW, THEREFORE, BE IT RESOLVED**, that the Board of Directors has determined, after consultation with the Management and the Advisors of The Harborside, that it is desirable and in the best interests of The Harborside, its creditors, and other parties-in-interest that petitions be filed with the Bankruptcy Court by The Harborside seeking relief under the provisions of the Bankruptcy Code; and be it further

**RESOLVED**, that any officer of The Harborside (each, an "**Authorized Person**"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, and file with the Bankruptcy Court, in the name and on behalf of The Harborside, and under its corporate seal or otherwise, all plans, petitions, schedules, statements, motions, lists, applications, pleadings, papers, affidavits, declarations, orders and other documents (collectively, the "**Chapter 11 Filings**") (with such changes therein and additions thereto as any such Authorized Person may deem necessary, appropriate or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person deemed such changes to meet such standard); provided that prior to authorizing any Chapter 11 Filing which is materially inconsistent with the Plan Support Agreement (including the attachments thereto), such Authorized Person will secure the Board of Director's approval thereof; and be it further

**RESOLVED**, that any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of The Harborside, to take and perform any and all further acts and deeds that such Authorized Person deems necessary, appropriate, or desirable in connection with The Harborside's chapter 11 case (the "**Chapter 11 Case**") or the Chapter 11 Filings, including, without limitation, (i) the payment of fees, consent payments, indemnities, taxes and other expenses such Authorized Person deems necessary, appropriate, or desirable, and (ii) negotiating, executing, delivering, performing and filing any and all additional documents, schedules, statements, lists, papers, agreements, certificates and/or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Chapter 11 Case with a view to the successful prosecution of the Chapter 11 Case (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); provided that prior to taking any such actions which are materially inconsistent with the Plan Support Agreement (including the attachments thereto), such Authorized Person will secure the Board of Director's approval thereof; and be it further

## Plan Support Agreement

**RESOLVED**, that the Board of Directors desires that The Harborside consummate a restructuring of The Harborside's capital structure, as a debtor and debtor-in-possession in the Chapter 11 Case, a restructuring of The Harborside's funded debt, and a proposed compromise of The Harborside's unsecured obligations, each in accordance with the terms and conditions set forth in the term sheet attached as **Exhibit 1** to the Plan Support Agreement annexed as **Exhibit A** hereto; and be it further

**RESOLVED**, that the Authorized Persons be, and they hereby are, authorized to take all actions (including, without limitation, to negotiate and execute any agreements, documents, or certificates) necessary to a consummate the transactions contemplated thereby in connection with the Chapter 11 Case and that The Harborside's performance of its obligations under the Plan Support Agreement hereby is, in all respects, authorized and approved; provided that prior to taking any such actions which are materially inconsistent with the Plan Support Agreement (including the attachments thereto), such Authorized Person will secure the Board of Director's approval thereon; and be it further

### Retention of Advisors

**RESOLVED**, that, in connection with the Chapter 11 Case, any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of The Harborside, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, on behalf of The Harborside, that such Authorized Person deems necessary, appropriate or advisable in connection with, or in furtherance of, the Chapter 11 Case, with a view to the successful prosecution of the Chapter 11 Case (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard); and be it further

**RESOLVED**, that the law firm of Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, is hereby retained and employed as attorneys for The Harborside in the Chapter 11 Case; and be it further

**RESOLVED**, that the investment banking firm of RBC Capital Markets, LLC is hereby retained and employed as investment bankers for The Harborside in the Chapter 11 Case; and be it further

### General

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Person, any director or any member of The Harborside in the name and on behalf of The Harborside in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects; and be it further

**RESOLVED**, that the Management and Authorized Persons be, and each of them hereby is, authorized and directed, by and on behalf of The Harborside, to take or cause to be taken all such further actions, to execute and deliver or cause to be executed and delivered all such further instruments, certificates, undertakings and documents, and to incur all such fees and expenses as in their judgment shall be necessary, appropriate or advisable in order to carry into effect the purpose and intent of the foregoing resolutions; and

**RESOLVED**, that the Board of Directors has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as required by the governance documents of The Harborside, or hereby waives any right to have received such notice.

*       *       *       *       *

## Exhibit A

**Plan Support Agreement**

## PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (this "Plan Support Agreement") is made and entered into as of May [ ], 2021 (the "PSA Effective Date") by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Borrower"), Amsterdam Continuing Care Health System, Inc. as sole member of the Borrower ("ACCHS") and each of the undersigned holders of Bonds (as defined herein) (the "Consenting Holders", and together with the Borrower, each a "Party" and collectively the "Parties").

## RECITALS

A.    Nassau County Industrial Development Agency (the "Issuer") issued its (a) Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2014A (the "Series 2014A Bonds"), (b) Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2014B (the "Series 2014B Bonds") and (c) Continuing Care Retirement Community Excess Cash Flow Revenue Bonds (Amsterdam at Harborside Project) Series 2014C (the "Series 2014C Bonds" and together with the Series 2014A Bonds and Series 2014B Bonds, the "Bonds") pursuant to the Indenture of Trust dated November 1, 2014, as amended by the First Amendment to Indenture of Trust dated January 22, 2020 (as so amended, the "Indenture") between the Issuer and UMB Bank, N.A., as trustee (the "Trustee") for the purpose of refinancing that certain continuing care retirement community known as "The Amsterdam at Harborside" (the "Project").

B.    Simultaneously therewith, the Issuer and the Borrower entered into that certain Installment Sale Agreement dated November 1, 2014, as amended by the First Amendment to the Installment Sale Agreement dated January 22, 2020 (as so amended, the "Installment Sale Agreement") to provide for, among other things, payment of an installment purchase price for the acquisition of the Project by the Borrower, such amounts to be paid at such times and in such amounts to pay principal of and interest on the Bonds when due.

C.    As security for its obligations under the Installment Sale Agreement, the Borrower granted the Trustee a security interest against the Mortgaged Property and a security interest against substantially all of the Borrower's assets pursuant to that Mortgage, Assignment of Lease and Rents and Security Agreement dated November 1, 2014 (the "Mortgage") and the Trust Estate pursuant to the Indenture (all such collateral so granted, the "Collateral").[1]  The Indenture, the Installment Sale Agreement, the Bonds, the Mortgage and any other document or agreement delivered as security for, or in respect to, the Bonds or the Borrower's obligations under any of such documents are collectively referred to herein as the "Bond Documents."

---

[1]    Capitalized terms not otherwise defined herein have the meaning ascribed to such term in the Bond Documents (as defined below).

D.      Each Consenting Holder holds debt arising out of, or related to, the Bonds and the Consenting Holders hold debt, in aggregate, arising out of or related to the Bonds equal to at least [ ] ([ ]%) of the principal amount of the Bonds outstanding.

E.      Defaults, potential defaults or Events of Default have occurred (or will occur) under the Bond Documents.

F.      The Borrower desires to implement a restructuring (the "Restructuring") of its financial obligations with respect to the Bonds and its other outstanding obligations on the terms and conditions set forth in the restructuring term sheet (the "Term Sheet") attached hereto as **Exhibit 1**.

G.      The Parties have agreed to the Restructuring, solely on the terms and conditions outlined in the Term Sheet.

H.      The Borrower intends to implement the Restructuring by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") commencing a case (the "Chapter 11 Case") in the United States Bankruptcy Court for the Eastern District of New York, Central Islip Division (the "Bankruptcy Court") no later than June 18, 2021 (the "Outside Petition Date").

I.      Each Party has reviewed, or has had the opportunity to review, this Plan Support Agreement and the Term Sheet with the assistance of professional legal advisors of its own choosing.

## STATEMENT OF AGREEMENT

In consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Preliminary Statements. The statements set forth in the recitals are incorporated herein and form an integrated part of this Plan Support Agreement, subject to such modifications and amendments as may be permitted pursuant to Section 14 hereof.

2.      Effectiveness of Plan Support Agreement. Upon the execution of this Plan Support Agreement by the Parties, this Plan Support Agreement will constitute the legally binding and enforceable agreement of the Parties, subject to the applicable provisions of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and the terms of the Term Sheet, effective as of the PSA Effective Date.

3.      Agreements of the Borrower. Consistent with the Borrower's business judgment and the exercise of its fiduciary duties, the following are material covenants and conditions to the agreements contained herein:

(a)      The Borrower shall provide drafts of the following documents (collectively, the "Bankruptcy Documents") to ACCHS, the Consenting Holders and the Trustee on or before May 24, 2021, ACCHS, the Consenting Holders and

the Trustee shall provide any comments on the Bankruptcy Documents on or before June 3, 2021, and the Bankruptcy Documents shall be in form and substance satisfactory to the Consenting Holders, ACCHS, and the Trustee by June 11, 2021:[2]

    i)       Chapter 11 Petition with related documents, including: (i) officer's certificate, (ii) board resolutions, (iii) top 30 unsecured creditors list, (iv) Bankruptcy Rules 1007(a)(1) and 7007.1 corporate ownership statement, and (v) Rule 1007(a)(3) list of equity security holders;

    ii)      "First Day" Hearing Agenda;

    iii)     Emergency Case Management Procedures Motion and proposed Order;

    iv)     Notices of Final Hearing and Objection Deadline for Motions Granted on Interim Basis;

    v)      Emergency Motion for Interim and Final Orders (i) Authorizing the Debtors to Use the Cash Collateral of UMB Bank, N.A., as Trustee, (ii) Providing UMB Bank, N.A. as Trustee, Adequate Protection, (iii) Modifying the Automatic Stay, and (iv) Granting Related Relief (the "Cash Collateral Motion") and the proposed interim and final orders (together, the "Cash Collateral Orders", which Cash Collateral Orders shall be drafted by the Trustee;

    vi)     Plan of Reorganization (the "Plan");

    vii)    Disclosure Statement with respect to the Plan of Reorganization (the "Disclosure Statement");

    viii)   Organizational Chart;

    ix)     Emergency Motion to (a) Approve Maintenance of Certain Pre-Petition Bank Accounts and Cash Management System, and (b) Continue Use of Existing Checks and Business Forms and proposed interim and final orders;

    x)      Emergency Motion for an Order (a) Authorizing (1) Payment of Pre-Petition Employee Wages, Salaries, and Payroll Taxes, (2) Reimbursement of Employees for Pre-Petition Business Expenses; and (b) Honoring of Existing Benefit Plans and Policies at the Debtor's Discretion in the Ordinary Course of Business and proposed Order;

---

[2] [NTD – Exact titles of documents to be updated prior to execution.]

xi)     Emergency Motion to Authorize (a) Continued Liability, Property, and Other Insurance Programs, and (b) Payment of All Obligations in Respect thereof and proposed Order;

xii)    Emergency Motion for an Order (a) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (b) Determining Adequate Assurance of Payment for Future Utility Services, and (c) Establishing Procedures for Determining Requests for Additional Adequate Assurance of Payment for Post-petition Utility Services and proposed Order;

xiii)   Emergency Motion for Order Authorizing the Debtor to Pay Pre-petition Sales, Use, and Other Taxes And Related Obligations and proposed Order;

xiv)    Emergency Motion of the Debtor for an Order Authorizing the Debtor to Escrow Certain Entrance Fees and Refund Certain Entrance Fees and proposed Order;

xv)     Emergency Motion to (a) Implement Certain Notice Procedures; and (b) Implement Procedures to Maintain and Protect Resident Information and proposed Order;

xvi)    Motion for Entry of an Order Authorizing the Debtor to Assume the Plan Support Agreement and proposed Order;

xvii)   Application to Approve Agreement with Kurtzman Carson Consultants, LLC ("KCC") and Appoint KCC as Claims, Noticing, Soliciting, and Balloting Agent, supporting declaration and proposed Order; and

xviii)  Emergency Motion Under 11 U.S.C. § 333 to Excuse Appointment of a Patient Care Ombudsman and proposed Order.

(b)     The Borrower shall make all commercially reasonable efforts to file the Chapter 11 Case, contemporaneously with the Bankruptcy Documents, no later than the Outside Petition Date (the date on which the Chapter 11 Case and Bankruptcy Documents are actually filed shall be referred to herein as the "Petition Date").

(c)     The Borrower shall take all reasonably necessary steps in seeking to obtain from the Bankruptcy Court an order confirming the Plan reasonably acceptable in form and substance to ACCHS, the Consenting Holders and the Trustee (the "Confirmation Order") on or before August 25, 2021.

(d)    The Borrower shall take all reasonably necessary steps in seeking to obtain from the Bankruptcy Court an order authorizing the assumption of this Plan Support Agreement under Section 365 of the Bankruptcy Code.

(e)    The Plan effective date shall occur on or before September 8, 2021 (the "Effective Date").

(f)    The Borrower shall take no action inconsistent with the Restructuring, the transactions contemplated thereby, or the expeditious confirmation and consummation of such transactions.

(g)    Subject to the exercise of its fiduciary duties, the Borrower shall not file a petition under the Bankruptcy Code or seek any similar relief without providing the Trustee and the Consenting Holders at least five (5) business days' written notice thereof.

(h)    In the event the Borrower proposes a plan of reorganization that does not comply with this Plan Support Agreement or that constitutes a Support Agreement Termination Event (as defined below), the Borrower will not assert that the Consenting Holders or the Trustee have expressly or impliedly supported, endorsed, or otherwise agreed to any financial information, including any projections or liquidation analysis, included in the Bankruptcy Documents or have otherwise agreed to or acknowledged any facts set forth in the Bankruptcy Documents.

(i)    The Borrower will not:

    i)    incur any further indebtedness with priority over the Bonds without the Trustee's consent;

    ii)    transfer any assets other than in the ordinary course of its business other than miscellaneous assets not necessary for the operations of the Project; and

    iii)    take any action that would result in entry of an order terminating, whether in whole or in part, the Borrower's exclusive right to file a Chapter 11 plan pursuant to Section 1121 of the Bankruptcy Code.

4.    Agreements of Consenting Holders.

(a)    Restrictions on Transfers. Until this Plan Support Agreement has been terminated in accordance with Section 10, each Consenting Holder shall not voluntarily sell, transfer, or assign any of its Bonds or Claims or any option thereon or any right or interest (voting or otherwise) therein unless the transferee thereof (i) has already executed this Plan Support Agreement or (ii) agrees in writing by executing the form of Joinder attached hereto as **Exhibit 2** to be bound, for the

benefit of the Parties, by all of the terms of this Plan Support Agreement. Subject to applicable securities and bankruptcy law, this Plan Support Agreement shall in no way be construed to preclude any Consenting Holder or any of its respective subsidiaries or affiliates from acquiring additional Bonds; *provided, however*, that any such additional Bonds acquired by such Consenting Holder or any subsidiary or affiliate thereof shall automatically be deemed to be subject to the terms of this Plan Support Agreement.

(b)     <u>Voting on the Plan and Releases</u>.    Subject to the terms and conditions of this Plan Support Agreement, and so long as this Plan Support Agreement has not been terminated, and further provided that the Disclosure Statement approved by the Bankruptcy Court contains information substantially similar to that set forth in the Disclosure Statement filed as part of the Bankruptcy Documents, each Consenting Holder will vote all claims that it holds or as to which it has voting authority with respect to the Bonds outstanding, the Claims, and all other claims, rights, or interests that exist against the Borrower to accept the Plan, <u>provided</u> it is in a form substantially similar to that set forth in the Plan filed as part of the Bankruptcy Documents and shall not opt out of the releases contained in the Plan, provided such releases are substantially similar to those set forth in the Plan filed as part of the Bankruptcy Documents.

(c)     <u>Support</u>.    So long as this Plan Support Agreement has not been terminated, absent the consent of the Borrower, each Consenting Holder will not, and shall direct the Trustee not to:

      i)     support or encourage, directly or indirectly, any financial restructuring or sale of assets concerning the Borrower or its assets, other than the Restructuring;

      ii)     take any action inconsistent with the Term Sheet, the transactions contemplated hereby or thereby, or the expeditious confirmation and consummation of such transactions;

      iii)     vote against the Plan or otherwise agree, consent, or provide any support, to any other Chapter 11 plan or other restructuring or sale or liquidation of assets concerning the Borrower or its assets, other than the Restructuring;

      iv)     object to or otherwise commence any proceeding to oppose or alter the Plan or any of the terms of the Restructuring (or any other document filed in furtherance of, and that is consistent with the Restructuring); or

      v)     direct the Trustee to take any action or otherwise act in a manner contrary to the terms of this Plan Support Agreement.

(d)    Each Consenting Holder commits to purchase the Series 2021A Bonds (as defined in the Term Sheet) in the respective amounts set forth on **Schedule 2_**, subject to the following terms and conditions:

> i)    Definitive documentation in form and substance acceptable to such Consenting Holder regarding the issuance of the Series 2021A Bonds, including without limitation, covenants, make-whole redemption price and terms;
>
> ii)    No Support Agreement Termination Event has occurred; and
>
> iii)    No material adverse change regarding the operations or financial condition of the Borrower has occurred.

(e)    Adequate Information; Compliance with Section 1125(g) of the Bankruptcy Code. Each Consenting Holder has obtained "adequate information" (within the meaning of that phrase for purposes of Section 1125(a)(1) of the Bankruptcy Code) regarding the Restructuring and that the Borrower has provided all material, relevant information that the Consenting Holder has requested in advance of executing this Plan Support Agreement. Additionally, for purposes of this Plan Support Agreement, the solicitation of its support of the Plan in accordance with the terms and conditions hereof complies with applicable law and that each Consenting Holder was solicited in a manner complying with applicable law.

(f)    Appearing in the Bankruptcy Court. Notwithstanding any provision in this Plan Support Agreement to the contrary, nothing in this Plan Support Agreement shall be construed to prohibit any Party from appearing as a party-in-interest in any matter to be adjudicated in the Bankruptcy Court so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Plan Support Agreement and the Restructuring and are not for the purpose of hindering, delaying, or preventing the consummation of the Restructuring.

(g)    Direct the Trustee. To the extent necessary, each Consenting Holder will direct the Trustee to take actions consistent with this Plan Support Agreement.

(h)    Cash Collateral Order. The Trustee shall provide a draft of the interim Cash Collateral Order to the Borrower and ACCHS on or before May 24, 2021, the Borrower and ACCHS shall provide comments on the interim Cash Collateral Order on or before June 3, 2021 and the interim Cash Collateral Order shall be in form and substance satisfactory to the Parties by June 11, 2021.

(i)    Plan Releases. The obligations of the Consenting Holders hereunder are contingent upon the inclusion of customary releases in the Plan from the other Parties to this Plan Support Agreement in favor of the Consenting Holders and the Trustee.

(j)    <u>Trustee Documents</u>.    The Trustee shall provide drafts of the following documents (the "<u>Trustee Documents</u>") to the Borrower and ACCHS on or before May 24, 2021 and the Trustee Documents shall be in form and substance satisfactory to the Parties by June 11, 2021:[3]

      i)    2021 Indenture;

      ii)    2021 Deed of Trust; and

      iii)    2021 Loan Agreement (collectively with the documents listed in (i) through (iv) above, the "<u>Plan Support Documents</u>").

5.    <u>Agreements of ACCHS</u>.

(a)    <u>Support</u>. ACCHS shall make all commercially reasonable efforts to assist and support the Debtor in consummating the Restructuring and obtaining confirmation of the Plan, in each case in accordance with the Term Sheet, including without limitation by taking all commercially reasonable actions to consummate the transactions described in the section of the Term Sheet titled "Contribution by Sponsor" in accordance with the terms thereof, contingent upon the inclusion of customary releases from the other Parties to this Plan Support Agreement and from all other parties under the Plan of Reorganization and Confirmation Order, subject to any opt-outs in accordance therewith, in favor of ACCHS in the Plan. So long as this Plan Support Agreement has not been terminated, absent the consent of the Borrower and Trustee, ACCHS will not:

      i)    support or encourage, directly or indirectly, any financial restructuring or sale of assets concerning the Borrower or its assets, other than the Restructuring;

      ii)    take any action inconsistent with the Term Sheet, the transactions contemplated hereby or thereby, or the expeditious confirmation and consummation of such transactions;

      iii)    vote against the Plan or otherwise agree, consent, or provide any support, to any other Chapter 11 plan or other restructuring or sale or liquidation of assets concerning the Borrower or its assets, other than the Restructuring;

      iv)    object to or otherwise commence any proceeding to oppose or alter the Plan or any of the terms of the Restructuring (or

---

[3] [NTD –Exact titles of documents to be updated prior to execution.]

any other document filed in furtherance of, and that is consistent with the Restructuring); or

v)      otherwise act in a manner contrary to the terms of this Plan Support Agreement.

6.      <u>Representations and Warranties of the Borrower</u>. The Borrower represents and warrants to ACCHS and the Consenting Holders that the following statements are true, correct, and complete as of the date hereof:

(a)      it has all requisite corporate or similar authority to enter into this Plan Support Agreement and, subject to any necessary Bankruptcy Court approval, carry out the transactions contemplated hereby and perform its obligations contemplated hereunder, and the execution and delivery of this Plan Support Agreement and the performance of the Borrower's obligations hereunder have been duly authorized by all necessary corporate, limited liability, partnership, or other similar action on its part;

(b)      the execution, delivery, and, subject to any necessary Bankruptcy Court approval, performance by such Borrower of this Plan Support Agreement does not and shall not violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries;

(c)      the execution, delivery, and performance by such Borrower of this Plan Support Agreement does not and shall not require any registration or filing with, consent or approval of, notice to, or other action to, with or by, any federal, state, or governmental authority or regulatory body;

(d)      to the best of its knowledge, after reasonable diligence, the information provided in connection with the Restructuring and this Plan Support Agreement did not and does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; and

(e)      this Plan Support Agreement is, and after the Petition Date but subject to the assumption of this Plan Support Agreement pursuant to Section 365, of the Bankruptcy Code shall be, a legally valid and binding obligation of the Borrower, enforceable in accordance with its terms.

7.      <u>Representations and Warranties of the Consenting Holders</u>. Each Consenting Holder represents and warrants to the Borrower that the following statements are true, correct, and complete as of the date hereof:

(a)      as of the date hereof, such Consenting Holder either (i) is the sole legal or beneficial owner of a principal amount of the Bonds outstanding as set forth on **Schedule 1** hereto, and all related claims, rights, powers, and causes of action

arising out of or in connection with or otherwise relating to such Bonds or the Bond Documents (collectively, the "Claims"), or (ii) has the power and authority to bind the legal and beneficial owner(s) of such Bonds and Claims to the terms of this Plan Support Agreement and, in either case, such Consenting Holder has full power and authority to vote on and consent to such matters concerning such Bonds outstanding and such Claims and to exchange, assign and transfer such Bonds and Claims.

(b)     it has all requisite corporate, partnership, limited liability company, or similar authority to enter into this Plan Support Agreement and perform its obligations contemplated hereunder, and the execution and delivery of this Plan Support Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, limited liability, partnership, or other similar action on its part;

(c)     the execution, delivery, and performance by the undersigned of and under this Plan Support Agreement does not and shall not violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries;

(d)     the execution, delivery, and performance by the undersigned of and under this Plan Support Agreement does not and shall not require any registration or filing with, consent or approval of, notice to, or other action to, with or by, any federal, state or governmental authority or regulatory body; and

(e)     this Plan Support Agreement is the legally valid and binding obligation of such Consenting Holder, enforceable in accordance with its terms.

8.     Representations and Warranties of ACCHS. ACCHS represents and warrants to the Borrower and the Consenting Holders that the following statements are true, correct, and complete as of the date hereof:

(a)     it has all requisite corporate, partnership, limited liability company, or similar authority to enter into this Plan Support Agreement and perform its obligations contemplated hereunder, and the execution and delivery of this Plan Support Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, limited liability, partnership, or other similar action on its part;

(b)     the execution, delivery, and performance by the undersigned of and under this Plan Support Agreement does not and shall not violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries;

(c)     the execution, delivery, and performance by the undersigned of and under this Plan Support Agreement does not and shall not require any registration or filing with, consent or approval of, notice to, or other action to, with or by, any federal, state or governmental authority or regulatory body; and

(d)    this Plan Support Agreement is the legally valid and binding obligation of ACCHS, enforceable in accordance with its terms.

9.    <u>Alternative Transactions</u>.    From and after execution of this Plan Support Agreement until it is terminated pursuant to Section 10 hereof, and subject to the provisions of Section 130 hereof, neither the Borrower nor any of its officers, directors, employees, agents, representatives, or affiliates (including any investment banker or financial advisor retained by the Borrower) shall, directly or indirectly, encourage, solicit, or initiate any inquiry or proposal from, or encourage, solicit, or initiate any negotiations with, or solicit or initiate any discussions with any person or entity (other than the Consenting Holders and the Trustee or an affiliate, associate, representative or agent of such parties) concerning any potential sale of the Borrower or restructuring of the Borrower or a transaction that is similar to, in conflict with or in substitution of the Restructuring pursuant to the terms hereof (each, an "<u>Alternative Transaction</u>"), or agree to endorse or take any other action to facilitate any Alternative Transaction, unless the Borrower has obtained the prior written consent of the Consenting Holders holding all rights related to or otherwise having voting authority with respect to 75% of the principal amount of the Bonds held collectively by the Consenting Holders who are signatory hereto (the "<u>Requisite Consenting Holders</u>").

10.    <u>Termination of Support Agreement</u>. Upon the occurrence of any Support Agreement Termination Event, this Plan Support Agreement shall be deemed terminated upon three business days' written notice from the non-breaching Party to the breaching Party. In the event of any such termination, all Parties shall be immediately relieved of any obligations hereunder. If the Chapter 11 Case has been filed prior to such occurrence, such notice may be provided as part of a motion for relief from the automatic stay; *__provided__* that nothing herein shall be deemed to require a motion for relief from the automatic stay to effect such termination. Notwithstanding the above or anything else in this Plan Support Agreement to the contrary, upon termination of this Plan Support Agreement, any Consenting Holder shall be entitled as of right to change or withdraw its vote in favor of the Plan and be relieved from all obligations of a Consenting Holder under this Plan Support Agreement (collectively, a "<u>Withdrawal</u>"), with prior written notice thereof to the Borrower and, if applicable, compliance with Rule 3018 of the Federal Rules of Bankruptcy Procedure. The occurrence of any one or more of the following shall constitute a "<u>Support Agreement Termination Event</u>":

(a)    Failure by the Parties hereto to agree to the form and substance of any of the Plan Support Documents or the Bankruptcy Documents by June 11, 2021;

(b)    Any of the Bankruptcy Documents is withdrawn, materially modified or amended (except in the case of a document which is an interim order, by replacement with a final order that would otherwise meet the requirements of a Bankruptcy Document, or with the consent of the Consenting Holders and/or the Trustee);

(c)    The Borrower fails to file the Bankruptcy Documents on the Petition Date;

(d)    The Petition Date does not occur on or before the Outside Petition Date;

(e)    The Borrower:

      i)    files or supports confirmation of, or fails to actively oppose confirmation of, a plan of reorganization that requests or would result in a withdrawal, modification, or amendment of the Plan, or that, as to any provision of the Plan, materially adversely affects the Consenting Holders;

      ii)    files a motion, pleading, objection, lawsuit, or administrative or adversary proceeding (or takes any action in support of such a motion or pleading filed by another party) in the Bankruptcy Court or other court, or otherwise assists in any of the foregoing, that requests or would result in a withdrawal, modification, or amendment (including in the case of document which is an interim order, by replacement with a final order) of the Restructuring; or

      iii)    files a motion, complaint, application, or other request which is inconsistent with the Term Sheet and seeks to disallow, subordinate, or limit in any way the Bonds held by the Consenting Holders, the Claims, or the liens of the Consenting Holders and/or the Trustee, or seeking entry of an order by the Bankruptcy Court disallowing, subordinating, or limiting in any way the Bonds, Claims, or liens of the Consenting Holders and/or the Trustee, or asserting a claim against any Consenting Holder and/or the Trustee to avoid any transfer or obligation, or seeking any other monetary or equitable relief from or against any Consenting Holder and/or the Trustee.

(f)    Following the Petition Date, the Bankruptcy Court has:

      i)    entered an order materially staying, reversing, vacating, materially amending or modifying the Cash Collateral Orders (other than the replacement of the interim order with the final order) without the prior written approval of the Trustee, or fails to enter the interim Cash Collateral Order on or before the date that is eight (8) days after the Petition Date, or the final Cash Collateral Order on or before the date that is thirty (30) days after the Petition Date on such terms as set out in the Cash Collateral Orders or by such later date as is agreed to in writing by the Requisite Consenting Holders;

12

ii)     not approved the Disclosure Statement on or before July [ ], 2021, or by such later date as is agreed to in writing by the Requisite Consenting Holders;

iii)    not entered the Confirmation Order on or before August 25, 2021, or by such later date as is agreed to in writing by the Requisite Consenting Holders;

iv)     entered an order denying confirmation of the Plan;

v)      entered an order pursuant to Section 1104 of the Bankruptcy Code appointing a trustee or appointing an examiner with powers beyond the duty to investigate and report (as set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code), including, without limitation, to operate and manage the Borrower's business (unless the motion resulting in such order was filed or supported by the Trustee), or the Borrower files a motion, application or other pleading consenting to or acquiescing in any such appointment;

vi)     entered an order dismissing the Chapter 11 Case or an order pursuant to Section 1112 of the Bankruptcy Code converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

vii)    entered an order suspending the Chapter 11 Case under Section 305 of the Bankruptcy Code;

viii)   entered an order in the Chapter 11 Case, over the objection of the Trustee, approving financing pursuant to Section 364 of the Bankruptcy Code that (i) would grant an additional security interest or a lien that is equal or senior to that of the Trustee on any Collateral, or (ii) would grant to any party other than the Trustee a super priority administrative claim that is senior or equal to that granted to the Trustee under the Cash Collateral Orders; or

ix)     granted relief that is inconsistent with this Plan Support Agreement or the Plan or that would result in a withdrawal, modification, or amendment of the Restructuring that is contrary to the Term Sheet and that has a material adverse effect on the Consenting Holders; *provided* that such relief has not resulted from any action or inaction by the Consenting Holders or the Trustee.

(g)    The Effective Date of the Plan shall not have occurred on or before September 8, 2021 or by such later date as is agreed to by the Requisite Consenting Holders;

(h)    An injunction, judgment, order, decree, ruling, or charge shall have been entered that prevents consummation of the Restructuring and that remains in effect for longer than thirty (30) days;

(i)    There is a mutual written agreement to terminate this Plan Support Agreement by the Parties;

(j)    Failure by the Borrower to comply with any obligations under this Plan Support Agreement, other than those set forth in this Section 100 (which shall be an automatic termination upon three business days' written notice), and such failure is not cured within five (5) business days after written notice thereof has been given to the Borrower;

(k)    Failure by the Borrower to comply with any obligations under this Section 100; and

(l)    Failure by any of the Consenting Holders to comply with any of its obligations under this Plan Support Agreement, and such failure is not cured within five (5) business days after written notice thereof has been given by the Borrower to such Consenting Holder and the Trustee.

11.    <u>Effect of Termination</u>.  Upon termination of this Plan Support Agreement, all obligations hereunder, shall terminate and shall be of no force and effect.

12.    <u>Cooperation; Further Assurances; Acknowledgment; Definitive Documents</u>. The Parties shall cooperate with each other and shall coordinate its activities (to the extent practicable) in respect of all commercially reasonable actions necessary to consummate the Restructuring.  The Parties further agree to execute and deliver such other instruments and to perform such commercially reasonable acts, in addition to the matters herein specified, as may be appropriate or necessary, from time to time, to effectuate the Restructuring.

13.    <u>Fiduciary Out</u>.  Nothing herein shall prevent a determination by the Borrower, made in good faith and following consultation with external counsel, subsequent to the date hereof that its compliance with any covenant, obligation or agreement contained in this Plan Support Agreement or the Plan Term Sheet is no longer consistent with its fiduciary duties under applicable law.  Upon such determination, the Borrower shall give written notice thereof to the other Parties, in which event this Plan Support Agreement shall, notwithstanding anything herein to the contrary, be deemed automatically terminated 14 business days after such notice is provided to the Parties.  Nothing herein shall prejudice any Party from challenging such exercise of the Borrower's fiduciary duties, including without limitation, seeking a determination from a court of competent jurisdiction that the actions or inactions by the Borrower described in this Section constitute an unlawful exercise of its fiduciary duties, or the Borrower from opposing such challenge.

14. _Amendments._ This Plan Support Agreement may not be modified, amended or supplemented except in a writing signed by the Parties.

15. GOVERNING LAW; JURISDICTION. THIS PLAN SUPPORT AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY CONFLICT OF LAWS PROVISIONS THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION. BY ITS EXECUTION AND DELIVERY OF THIS PLAN SUPPORT AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY LEGAL ACTION, SUIT, OR PROCEEDING AGAINST IT WITH RESPECT TO ANY MATTER UNDER, OR ARISING OUT OF OR IN CONNECTION WITH, THIS PLAN SUPPORT AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT RENDERED IN ANY SUCH ACTION, SUIT, OR PROCEEDING, SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT IN THE STATE OF NEW YORK HAVING JURISDICTION, AND BY EXECUTION AND DELIVERY OF THIS PLAN SUPPORT AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY ACCEPTS AND SUBMITS ITSELF TO THE EXCLUSIVE JURISDICTION OF EACH SUCH COURT, GENERALLY AND UNCONDITIONALLY, WITH RESPECT TO ANY SUCH ACTION, SUIT OR PROCEEDING; PROVIDED, THAT AFTER THE PETITION DATE THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY ISSUES RELATING TO THIS PLAN SUPPORT AGREEMENT PROVIDED THAT THE BANKRUPTCY COURT SHALL FOLLOW APPLICABLE CHOICE OF LAW RULES.

16. _Specific Performance._ It is understood that the Borrower and ACCHS shall only be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any breach by the Consenting Holders of this Plan Support Agreement. Such remedies shall be the exclusive remedies available to the Borrower, ACCHS or their representatives for a breach of this Plan Support Agreement.

17. _Survival_. Notwithstanding any sale of the Bonds outstanding or Claims in accordance with Section 4(a) of this Plan Support Agreement, the agreements and obligations herein shall survive such sale and shall continue in full force and effect for the benefit of the Borrower and the Consenting Holders in accordance with the terms hereof, and any purchaser of such Bonds and/or Claims shall be bound by and subject to the terms of this Plan Support Agreement.

18. _Headings_. The headings of the Sections, paragraphs, and subsections of this Plan Support Agreement are inserted for convenience only, and shall not affect the interpretation hereof.

19. _Successors and Assigns; Severability; Several Obligations._ This Plan Support Agreement is intended to bind and inure to the benefit of the Parties and its respective successors, assigns, heirs, executors, administrators, and representatives. The invalidity or unenforceability at any time of any provision hereof shall not affect or diminish in any way

the continuing validity and enforceability of the remaining provisions hereof. The agreements, representations, and obligations of the Consenting Holders under this Plan Support Agreement are, in all respects, several and not joint.

20. <u>No Third-Party Beneficiaries</u>. Unless expressly stated herein, this Plan Support Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third party beneficiary hereof.

21. <u>Consideration</u>. No consideration shall be due or paid to the Consenting Holders and the Trustee for agreement of the Consenting Holders to support the Restructuring and to vote in favor of the Plan in accordance with the terms and conditions of this Plan Support Agreement, other than the Borrower's agreement to pursue the Restructuring and to file, pursue confirmation of, and implement the Plan in accordance with the terms and conditions of this Plan Support Agreement, which the Parties acknowledge is fair and sufficient consideration to support the Parties' respective agreements hereunder.

22. <u>Prior Negotiations; Entire Agreement</u>. This Plan Support Agreement constitutes the entire agreement of the Parties related to the Restructuring, and supersedes all other prior negotiations with respect to the subject matter hereof, except that the Parties acknowledge that all Bond Documents shall continue in full force and effect.

23. <u>Counterparts</u>. This Plan Support Agreement and any amendments, joinders (including the joinder in the form of **Exhibit 2** hereto), consents, or supplements hereto, may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement. Facsimile or scanned signatures on this Plan Support Agreement shall be treated as originals for all purposes.

24. <u>Construction</u>. This Plan Support Agreement shall be deemed to have been negotiated and prepared at the joint request, direction, and construction of the Parties, and at arm's length and shall be interpreted without favor to any Party.

25. <u>Time of the Essence</u>. Time shall be of the essence with respect to each and every of the various undertakings and obligations set forth in this Plan Support Agreement.

26. <u>Notices</u>. All notices, demands, requests, consents, approvals, and other communications ("<u>Notice</u>" or "<u>Notices</u>") hereunder shall be in writing and delivered by (i) courier or messenger service, (ii) express or overnight mail, (iii) electronic mail, or (iv) by registered or certified mail, return receipt requested and postage prepaid, addressed to the respective parties as follows:

**If to Borrower:**

Amsterdam House Continuing Care
Retirement Community, Inc.
300 East Overlook
Port Washington, NY 11050

Attn: James Davis

**Copy to:**

Amsterdam House Continuing Care
Retirement Community, Inc.
1060 Amsterdam Avenue
New York, NY 10025
Attn: Pamela Landman

**And:**

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attn: Thomas Califano

**If to Trustee:**

UMB Bank, N.A.
Corporate Trust Services
120 Sixth Street South, Suite 1400
Minneapolis, MN 55402
Attn: Virginia Housum

**Copy to:**

Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111
Attn: Daniel S. Bleck

**And:**

Consenting Bondholders
[See Schedule 1 Attached Hereto]

**If to ACCHS:**

Amsterdam Continuing Care Health System, Inc.
[●]
[●]
Attn: [●]

**Copy to:**

Moritt Hock & Hamroff LLP
1407 Broadway, 39th Floor
New York, NY 10018
Attn: Ted A. Berkowitz

or to such other addresses as any Party may hereafter designate. Notice by courier or messenger service or by express or overnight mail shall be effective upon receipt. Notice by electronic mail shall be effective upon receipt. Notice by mail shall be complete at the time of deposit in the United States mail system, but any right or duty to do any act or make any response within any prescribed period or on a date certain after the service of such Notice given by mail shall be, without further action by any Party, automatically extended three (3) days.

27. _Reservation of Rights_. Except as expressly provided in this Plan Support Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of any Party to protect and preserve its rights, remedies, and interests, including its Claims. Nothing herein shall be deemed an admission of any kind. If the transactions contemplated herein are not consummated, or this Plan Support Agreement is terminated for any reason, the Parties hereto fully reserve any and all of their rights. Except as required by the Bankruptcy Code to assume, perform, or disclose this Plan Support Agreement, pursuant to Rule 408 of the Federal Rule of Evidence, any applicable state rules of evidence, and any other applicable law, foreign or domestic, this Plan Support Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

28. _Nature of Consenting Holder Obligations_. The obligations of each Consenting Holder hereunder shall be several, and not joint with the obligations of any other Consenting Holder herein, and no Consenting Holder shall be responsible in any way for the performance of the obligations of any other Consenting Holder hereunder. Nothing herein or in any other agreement or document, and no action taken by any Consenting Holder pursuant hereto or thereto, shall be deemed to constitute the Consenting Holders as a group, a partnership, an association, a joint venture or any other kind of entity, or to create a presumption that the Consenting Holders are in any way acting in concert or as a group with respect to such obligations or the transaction contemplated by this Plan Support Agreement. Each Consenting Holder shall be entitled to protect and enforce its rights, including without limitation, the rights arising out of this Plan Support Agreement, and it shall not be necessary for any other Consenting Holder to be joined as an additional party in the proceeding for such purpose.

29. _Automatic Stay_. The Borrower acknowledge that after any commencement of the Chapter 11 Case, the giving of notice of termination by any Party pursuant to this Plan Support Agreement or a withdrawal shall not be a violation of the automatic stay of Section 362 of the Bankruptcy Code.

30. _Support Agreement Not a Plan_. This Plan Support Agreement does not constitute a plan of reorganization or confirmation thereof under the Bankruptcy Code. The

Plan will not become effective unless and until the Bankruptcy Court enters an order confirming the Plan and the Plan becomes effective in accordance with its terms.  This Plan Support Agreement is not intended to constitute a solicitation or acceptance of the Plan.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

## SCHEDULE 1
"CONSENTING HOLDERS"

| Consenting Bondholder | Principal Amount of Bonds Owned |
|---|---|
| [Holder contact information] | |

## Schedule 2
## "BOND PURCHASE AMOUNTS"

## EXHIBIT 1

TERM SHEET

This Term Sheet and the undertakings contemplated herein are subject in all respects to the necessary consents and approvals and negotiation, execution and delivery of mutually acceptable definitive documentation between Amsterdam Continuing Care Retirement Community, Inc. (the "*Borrower*"), Amsterdam Continuing Care Health System, Inc. (the "*Sponsor*"), the Issuer, the Trustee, and the members of an informal steering committee comprised of bondholders currently holding ___ % of the outstanding aggregate principal amount of Series 2014 Bonds (the "*Steering Committee*"). This Term Sheet is not and shall not be deemed to be a solicitation of votes for the acceptance of the Plan or any plan of reorganization.

**THE TERM SHEET IS BEING PROVIDED AS PART OF A COMPREHENSIVE COMPROMISE AND SETTLEMENT, EACH ELEMENT OF WHICH IS CONSIDERATION FOR THE OTHER ELEMENTS AND AN INTEGRAL ASPECT OF THE PROPOSED RESTRUCTURING OF THE SERIES 2014 BONDS. THE TERM SHEET IS SUBJECT TO FEDERAL RULE OF EVIDENCE 408 AND COMPARABLE STATE STATUTES. NOTHING IN THE TERM SHEET SHALL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION OR A WAIVER, OR A COMMITMENT ON BEHALF OF THE BORROWER, SPONSOR, STEERING COMMITTEE OR THE TRUSTEE AND EACH STATEMENT CONTAINED HEREIN IS MADE WITHOUT PREJUDICE, SOLELY FOR SETTLEMENT PURPOSES, WITH A FULL RESERVATION AS TO ALL RIGHTS, REMEDIES AND DEFENSES OF BORROWER, SPONSOR, THE TRUSTEE, THE STEERING COMMITTEE, AND ALL OTHER PARTIES. THE TERMS HEREOF ARE SUBJECT TO NECESSARY REGULATORY APPROVALS. IN PARTICULAR, THIS TERM SHEET IS CONDITIONED UPON AND SUBJECT TO CONTINUATION OF AND ALLOWANCE OF THE BORROWER AND SPONSOR TO RETAIN CURRENT HEAL GRANT FUNDS IN THEIR POSSESSION.**

| | |
|---|---|
| **New Money Bonds (Series 2021A Bonds)** | Holders of the existing bonds will purchase up to $40,710,000 in Series 2021A Bonds. To the extent permitted by bond counsel, the bonds will be issued as tax-exempt bonds. Series 2021A Bonds will fund (i) $20,835,000 repayment of refund obligations, (ii) $9 million for the MLR, and (iii) the remainder shall fund a debt service reserve fund, a contingency and cost of issuance. |
| | Series 2021A Bonds will accrue interest at the fixed rate of 9.0% per annum. To the extent permitted by bond counsel, as much of the principal amount of the Series 2021A Bonds will be issued tax exempt as possible and the term sheet will be revised to reflect such structure. The Series 2021A Bonds will mature 20 years from issuance. Payments on the Series 2021A Bonds shall be: (i) interest only for the first 5 years (through FY2025) due and payable semi-annually; and (ii) principal will start amortizing beginning FY2026 over a 15 year period, and structured to level debt service, provided that the Series 2021A Bonds will be subject to mandatory redemption from Excess Cash as discussed below. The Series 2021A Bonds will subject to optional redemption at par in year 10 (the "Par Call Date"). The Series 2021A Bonds shall also be subject to optional redemption at a make-whole redemption price from year 5 to the Par Call Date. |
| | The Series 2021A Bonds will be secured by a first priority lien on all assets of Amsterdam, except the Funded LSA (as defined below) and have payment priority. |
| **Series 2014A/B Bonds Exchanged for** | The Series 2014A Bonds and Series 2014B Bonds (in the current aggregate principal amount of $139,917,130) will be exchanged for new Series 2021B Bonds in a principal amount equal to 91% of the current principal amount. |

| Series        2021B Bonds and Series 2021C Bonds | The Series 2021B Bonds will be subordinate in payment and security to the Series 2021A Bonds. |
|---|---|

The Series 2021B Bonds will be subordinate in payment and security to the Series 2021A Bonds.

Interest on the Series 2021B Bonds will be reduced from the current fixed blended rate of 6.613% to a fixed rate of 5.0% per annum. The interest rate shall increase by 25 basis points upon the earlier of (i) incurrence of indebtedness for Phase II, (ii) 20 years from the Effective Date and (iii) the Borrower has 150 DCOH above the MLR Requirement. The 2021B Bonds shall mature 37 years from issuance. Payments on the Series 2021B Bonds shall be: (i) interest only for the first 20 years due and payable semi-annually; and (ii) principal will start amortizing beginning FY2040, provided that the Series 2021B Bonds will be subject to mandatory redemption from Excess Cash (as discussed below) after the Series 2021A Bonds are paid in full. The Series 2021B Bonds will not be subject to optional redemption for the first 5 years. The Series 2021B Bonds will be subject to optional redemption in the following years at the following prices:

| Year | Redemption Price, plus accrued and unpaid interest |
|---|---|
| 6 | 107% |
| 7 | 106 |
| 8 | 105 |
| 9 | 105 |
| 10 | 105 |
| 11 | 105 |
| 12 | 105 |
| 13 | 104 |
| 14 | 103 |
| 15 | 102 |
| 16 | 101 |
| 17 and thereafter | 100 |

| Series        2014C Bonds | The Series 2014C Bonds will be cancelled in whole without any payment or consideration. The accreted value of the Series 2014C Bonds as of February 25, 2021 is $67,472,967.62. |
|---|---|
| Contribution   by Sponsor | The Sponsor shall contribute $9 million to the Borrower (the "***Sponsor Contribution***"). |

The Sponsor shall contribute $9 million to the Borrower (the "***Sponsor Contribution***").

The Sponsor Contribution shall be funded on the effective date of the Borrower's confirmed chapter 11 plan of reorganization containing terms and conditions acceptable to the Sponsor's Board, including without limitation, third party releases of the Sponsor, Sponsor's Board and its affiliates, professionals, employees and advisors.

Approximately $3,600,000 of the Sponsor Contribution will come from the proceeds of the closing of the sale of the real property located in the hamlet of Mount Sinai within the Town of Brookhaven in Suffolk County, New York, subject to the Sponsor obtaining New York State Department of Health approval for the use of such funds to make the Sponsor Contribution.

The Sponsor Contribution shall be subject to the following conditions: (i) the transaction is subject to approval by NCIDA (or any other bond issuer); (ii) the transaction is subject to the Sponsor obtaining all requisite state and local approvals, including, without limitation, the Charites Bureau of the New York State Attorney

| | |
|---|---|
| | General, the New York State Department of Health and the New York State Department of Financial Services, if required; and (iii) the Subvention Certificate evidencing the $3,000,000 subvention from Sponsor to the Amsterdam issued on March 31, 2004 will survive the restructuring, subordinate to all the Series 2021 Bonds. <br><br> Sponsor shall also provide an additional $9 million LSA (the "*Funded LSA*") for not less than a 10-year period, which shall be reserved for making payments to keep the Borrower in regulatory compliance, including with respect to payments of unpaid entrance fee refunds and satisfaction of minimum liquidity reserve requirements that may become due in the future.  The Funded LSA shall not be subject to the liens of the Trustee. <br><br> The Funded LSA is contingent on the closing of the sale of substantially all of the assets of Amsterdam Nursing Home and will be fully funded in cash from such closing. |
| **Covenants** | The Series 2021 Bond Documents shall contain such other provisions and covenants as are in the existing Series 2014 Bond Documents, subject to changes agreed upon by the parties.  With respect to additional indebtedness for Phase II, the Series 2021 Bond Documents shall contain the same requirements except that the 70% deposit requirement shall be 50% and such additional debt will be on parity with the Series 2021B Bonds. |

## **EXHIBIT 2**

JOINDER

## FORM OF JOINDER

This Joinder to the Plan Support Agreement, dated as of [＿＿＿＿＿] [＿], 2021, by and among the Borrower and the Consenting Holders (the "Support Agreement"), is executed and delivered by ＿＿＿＿＿ (the "Joining Party") as of ＿＿＿＿＿, 2021. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Support Agreement.

1. Agreement to be Bound. The Joining Party hereby agrees to be bound by all of the terms of the Plan Support Agreement (and all exhibits and annexes thereto), attached to this Joinder as **Annex I** (as such Plan Support Agreement, exhibits and annexes may be hereafter amended, restated, or otherwise modified from time to time). The Joining Party shall hereafter be deemed to be a "Consenting Holder" and a "Party" for all purposes under the Plan Support Agreement.

2. Representations and Warranties. With respect to the Bonds set forth below its name on the signature page hereof and all related claims, rights, and causes of action arising out of or in connection with or otherwise relating to such Bonds, the Joining Party hereby makes to the Borrower the representations and warranties of the Consenting Holders set forth in the Plan Support Agreement.

3. Notices. For purposes of notices and other communications to be delivered to the Joining Party the relevant addresses and facsimile numbers are set forth below.

4. Governing Law. This Joinder shall be governed by and construed in accordance with the laws of the state of New York, without regard to any conflict of laws provisions that would require the application of the law of any other jurisdiction.

\* \* \* \* \*

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

**Fill in this information to identify the case:**

Debtor name  Amsterdam House Continuing Care Retirement Community, Inc.

United States Bankruptcy Court for the: Eastern     District of  NY
(State)

Case number (If known): _____

☐ Check if this is an amended filing

<u>Official Form 204</u>

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Resident # 10026 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,364,632.50 |
| 2 | Resident # 10014 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,360,333.18 |
| 3 | Resident # 10003 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,285,200.00 |
| 4 | Resident # 10005 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,240,359.20 |
| 5 | United States Small Business Administration 409 3rd Street SW Washington, DC 20416 | | Paycheck Protection Program (PPP) Loan | Contingent | | | $1,156,304.00 |
| 6 | Resident # 10017 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,133,481.60 |
| 7 | Resident # 10009 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,094,752.00 |
| 8 | Resident # 10015 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,075,612.80 |

2696939607.2

Debtor    Amsterdam House Continuing Care Retirement Community, Inc.    Case number *(if known)*_____
Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Resident # 10016 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,061,650.00 |
| 10 | Resident # 10021 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,055,237.60 |
| 11 | Resident # 10008 [REDACTED] | [REDACTED] | Pending Refund to Former Resident | | | | $1,048,728.80 |
| 12 | Resident # 10020 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,023,779.20 |
| 13 | Resident # 10019 [REDACTED] | [REDACTED] | Pending Refund to Former Resident | | | | $1,016,592.00 |
| 14 | Resident # 10023 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,015,987.20 |
| 15 | Resident # 10004 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $1,003,666.50 |
| 16 | Resident # 10007 [REDACTED] | [REDACTED] | Pending Refund to Former Resident | | | | $1,003,468.26 |
| 17 | Resident # 10012 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $988,631.20 |
| 18 | Resident # 10010 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $950,300.00 |
| 19 | Resident # 10027 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $941,615.72 |

2696958907.2

| Debtor | Amsterdam House Continuing Care Retirement Community, Inc. | | Case number *(if known)* | | |
|---|---|---|---|---|---|
| | Name | | | | |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 20 | Resident # 10024 [REDACTED] | [REDACTED] | Pending Refund to Former Resident | | | | $938,669.00 |
| 21 | Resident # 10013 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $918,355.30 |
| 22 | Resident # 10028 [REDACTED] | [REDACTED] | Pending Refund to Former Resident | | | | $918,247.20 |
| 23 | Resident # 10018 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $917,643.85 |
| 24 | Resident # 10022 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $904,369.60 |
| 25 | Resident # 10000 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $902,116.00 |
| 26 | Resident # 10025 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $883,709.30 |
| 27 | Resident # 10002 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $883,709.30 |
| 28 | Resident # 10011 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $878,137.60 |
| 29 | Resident # 10006 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $869,567.57 |
| 30 | Resident # 10001 [REDACTED] | [REDACTED] | Entrance Fee Liability | Contingent, Unliquidated | | | $855,212.67 |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case and this filing:</strong></td></tr>
<tr><td colspan="2">Debtor Name:  Amsterdam House Continuing Care Retirement Community, Inc.</td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the:  Eastern    District of  New York<br>(State)</td></tr>
<tr><td colspan="2">Case number (<em>If known</em>):  _____</td></tr>
</table>

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B*: Assets–Real and Personal Property (Official Form 206A/B)

☐  *Schedule D*: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐  *Schedule E/F*: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐  *Schedule G*: Executory Contracts and Unexpired Leases (Official Form 206G)

☐  *Schedule H*: Codebtors (Official Form 206H)

☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐  *Amended Schedule* _____

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐  *Other document that requires a declaration* _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    06/14/2021              x 
          MM / DD / YYYY          Signature of individual signing on behalf of debtor

                          JAMES DAVIS
                          Printed name

                          PRES / CEO
                          Position or relationship to debtor

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1] | Case No.  21-_____ (___) |
| Debtor. |  |

**LIST OF EQUITY SECURITY HOLDERS
AND CORPORATE OWNERSHIP STATEMENT**

Pursuant to rules 1007(a)(3) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following is a list of holders of equity securities of the above-captioned debtor and a statement regarding its corporate ownership.

1.      The Debtor is a not-for-profit corporation that is exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

2.      The Debtor has no outstanding "equity securities" as defined in section 101(6) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), no "equity security holders" as defined in section 101(17) of the Bankruptcy Code, and no equity interests for purposes of Federal Rules of Bankruptcy Procedure 1007 and 7007.1 and Rule 1073-3 of the Local Bankruptcy Rules for the Eastern District of New York; however, Amsterdam Continuing Care Health System, Inc. is the sole member of the Debtor under the New York Not-for-Profit Corporation Law.

---

[1] The last four digits of the Debtor's federal tax identification number are 1764.  The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

---

**Fill in this information to identify the case and this filing:**

Debtor Name:   Amsterdam House Continuing Care Retirement Community, Inc.

United States Bankruptcy Court for the: __Eastern__ District of __New York__
(State)

Case number (*If known*): _____

---

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B*: Assets–Real and Personal Property (Official Form 206A/B)
- ☐ *Schedule D*: Creditors Who Have Claims Secured by Property (Official Form 206D)
- ☐ *Schedule E/F*: Creditors Who Have Unsecured Claims (Official Form 206E/F)
- ☐ *Schedule G*: Executory Contracts and Unexpired Leases (Official Form 206G)
- ☐ *Schedule H*: Codebtors (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ *Amended Schedule* _____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☒ *Other document that requires a declaration*   List of Equity Security Holders and Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    06/14/2021              x _____
              MM / DD / YYYY                  Signature of individual signing on behalf of debtor

                                        JAMES DAVIN
                                        Printed name

                                        PRES / CEO
                                        Position or relationship to debtor

---