Thomas R. Califano
William E. Curtin
Shafaq Hasan
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: tom.califano@sidley.com
      wcurtin@sidley.com
      shafaq.hasan@sidley.com

Jackson T. Garvey
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: jgarvey@sidley.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE<br>RETIREMENT COMMUNITY, INC.,[1]<br><br>            Debtor. | Chapter 11<br><br>Case No. 21-71095 (AST) |

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated:  July 12, 2021

---

[1]The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

# TABLE OF CONTENTS

**SECTION 1.** DEFINITIONS AND INTERPRETATION ...................................................1

    **1.1.** *Definitions*. ....................................................................................................1
    **1.2.** *Interpretation, Application of Definitions and Rules of Construction* .....................13
    **1.3.** *Computation of Time* ...........................................................................................13
    **1.4.** *Controlling Document* .........................................................................................13

**SECTION 2.** ADMINISTRATIVE AND PRIORITY CLAIMS ..................................13

    **2.1.** *Administrative Expense Claims* ...........................................................................13
    **2.2.** *Priority Tax Claims* ...............................................................................................15
    **2.3.** *United States Trustee Statutory Fees* .....................................................................15

**SECTION 3.** CLASSIFICATION OF CLAIMS AND INTERESTS ...........................15

**SECTION 4.** TREATMENT OF CLAIMS AND INTERESTS ...................................16

    **4.1.** *Other Priority Claims (Class 1)* ...........................................................................16
    **4.2.** *Other Secured Claims (Class 2)* ...........................................................................16
    **4.3.** *Bond Claims (Class 3)* ...........................................................................................16
    **4.4.** *General Unsecured Claims (Class 4)* .....................................................................17
    **4.5.** *Resident Refund Claims (Class 5)* .........................................................................17
    **4.6.** *Intercompany Claims (Class 6)* .............................................................................17
    **4.7.** *Interests in Amsterdam (Class 7)* ...........................................................................17

**SECTION 5.** CRAMDOWN. ...........................................................................................17

**SECTION 6.** MEANS FOR IMPLEMENTATION OF THIS PLAN...........................18

    **6.1.** *Refinancing Transaction* .......................................................................................18
    **6.2.** *2021 Bond Documents* ...........................................................................................18
    **6.3.** *Series 2021A Bonds* ...............................................................................................19
    **6.4.** *Series 2021B Bonds* ...............................................................................................19
    **6.5.** *Interest on 2014 A Bonds and 2014 B Bonds* .......................................................20
    **6.6.** *Series 2014C Bonds* ...............................................................................................20
    **6.7.** *Member Contribution* .............................................................................................21
    **6.8.** *Reserves* ..................................................................................................................21
    **6.9.** *No Further Corporate Action* ...............................................................................21
    **6.10.** *Continued Corporate Existence* ...........................................................................22
    **6.11.** *Vesting of Assets in the Reorganized Debtor* .......................................................22
    **6.12.** *Cancellation of Agreements, Security Interests, and Other Interests*........................22
    **6.13.** *Exemption from Registration Requirements; Trading of Securities* .....................23
    **6.14.** *Organizational Documents* ...................................................................................23
    **6.15.** *Exemption from Certain Transfer Taxes and Recording Fees*..............................23
    **6.16.** *Board and Officers of the Reorganized Debtor* ...................................................23
    **6.17.** *Directors and Officers Insurance Policies* ...........................................................24
    **6.18.** *Other Insurance Policies* .......................................................................................24
    **6.19.** *Preservation of Rights of Action* ...........................................................................24
    **6.20.** *Corporate Action* ...................................................................................................25
    **6.21.** *Effectuating Documents; Further Transactions* ...................................................25

i

**SECTION 7.** ASSUMPTION AND REJECTION OF Executory Contracts ...............................25

    **7.1.**    *Assumption and Rejection of Executory Contracts* ..................................25
    **7.2.**    *Inclusiveness* ...............................................................................................26
    **7.3.**    *Cure of Defaults* ........................................................................................26
    **7.4.**    *Claims Based on Rejection of Executory Contracts and Unexpired Leases* .............26
    **7.5.**    *Indemnification* ..........................................................................................27
    **7.6.**    *Full Release and Satisfaction* ...................................................................27
    **7.7.**    *Reservation of Rights* ...............................................................................27
    **7.8.**    *Nonoccurrence of Effective Date* ..............................................................28

**SECTION 8.** PROVISIONS REGARDING DISTRIBUTIONS ..........................................28

    **8.1.**    *Timing and Calculation of Amounts to Be Distributed* ...............................28
    **8.2.**    *Distributions by Disbursing Agent* ..........................................................28
    **8.3.**    *Interest and Penalties on Claims* .............................................................28
    **8.4.**    *Manner of Cash Payment* ........................................................................28
    **8.5.**    *Withholding and Reporting Requirements* ................................................28
    **8.6.**    *Setoff and Recoupment* ............................................................................29
    **8.7.**    *Undeliverable or Non-Negotiated Distributions* ......................................29
    **8.8.**    *Claims Paid by Third Parties* ..................................................................29
    **8.9.**    *Claims Payable by Third Parties* .............................................................29
    **8.10.**    *Applicability of Insurance Policies* .........................................................29
    **8.11.**    *Minimum Distributions* ............................................................................30
    **8.12.**    *Distributions on Account of Bond Claims* ................................................30

**SECTION 9.** PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ....................................................................................................30

    **9.1.**    *Allowance of Claims* ................................................................................30
    **9.2.**    *Claims Administration* .............................................................................30
    **9.3.**    *Claims Estimation* ....................................................................................30
    **9.4.**    *Adjustment to Claims Without Objection* .................................................30
    **9.5.**    *Time to File Objections to Claims* ............................................................31
    **9.6.**    *Disallowance of Claims* ...........................................................................31
    **9.7.**    *Amendments to Claims* ............................................................................31
    **9.8.**    *No Distributions Pending Allowance* .......................................................31
    **9.9.**    *Distributions After Allowance* .................................................................31
    **9.10.**    *No Applicability to Bond Claims* ..............................................................32
    **9.11.**    **.**    This Section 9 shall not apply to the Bond Claims. ..................................32

**SECTION 10.** CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE .......................................................................................................................32

    **10.1.**    *Conditions Precedent to Confirmation* ....................................................32
    **10.2.**    *Conditions Precedent to the Effective Date* .............................................32
    **10.3.**    *Waiver of Conditions* ...............................................................................33
    **10.4.**    *Effect of Failure of Conditions* ...............................................................33

**SECTION 11.** EFFECT OF CONFIRMATION .............................................................33

    **11.1.**    *General* ....................................................................................................33

| | | |
|---|---|---|
| **11.2.** | ***Releases by the Debtor*** | 34 |
| **11.3.** | ***Releases by Holders of Claims*** | 35 |
| **11.4.** | ***Exculpation*** | 37 |
| **11.5.** | ***Discharge of Claims and Interests*** | 37 |
| **11.6.** | ***Injunction*** | 38 |
| **11.7.** | ***Binding Nature of Plan*** | 39 |
| **11.8.** | ***Protection Against Discriminatory Treatment*** | 39 |
| **11.9.** | ***Preservation of Privilege and Defenses*** | 39 |
| **11.10.** | ***Injunction Against Interference with Plan*** | 39 |
| **11.11.** | ***Release of Liens*** | 39 |

**SECTION 12.** Modification, Revocation or Withdrawal of this Plan ...... 40

| | | |
|---|---|---|
| **12.1.** | ***Modification and Amendments*** | 40 |
| **12.2.** | ***Effect of Confirmation on Modifications*** | 40 |
| **12.3.** | ***Revocation or Withdrawal of this Plan*** | 40 |

**SECTION 13.** RETENTION OF JURISDICTION ...... 40

**SECTION 14.** MISCELLANEOUS PROVISIONS ...... 42

| | | |
|---|---|---|
| **14.1.** | ***Section 1125(e) Good Faith Compliance*** | 42 |
| **14.2.** | ***Substantial Consummation*** | 42 |
| **14.3.** | ***Dissolution of the Creditors' Committee*** | 42 |
| **14.4.** | ***Plan Supplement*** | 42 |
| **14.5.** | ***Further Assurances*** | 42 |
| **14.6.** | ***Exhibits Incorporated*** | 42 |
| **14.7.** | ***Inconsistency*** | 43 |
| **14.8.** | ***No Admissions*** | 43 |
| **14.9.** | ***Reservation of Rights*** | 43 |
| **14.10.** | ***Successors and Assigns*** | 43 |
| **14.11.** | ***Entire Agreement*** | 43 |
| **14.12.** | ***Notices*** | 43 |
| **14.13.** | ***Severability*** | 45 |
| **14.14.** | ***Governing Law*** | 45 |
| **14.15.** | ***Request for Confirmation*** | 45 |

## INTRODUCTION

Amsterdam House Continuing Care Retirement Community, Inc. d/b/a The Amsterdam at Harborside ("<u>Amsterdam</u>" or "the <u>Debtor</u>") proposes this first amended chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code for the resolution of outstanding claims against, and interest in, the Debtor.

Reference is made to the *Disclosure Statement for Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### 1.1.  *Definitions*.

The following terms used herein shall have the respective meanings below:

*"2014 A Bonds"* means those certain Nassau County Industrial Development Agency Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2014A issued pursuant to the 2014 Indenture.

*"2014 A and B Bonds"* means, collectively, the 2014 A Bonds and 2014 B Bonds.

*"2014 B Bonds"* means those certain Nassau County Industrial Development Agency Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2014B bonds issued pursuant to the 2014 Indenture.

*"2014 Bond Documents"* means, collectively, the 2014 Indenture, that certain Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of November 1, 2014 by and between the Debtor, the 2014 Issuer, and the 2014 Bond Trustee, and that certain Installment Sale Agreement, dated as of November 1, 2014 by and between the 2014 Issuer and the Debtor, together with any other document or agreement delivered as security for, or in respect to, the 2014 Bonds or the Debtor's obligations under any of such documents.

*"2014 Bond Obligations"* means the Debtor's obligations pursuant to the 2014 Bond Documents.

*"2014 Bond Trustee"* means UMB Bank, N.A., as successor bond trustee and successor master trustee pursuant to the 2014 Indenture.

*"2014 Bonds"* means, collectively, the 2014 A and B Bonds and 2014 C Bonds.

"*2014 C Bonds*" means those certain Nassau County Industrial Development Agency Continuing Care Retirement Community Excess Cash Flow Revenue Bonds (Amsterdam at Harborside Project) Series 2014C issued pursuant to the 2014 Indenture.

"*2014 Indenture*" means that certain Indenture of Trust dated as of November 1, 2014, between the 2014 Issuer and the 2014 Bond Trustee.

"*2014 Issuer*" means Nassau County Industrial Development Agency, in its capacity as the issuer under the 2014 Indenture.

"*2021 Bond Documents*" means the 2021 Indenture, 2021 Installment Sale Agreement, and 2021 Mortgage, each, substantially in the forms attached to the Disclosure Statement as **Exhibit C**, and all such other documents relating to the 2021 Bonds.

"*2021 Bond Trustee*" means UMB Bank, N.A., as bond trustee pursuant to the 2021 Indenture.

"*2021 Indenture*" means that certain Indenture of Trust by and between the 2021 Issuer and the Debtor, substantially in the form attached as Exhibit C to the Disclosure Statement.

"*2021 Installment Sale Agreement*" means that certain Installment Sale Agreement by and between the Issuer and the Debtor, substantially in the form attached as Exhibit C to the Disclosure Statement.

"*2021 Issuer*" means the Nassau County Industrial Development Agency, in its capacity as issuer pursuant to the 2021 Indenture.

"*2021 Mortgage*" means that certain Mortgage, Assignment of Leases and Rents and Security Agreement, substantially in the form attached as Exhibit C to the Disclosure Statement.

"*Accrued Professional Compensation Claim*" means, at any date, all accrued fees and reimbursable expenses for services rendered by a Retained Professional in the Chapter 11 Case through and including such date, to the extent such fees and expenses have not been previously paid whether under a retention order with respect to such Retained Professional or otherwise.  To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered an Accrued Professional Compensation Claim.

"*Administrative Expense Claim*" means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; (c) Claims for the value of any goods received by the Debtor within twenty (20) days before the Petition Date and Allowed in accordance with section 503(b)(9) of the Bankruptcy Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

"***Administrative Expense Claims Bar Date***" means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court; provided, however, that the deadline for Filing requests for payment of Administrative Expense Claims arising under section 503(b)(9) of the Bankruptcy Code will be the Claims Bar Date.

"***Admission Agreements***" shall have the meaning ascribed to such term in the Disclosure Statement.

"***Affiliate***" means, with respect to any Entity, an "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such entity were a debtor.

"***Allowed***" means, with reference to any Claim against the Debtor, a Claim (i) as to which no objection or request for estimation has been filed on or before the Claims Objection Bar Date; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtor or (c) pursuant to the terms of this Plan. An "Allowed Claim" shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law, other than with respect to the Bond Claims. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, the term "Allowed Claim" shall not, for purposes of Distributions under this Plan, include interest, fees (including attorneys' fees) costs or charges on such Claim from and after the Petition Date.

"***Assets***" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

"***Assumption Notice***" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice will include: (a) procedures for objecting to proposed assumptions of Executory Contracts; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

"***Assumption Schedule***" means the schedule of Executory Contracts which the Debtor will assume as of the Effective Date pursuant to the Confirmation Order.

"***Avoidance Actions***" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

"***Ballot***" means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

*"Bankruptcy Code"* means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over the Chapter 11 Case.

*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

**"Bar Date Order"** means the Order (A) Establishing Bar Dates Pursuant to Bankruptcy Rule 3003(c) and (B) Approving Form and Manner of Notice Thereof [Docket No. 39], entered by the Bankruptcy Court on June 17, 2021.

*"Bond Claims"* means any Claim arising from, or related to, the 2014 Bond Documents and the 2014 Bonds, including any and all outstanding principal, which is owed in the aggregate amount of $207,793,702.19, plus any and all accrued interest, fees (including, without limitation, professional fees), expenses, costs and other charges payable with respect to the 2014 Bonds, which Claims are Allowed pursuant to the Cash Collateral Order and under the terms of this Plan.

*"Business Day"* means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in New York, New York.

*"Cash"* means cash and cash equivalents including, without limitation, checks and wire transfers.

*"Cash Collateral Order"* means any order, whether interim or final, authorizing the use by the Debtor during the Chapter 11 Case of the cash collateral of the Trustee.

*"Causes of Action"* means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, asserted or which may be asserted by or on behalf of the Debtor and/or the Estate, including: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

*"Chapter 11 Case"* means the Debtor's chapter 11 case pending in the Bankruptcy Court under case number 21-71095 (AST).

*"Claim"* has the meaning set forth in section 101(5) of the Bankruptcy Code.

*"Claims and Noticing Agent"* means Kurtzman Carson Consultants LLC, in its capacity as claims and noticing agent for the Debtor.

*"Claims Bar Date"* means the deadline for filing Proofs of Claim, which unless established otherwise by Final Order of the Bankruptcy Court for a particular Claim (including Claims against the Debtor arising under Residency Agreements and the Bond Claims), will be (a) August 3, 2021, at 5:00 p.m. prevailing Eastern Time for all Entities other than Governmental Units or (b) December 13, 2021, at 5:00 p.m. prevailing Eastern Time for Governmental Units, in accordance with the Bar Date Order.

*"Claims Objection Bar Date"* means the deadline for objecting to a Claim, which will be the date that is the first Business Day following 90 days after the Effective Date, subject to extension by order of the Bankruptcy Court.

*"Claims Register"* means the official register of Claims and Interests maintained by the Claims and Noticing Agent.

*"Class"* means a class or category of Claims or Interests as classified and described in Section 3 of this Plan.

*"Collateral"* means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*"Confirmation Date"* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in the Chapter 11 Case.

*"Confirmation Hearing"* means the hearing(s) before the Bankruptcy Court on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

*"Confirmation Order"* means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code and approving the Disclosure Statement and the other solicitation materials in respect of this Plan.

*"Consenting Holders"* means, collectively, holders of the 2014 Bonds that are parties to the Plan Support Agreement, which parties hold, collectively, approximately seventy-three percent (73%) of the outstanding aggregate principal amount of all 2014 Bonds issued, and (b) any holder of 2014 Bonds that executes a joinder to the Plan Support Agreement pursuant to its terms.

*"Creditor"* means a Holder of a Claim.

"*Creditors' Committee*" means the statutory committee of unsecured creditors appointed by the Office of the United States Trustee pursuant to section 1102 of the Bankruptcy Code.

*"Cure"* or *"Cure Claim"* means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's defaults under an Executory Contract assumed by the

Debtor under sections 365 and 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

"*Cure/Assumption Objection Deadline*" means the date that is 14 days after the filing of the Assumption Schedule with the Plan Supplement and service of the Assumption Notice; provided that if any Executory Contract is added to the Assumption Schedule after the filing of the initial Assumption Schedule, then the Cure/Assumption Objection Deadline with respect to such Executory Contract will be 14 days after service of the amended Assumption Schedule with such modification.

"*Debtor*" means Amsterdam as debtor and Debtor in Possession, and includes the Estate.

"*Debtor in Possession*" means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

"*Deficiency Claim*" means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim, including without limitation the difference between the value of any property securing a Claim and the Allowed amount of such Claim, unless the Holder of such Claim validly elects under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

"*Definitive Documents*" means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (i) the motion seeking authority to use cash collateral and grant adequate protection and the Cash Collateral Orders to be entered by the Bankruptcy Court approving such motion and all security documents and other loan documents in connection therewith; (ii) this Plan (including all exhibits and supplements thereto); (iii) the Disclosure Statement and the other solicitation materials in respect of this Plan; (iv) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (v) the 2021 Bond Documents and related documentation; (vi) the LSA; (vii) the Member Contribution Agreement; (viii) any other exit financing contemplated by the Plan Term Sheet, and all security documents and other related loan documents; (ix) those motions and proposed court orders that the Debtor file on or after the Petition Date and seek to have heard on an expedited basis at the "first day hearing"; (x) the documents or agreements for the governance of the Reorganized Debtor, including any membership agreements and certificates of incorporation; (xi) all management or consulting agreements of the Reorganized Debtor; (xii) all agreements relating to Interests in the Reorganized Debtor, if applicable; and (xiii) such other documents, pleadings, agreements or supplements as may be reasonably necessary or advisable to implement the Refinancing, and in the case of all such documents described in clauses (i) through (xiii) consistent in all respects with all other terms and provision of the Plan Term Sheet, and acceptable in form and substance to the Trustee, the Consenting Holders, the Member, and the Debtor.

"*Disallowed*" means any Claim, or any portion thereof, that (a) has been disallowed by Final Order or pursuant to a settlement among the Debtor and the holder thereof; or (b) for which a proof of claim was required to be filed and that has not been filed by the Claims Bar Date and

has not otherwise been deemed timely filed pursuant to a Final Order of the Bankruptcy Court. "Disallow" and "Disallowance" will have correlative meanings

*"Disbursing Agent(s)"* means any Entity acceptable to the Debtor and the Consenting Holders in its capacity as a disbursing agent under the Plan.

*"Disclosure Statement"* means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be altered, supplemented, modified, or amended from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

*"Distribution"* means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

*"Distribution Record Date"* means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which will be the date that the Confirmation Order is entered by the Bankruptcy Court, or such other date specified in the Confirmation Order.

*"Effective Date"* means the first Business Day selected by the Debtor, with the consent of the Trustee, on which (a) the conditions specified in Section 10 of this Plan have been either satisfied or waived in accordance with the terms of Section 10, and (b) no stay of the Confirmation Order is in effect.

*"Entity"* has the meaning set forth in section 101(15) of the Bankruptcy Code.

*"Estate"* means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to section 541 of the Bankruptcy Code.

*"Exculpated Party"* means, collectively, in each case in its capacity as such on and after the Petition Date:  (a) the Debtor; (b) the Reorganized Debtor; (c) the Trustee; (d) the Consenting Holders; (e) the Member, (f) the Creditors' Committee, (g) the members of the Creditors' Committee, and (h) with respect to each of the foregoing entities in clauses (a) - (g), such Entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

*"Executory Contract"* means all contracts and leases to which the Debtor is a party that are subject to assumption or rejection under section 365 of the Bankruptcy Code.

*"Facility"* means the continuing care retirement community owned and operated by the Debtor, known as "The Amsterdam at Harborside."

*"File," "Filed," or "Filing"* means file, filed, or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

***"Final Order"*** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has been entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, and, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

***"General Administrative Claim"*** means any Administrative Expense Claim, other than an Accrued Professional Compensation Claim and claims for fees and expenses under 28 U.S.C § 1930(a).

***"General Unsecured Claim"*** means any Claim, including, without limitation, any Deficiency Claim, asserted against the Debtor that is not (a) a Secured Claim, (b) a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, (c) a Bond Claim, (d) a Resident Refund Claim, or (e) an Intercompany Claim.

***"Governmental Unit"*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

***"Holder"*** means the legal or beneficial holder of a Claim or Interest.

***"Impaired"*** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of section 1124 of the Bankruptcy Code.

***"Indemnification Provisions"*** means each of the Debtor's indemnification obligations in place as of the Effective Date, whether in the bylaws, certificate of incorporation or formation, or other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, or otherwise, for the current directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents to the extent serving in such capacities on or after the Petition Date, with respect to services provided before or after the Petition Date.

***"Insurance Policies"*** means, collectively, all of the Debtor's insurance policies.

***"Intercompany Claim"*** means any Claim against the Debtor, including Claims under the Subvention Certificate, held by an Affiliate of the Debtor, including the Member.

***"Interest"*** means the interest of any Holder in an equity security of the Debtor within the meaning of section 101(16) of the Bankruptcy Code represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, whether or not transferable, or any option, warrant, or right,

contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

*"Lien"* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*"LSA"* shall have the meaning given to it in the Disclosure Statement.

*"Member"* means Amsterdam Continuing Care Health System, Inc.

*"Member Contribution"* shall mean the contribution by the Member to the Debtor described in the Member Contribution Agreement.

*"Member Contribution Agreement"* shall have the meaning given to it in the Disclosure Statement.

*"Other Priority Claim"* means any Claim entitled to priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

*"Other Secured Claim"* means a Secured Claim other than the Bond Claims.

*"Person"* means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other Entity, including, without limitation, the Debtor.

*"Petition Date"* means the date on which the Debtor commences the Chapter 11 Case.

"*Phase II*" means the reconfiguration of The Harborside pursuant to the original operating plan and includes the addition of 71 independent living apartments, expansion and renovations of existing common areas.

*"Plan"* means this chapter 11 plan of reorganization, including all appendices, exhibits, schedules and supplements hereto (including any appendices, exhibits, schedules and supplements to this Plan that are contained in the Plan Supplement), as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Plan Support Agreement.

*"Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, in each case subject to the terms and provisions of the Plan Support Agreement, to be filed no later than ten (10) days prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules and the Plan Support Agreement, including: (a) the Assumption Schedule, (b) the Rejection Schedule, (c) the opinion of bond counsel with respect to the Series 2021 Bonds, (d) the Member Contribution Agreement, (e) the LSA, and (f) any other necessary documentation related to the implementation of this Plan.

*"Plan Support Agreement"* means that certain Plan Support Agreement entered into as of June 14, 2021 by and among the Debtor, the Consenting Holders, the Member, and any subsequent

Entity that becomes a party thereto pursuant to the terms thereof, as amended and restated from time to time, which Plan Support Agreement is attached as **Exhibit B** to the Disclosure Statement.

*"Plan Term Sheet"* means that certain term sheet describing the key terms of a plan of reorganization for the Debtor, attached as Exhibit 1 to the Plan Support Agreement.

*"Priority Claim"* means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claims.

*"Priority Tax Claim"* means any Claim of a Governmental Unit of a kind entitled to priority under section 507(a)(8) of the Bankruptcy Code.

*"Pro Rata"* shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless this Plan otherwise provides.

*"Professional Fee Escrow Account"* means an interest-bearing account funded by the Debtor with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

*"Professionals"* means all professionals employed in the Chapter 11 Case pursuant to sections 327, 363 and 1103 of the Bankruptcy Code.

*"Proof of Claim"* means a proof of Claim filed against the Debtor in the Chapter 11 Case.

*"Refinancing"* means the refinancing of existing debt and certain other obligations of Amsterdam to be implemented through this Plan and for which the principal terms are set forth in the Plan Term Sheet.

"*Refinancing Transaction*" shall have the meaning ascribed to it in the Disclosure Statement.

*"Reinstated"* or *"Reinstatement"* means, with respect to Claims and Interests, that the Claims or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

*"Rejection Damages Claim"* means any Claim on account of the rejection of an Executory Contract pursuant to section 365 of the Bankruptcy Code.

*"Related Persons"* means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

*"Released Parties"* means, collectively, the following Entities (i) the Debtor; (ii) the Reorganized Debtor; (iii) the 2014 Bond Trustee; (iv) the Consenting Holders; (v) the Member,

(vi) the 2014 Issuer, (vii) the 2021 Bond Trustee; (viii) the 2021 Issuer, (ix) Holders of all Claims, and (ix) with respect to each of the foregoing entities specified in clauses (i) through (ix), such Entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; <u>provided</u> that in each case, an Entity shall not be a Released Party if it: (a) elects to opt out of the releases contained in the Plan; or (b) timely Files with the Bankruptcy Court on the docket of this Chapter 11 Case an objection to the releases contained in the Plan that is not resolved before the Confirmation Date.

*"Releasing Parties"* means collectively, the following Entities (i) the Debtor; (ii) the Reorganized Debtor; (iii) the 2014 Bond Trustee; (iv) the Consenting Holders; (v) the Member, (vi) the 2014 Issuer, (vii) the 2021 Bond Trustee; (viii) the 2021 Issuer, (ix) Holders of all Claims, and (x) with respect to each of the foregoing entities specified in clauses (i) through (ix), such Entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; <u>provided</u> that in each case, if an Entity (a) elects to opt out of the releases contained in the Plan; or (b) timely Files with the Bankruptcy Court on the docket of this Chapter 11 Case an objection to the releases contained in the Plan that is not resolved before Confirmation, such Entity shall only be a Releasing Party with respect to the 2014 Bond Trustee, Consenting Holders as of the Voting Deadline, and Member.

*"Rejection Schedule"* means the schedule of Executory Contracts which the Debtor will reject as of the Effective Date pursuant to the Confirmation Order.

*"Reorganized Debtor"* means the Debtor, as reorganized pursuant to and under this Plan on or after the Effective Date, and its successors.

*"Retained Professional"* and collectively, *"Retained Professionals"* means any Entity: (a) employed in the Chapter 11 Case under a Final Order in accordance with section 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, under sections 327, 328, 329, 330, 331, or 1103 of the Bankruptcy Code (other than an ordinary course professional retained under an order of the Bankruptcy Court); or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court under section 503(b)(4) of the Bankruptcy Code.

*"Residency Agreements"* means those certain written agreements by and between the Debtor and current, former, or prospective residents of the Facility governing the terms and conditions that each independent living unit resident must abide by while residing at The Harborside, the resident's obligations regarding the payment of entrance fees, the resident's rights to a refund of such entrance fees, and other monthly charges that may be due to the Debtor during the duration of the resident's stay at the Facility.

"***Residents***" means all persons that reside at the Facility and are parties to Residency Agreements or Admission Agreements.

"***Resident Refund Claims***" means all claims for refunds of entrance fees pursuant to Residency Agreements and applicable New York State law that are presently due and owing as of the Effective Date.

"***Schedules***" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as such schedules may be or may have been amended, modified, or supplemented from time to time.

"***Secured Claim***" means (i) any Claim that is secured by property in which the Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in section 506(a) of the Bankruptcy Code or (ii) any Claim that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in section 506(a) of the Bankruptcy Code, including any Claim that the Holder of which validly elects to treat as secured pursuant to Section 1111(b) of the Bankruptcy Code.

"***Series 2021A Bonds***" means those certain 2021A Series Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2021A, to be issued by the Issuer pursuant to the 2021 Indenture in accordance with the terms and conditions set forth in this Plan.

"***Series 2021B Bonds***" means those certain 2021B Series Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2021B, to be issued by the Issuer pursuant to the 2021 Indenture in accordance with the terms and conditions set forth in this Plan.

"***Series 2021 Bonds***", collectively, the Series 2021A Bonds and Series 2021B Bonds.

"***Subvention Certificate***" means that certain Subvention Certificate issued on March 31, 2004 issued by the Debtor to the Member.

"***Trustee***" means, together, the 2014 Bond Trustee and the 2021 Bond Trustee.

"***Unimpaired***" means, with respect to a Claim or Interest, a Class of Claims or Interests that is "unimpaired" within the meaning of section 1124 of the Bankruptcy Code.

"***United States Trustee***" means the Office of the United States Trustee for the Eastern District of New York.

"***Voting Agent***" means Kurtzman Carson Consultants LLC in its capacity as voting agent for the Debtor.

"***Voting Deadline***" means the date set by the Bankruptcy Court by which all parties in interest must submit their votes on this Plan.

***"Voting Record Date"*** shall have the meaning ascribed to such term in the Disclosure Statement.

**1.2.** ***Interpretation, Application of Definitions and Rules of Construction.*** Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern.

**1.3.** ***Computation of Time***. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or Allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein

**1.4.** ***Controlling Document.*** In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, this Plan shall control, except that the 2021 Bond Documents shall control with respect to the Series 2021 Bonds. In the event of an inconsistency between this Plan and the Confirmation Order, the Confirmation Order shall control.

## SECTION 2. ADMINISTRATIVE AND PRIORITY CLAIMS

**2.1.** ***Administrative Expense Claims***. Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code and except to the extent that a Holder of an Allowed General Administrative Claim and the Debtor or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash: (a) if such Allowed General Administrative Claim is based on liabilities that the Debtor incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim; (b) if such Allowed General Administrative Claim is due, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than thirty (30) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of

13

the Bankruptcy Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

To be eligible to receive Distributions under this Plan on account of an Administrative Expense Claim that is not otherwise Allowed by this Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date. Any Administrative Expense Claim that is not asserted in accordance herewith shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of the Debtor's Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(a) ***Accrued Professional Compensation Claims***. All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is forty-five (45) days after the Effective Date. The Reorganized Debtor shall pay Accrued Professional Compensation Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtor will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date. Any Accrued Professional Compensation Claim that is not timely asserted in accordance with this Section 2.1 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b) ***Professional Fee Escrow Account***. On the Effective Date, the Reorganized Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtor. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estate of the Debtor or the Reorganized Debtor. The amount of Allowed Accrued Professional Compensation Claims shall be paid in Cash to the Professionals by the Reorganized Debtor from the Professional Fee Escrow Account (a) within five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtor. When such Allowed Accrued Professional Compensation Claims have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtor without any further action or order of the Bankruptcy Court.

(c) ***Professional Fee Amount***. All Professionals shall reasonably estimate their unpaid Accrued Professional Compensation Claims and other unpaid fees and expenses incurred in rendering services to the Debtor and the 2014 Bond Trustee before and as of the Effective Date, and shall deliver such estimate to the Debtor no later than five days before the Effective Date; provided that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtor or Reorganized Debtor, in consultation with

the 2014 Bond Trustee, may estimate the unpaid and unbilled fees and expenses of such Professional.

           (d)      ***Post-Confirmation Fees and Expenses***.  Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and consummation of the Plan incurred by the Debtor.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

      **2.2.**    ***Priority Tax Claims***.  Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

      **2.3.**    ***United States Trustee Statutory Fees***.  The Debtor and the Reorganized Debtor, as applicable, will pay fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interest payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

      Except as set forth herein, all Claims against and Interests in the Debtor are placed in a particular Class.  The Debtor has not classified Administrative Expense Claims, Accrued Professional Compensation Claims, and Priority Tax Claims.

      The following table classifies Claims against and Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

      Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in section 4 herein.  This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan.

| Class | Claims and Interests | Status | Entitled to Vote |
|-------|----------------------|--------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| 3 | Bond Claims | Impaired | Yes |
| 4 | General Unsecured Claims, including Rejection Damage Claims | Impaired | Yes |
| 5 | Resident Refund Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Interests in the Debtor | Unimpaired | No (Deemed to Accept) |

## SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS

**4.1.    *Other Priority Claims (Class 1)*.**  This Class consists of all Allowed Other Priority Claims against the Debtor.  Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtor has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtor and the Holder of the Allowed Other Priority Claim against the Debtor.

**4.2.    *Other Secured Claims (Class 2)*.**  This Class consists of all Other Secured Claims against the Debtor.  In full satisfaction of an Allowed Other Secured Claim, on the later of the Effective Date and the date on which the Other Secured Claim is Allowed, each Holder of an Allowed Other Secured Claim shall receive, at the sole and exclusive option of the Reorganized Debtor:  (a) Cash equal to the amount of such Claim; (b) the collateral securing its Allowed Other Secured Claim, (c) Reinstatement of its Allowed Other Secured Claim, or (d) such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

**4.3.    *Bond Claims (Class 3)*.**  This Class consists of the Bond Claims against the Debtor. The Bond Claims are Allowed and shall be treated as follows: (i) Bond Claims on account of the 2014 A Bonds are Allowed in the aggregate amount of $144,867,580.48, (ii) Bond Claims on account of the 2014 B Bonds are Allowed in the aggregate amount of $1,566,999.86, (iii) Bond Claims on account of the 2014 C Bonds are Allowed in the aggregate amount of $67,876,572.19. Unliquidated, accrued and unpaid fees and expenses of the 2014 Bond Trustee and its professionals incurred through the Effective Date and not paid during this Chapter 11 Case are also part of, and shall be added to, the aggregate amount of the Bond Claims.  Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of

the Bond Claims, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of Bond Claims on account of the 2014 A Bonds and 2014 B Bonds shall exchange the then outstanding 2014 A Bonds and 2014 B Bonds for a pro rata share of the Series 2021B Bonds issued in the aggregate original principal amount of $127,327,200. On the Effective Date or as soon as reasonably practicable thereafter, the 2014 C Bonds will be cancelled in whole without any payment or consideration. Any and all fees of the 2014 Bond Trustee and its professionals shall be paid, pursuant to the terms of the 2014 Bond Documents, from the existing debt service reserve fund for the 2014 Bonds and shall otherwise be treated as part of the Allowed Bond Claims and shall be paid in full on the Effective Date. Accordingly, Class 3 Claims are Impaired.

      **4.4.** *General Unsecured Claims (Class 4)*. This Class consists of all General Unsecured Claims against the Debtor, including Rejection Damage Claims. Except to the extent that a Holder of an Allowed General Unsecured Claim against the Debtor agrees to a different treatment of such Claim, on the Effective Date or as soon as reasonably practicable thereafter, the Debtor will pay an amount equal to fifteen (15) percent of the Allowed amount of such Class 4 Claim, in each case subject to all defenses or disputes the Debtor may assert as to the validity or amount of such Claims. Accordingly, Class 4 Claims are Impaired.

      **4.5.** *Resident Refund Claims (Class 5)*. This Class consists of all claims for refunds of entrance fees pursuant to Residency Agreements and applicable New York State law that are presently due and owing as of the Effective Date. In full satisfaction of an Allowed Resident Refund Claim, on the later of the Effective Date and the date on which the Resident Refund Claim is Allowed, each Holder of an Allowed Resident Refund Claim shall receive payment in the full face amount of such Class 5 Claim but shall not receive interest thereon. Accordingly, Class 5 Claims are Impaired.

      **4.6.** *Intercompany Claims (Class 6)*. This Class consists of all Intercompany Claims against the Debtor, including those of the Member. All Intercompany Claims shall, at the option of the Debtor in consultation with the Member, the 2014 Bond Trustee, and the Creditors' Committee, either be reinstated or extinguished without distribution, provided that the Claims under the Subvention Certificate shall be reinstated but such Claims shall at all times shall be subordinate to obligations relating to the Series 2021 Bonds as further evidenced by an acceptable subordination agreement.

      **4.7.** *Interests in Amsterdam (Class 7)*. This Class consists of Interests of the Debtor. On the Effective Date, Interests of the Debtor shall be Reinstated, and holders of such Interests shall retain such Interests.

## SECTION 5. CRAMDOWN.

      If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

## SECTION 6.  MEANS FOR IMPLEMENTATION OF THIS PLAN

**6.1.    *Refinancing Transaction***.  On the Effective Date, the Debtor, the Reorganized Debtor, or any other entities may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of refinancing, exit financing, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate.

The Confirmation Order shall and shall be deemed to, under both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan.

**6.2.    *2021 Bond Documents***.  The Reorganized Debtor shall be authorized to enter into the 2021 Bond Documents on the Effective Date.  On the Effective Date, and following the consummation of the Refinancing Transaction, the 2021 Bond Documents to which the Reorganized Debtor will be a party shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtor, enforceable in accordance with their terms.  The financial accommodations to be extended under the 2021 Bond Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the 2021 Bond Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the 2021 Bond Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Reorganized Debtor, the Trustee, or any of Holders of Series 2021 Bonds), having the priority set forth in the 2021 Bond Documents and subject only to such Liens and security interests as may be permitted under the 2021 Bond Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtor, and the Entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), the Reorganized Debtor shall take such actions as reasonably requested by the

2021 Bond Trustee and consistent with this Plan and the Plan Support Agreement in connection with the implementation of this Plan and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

     **6.3.**    ***Series 2021A Bonds.***  On the Effective Date, the Reorganized Debtor shall cause the Issuer to issue the Series 2021A Bonds, the primary economic terms of which are described below.

| | |
|---|---|
| **Principal:** | $40,710,000.00, on the terms and conditions set forth in the 2021 Bond Documents. |
| **Rate of Interest and Payment Terms:** | Fixed rate of 9.0% per annum, payable semi-annually.  Principal on the Series 2021A Bonds will amortize commencing January 1, 2027 as set forth in the 2021 Bond Documents. |
| **Maturity Date:** | January 1, 2041 |
| **Call Protection:** | The Series 2021A Bonds will subject to optional redemption at par on and after October 1, 2031 (the "<u>Par Call Date</u>").  The Series 2021A Bonds shall also be subject to optional redemption on and after October 1, 2026 and prior to the Par Call Date, at a make-whole redemption price as set forth in the 2021 Bond Documents. |
| **Collateral:** | The Series 2021A Bonds will be secured by a first priority lien on all assets of Debtor, except the LSA, and shall have payment priority over the Series 2021 B Bonds. |

     **6.4.**    **Series *2021B Bonds.***  On the Effective Date, the Reorganized Debtor shall cause the Issuer to issue the Series 2021B Bonds, the primary economic terms of which are described below.

| | |
|---|---|
| **Principal:** | The Series 2014A Bonds and Series 2014B Bonds (in the current aggregate principal amount of $139,917,130) will be exchanged for a pro rata amount of the new Series 2021B Bonds in a principal amount of $127,327,200. |

| | |
|---|---|
| **Rate of Interest and Payment Terms:** | The Series 2021B Bonds will be subordinate in payment and security to the Series 2021A Bonds.  Interest on the Series 2021B Bonds will be reduced from the current fixed blended rate of 6.613% to a fixed rate of 5.0% per annum.  The Series 2021B Bonds will bear interest at the rate of (i) 5.00% per annum, provided that upon the earlier of (x) the incurrence of indebtedness by the Reorganized Debtor, the Sponsor or any affiliate thereof for Phase II, (y) twenty years after the Effective Date and (z) the date on which the Reorganized Debtor has 150 days' cash on hand in excess of the MLR Requirement (as defined below), the interest rate on the Series 2021B Bonds shall increase to 5.25%. Principal on the Series 2021B Bonds will amortize commencing July 1, 2041 as set forth in 2021 Bond Documents. |
| **Maturity Date:** | January 1, 2058 |
| **Call Protection:** | The Series 2021B Bonds will not be subject to optional redemption prior to October 1, 2026.  The Series 2021B Bonds will be subject to optional redemption prior to maturity at the following prices (as a percentage of the principal amount of the Series 2021B Bonds): |

| Redemption Date | Redemption Price |
|---|---|
| October 1, 2026 – September 30, 2027 | 107% |
| October 1, 2027 – September 30, 2028 | 106 |
| October 1, 2028 – September 30, 2029 | 105 |
| October 1, 2029 – September 30, 2030 | 105 |
| October 1, 2030 – September 30, 2031 | 105 |
| October 1, 2031 – September 30, 2032 | 105 |
| October 1, 2032 – September 30, 2033 | 105 |
| October 1, 2033 – September 30, 2034 | 104 |
| October 1, 2034 – September 30, 2035 | 103 |
| October 1, 2035 – September 30, 2036 | 102 |
| October 1, 2036 – September 30, 2037 | 101 |
| October 1, 2037 and thereafter | 100 |

| | |
|---|---|
| **Collateral:** | The Series 2021B Bonds will be secured by a first priority lien on all assets of the Debtor, except the LSA, and subject to the payment priority of the Series 2021A Bonds. |

**6.5.** ***Interest on 2014 A Bonds and 2014 B Bonds.***  Upon the Effective Date, past due and accrued interest on the 2014 A Bonds and 2014 B Bonds will be extinguished

**6.6.** ***Series 2014C Bonds.***  The Series 2014C Bonds will be cancelled in whole without any payment or consideration.  The accreted value of the Series 2014C Bonds as of June 14, 2021 is $67,876,572.19.

**6.7.** *Member Contribution.* The Member shall contribute $9 million to the Debtor. The Member Contribution shall be funded on the effective date of the Debtor's confirmed chapter 11 plan of reorganization in accordance with the terms of the Member Contribution Agreement.

Approximately $3,600,000 of the Member Contribution will come from the proceeds of the closing of the sale of the real property located in the hamlet of Mount Sinai within the Town of Brookhaven in Suffolk County, New York, which are currently held by Amsterdam Nursing Home Corporation (1992), an Affiliate of the Debtor, subject to restrictions agreed upon with DOH pursuant to the HEAL Grant Contract, as amended.

The Member Contribution shall be subject to the following conditions: (i) the transaction is subject to approval by the Nassau County Industrial Development Agency (or any other bond issuer); (ii) the transaction is subject to the Member obtaining all requisite state and local approvals, including, without limitation, the Charites Bureau of the New York State Attorney General, DOH and DFS, if required; and (iii) the Subvention Certificate evidencing the $3,000,000 subvention from Member to the Debtor issued on March 31, 2004 will survive the restructuring, subordinate to all the Series 2021 Bonds.

The Member shall also provide an additional $9 million LSA for not less than a 10-year period, which shall be reserved for making payments to keep the Reorganized Debtor in regulatory compliance, including with respect to payments of unpaid entrance fee refunds and satisfaction of minimum liquid reserve requirements that may become due in the future. The LSA shall not be subject to the liens of the 2021 Bond Trustee but shall be in form and substance reasonably acceptable to the 2021 Bond Trustee. The LSA will be funded from the proceeds of the sale of substantially all of the assets of Amsterdam Nursing Home Corporation (1992).

**6.8.** *Reserves.* Under New York law, continuing care retirement communities like the Debtor are required to maintain liquid assets supporting reserve funds ("<u>MLR Requirement</u>") once the community becomes operational. The amount of the debt reserve fund is required to be equal to the total of all principal and interest payments becoming due within the next 12 months under any long-term financing of the facility. The amount of the operating reserve fund shall be equal to thirty-five (35) percent of the sum of the projected operating expenses during the next 12 months, plus the projected aggregate of all taxes and insurance expenses related to capital assets due within the next 12 months, plus the projected debt interest payments due within the next 12 months, excluding the debt interest payments described in the description of the debt reserve fund above, plus the projected and/or actual refund expenses becoming due within the next 12 months, except as due on the resale of a unit. As a result of the restructuring, the Debtor will be in compliance with the minimum liquid operating reserve requirement and minimum liquid debt reserve requirement as set forth by New York State DFS Insurance Regulation 140.

**6.9.** *No Further Corporate Action.* The issuance of the Series 2021 Bonds for distribution under the Plan is authorized without the need for further corporate action, and all of the Series 2021 Bonds issued or issuable under the Plan shall be duly authorized and validly issued under the Plan. The Reorganized Debtor shall cause to be delivered customary legal opinions and other documents in connection with the issuance of the Series 2021 Bonds, in form and substance acceptable to the Trustee, including, without limitation, (i) the Opinion of Bond Counsel, and (ii) a lender's title policy with respect to the real property securing the Reorganized Debtor's obligations

under the Series 2021 Bond Documents, and the first mortgage position of the Trustee, subject to such exceptions as are reasonably acceptable to the Trustee.

**6.10.    *Continued Corporate Existence*.**  Except as otherwise provided in this Plan, the Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, with all the powers of a corporation under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by this Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be under this Plan and require no further action or approval.

**6.11.    *Vesting of Assets in the Reorganized Debtor*.**  Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, including the Liens and security interests granted under the 2014 Bond Documents which such Liens and security interests continue to secure the obligations related to the 2021 Bond Documents, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

**6.12.    *Cancellation of Agreements, Security Interests, and Other Interests*.**  On the Effective Date, except to the extent otherwise specifically provided in the Plan, including the extent certain of the 2014 Bond Documents continue in existence pursuant to their amendment and restatement pursuant to the 2021 Bond Documents, all notes, instruments, certificates, and other documents evidencing the 2014 Bonds, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto (including, without limitation, any guarantee obligations of any non-Debtor Affiliates with respect to the Bond Claims) shall be discharged and the agents and Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder.  Except to the extent certain security interests and Liens continue in existence pursuant to the 2021 Bond Documents, all existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date.  Notwithstanding the foregoing, following confirmation of the Plan or the occurrence of the Effective Date, to the extent that the 2014 Bond Documents do not otherwise remain in effect pursuant to the 2021 Bond Documents, any credit document or agreement that governs the rights of any Holder of a Bond Claim shall continue in effect for purposes of (1) allowing Holders of such Allowed Claims to receive distributions under the Plan; (2) allowing and preserving the rights of the agents or representatives of Holders of such Claims to make distributions on account of such Allowed Claims, as provided in the Plan; (3) preserving all exculpations in favor of the Trustee; (4) allowing the Trustee to enforce any rights and obligations (except against the Debtor) owed to it under the 2014 Bond Documents, the Plan or the Confirmation Order, including the right of the 2014 Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, to assert its charging lien, to enforce its indemnity and other rights and protections

22

with respect to and pursuant to the 2014 Bond Documents; and (5) permitting the Trustee to appear and be heard in the Chapter 11 Case, or in any proceeding in the Court or any other court.

6.13.    *Exemption from Registration Requirements; Trading of Securities*.  The offering, issuance, and distribution of Series 2021 Bonds issued under this Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act under section 3(a)(2) and 3(a)(4) of the Securities Act of 1933, as amended and under section 1145(a)(1) of the Bankruptcy Code.  Any and all Series 2021 Bonds issued under this Plan will be freely tradable under the Securities Act by the recipients thereof.

6.14.    *Organizational Documents*.  Subject to Section 6.1 of this Plan, the Reorganized Debtor shall enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and provisions of this Plan.  Under section 1123(a)(6) of the Bankruptcy Code, the organizational documents of the Reorganized Debtor will prohibit the issuance of non-voting Interests.  After the Effective Date, the Reorganized Debtor will amend and restate its organizational documents, and the Reorganized Debtor will file its respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the state of incorporation and the organization documents of the Reorganized Debtor.

6.15.    *Exemption from Certain Transfer Taxes and Recording Fees*.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any Entity under, in contemplation of, or in connection with this Plan or under: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.16.    *Board and Officers of the Reorganized Debtor.*  As of the Effective Date, the members of the board of directors and officers of the Debtor as of the Petition Date shall remain in their current capacities as director and officers of the Reorganized Debtor unless otherwise disclosed in the Plan Supplement or prior to the commencement of the Confirmation Hearing, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan.  From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the

Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

**6.17.    *Directors and Officers Insurance Policies*.** Notwithstanding anything in the Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of the Debtor's Directors and Officers Liability Insurance Policies under section 365(a) of the Bankruptcy Code effective as of the Effective Date. Entry of the Confirmation Order will constitute the Court's approval of the Reorganized Debtor's foregoing assumption of the unexpired Directors and Officers Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the Directors and Officers Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed.

**6.18.    *Other Insurance Policies*.** On the Effective Date, the Debtor's Insurance Policies in existence as of the Effective Date shall be Reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor under section 365 of the Bankruptcy Code and Sections 6.17 and 6.18 hereof. Nothing in this Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the Insurance Policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtor shall retain all rights and defenses under such Insurance Policies. The Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date. Following the Effective Date, the Debtor's Insurance Policies shall comply with all applicable covenants set forth in the 2021 Bond Documents.

**6.19.    *Preservation of Rights of Action*.** In accordance with section 1123(b) of the Bankruptcy Code but subject to the releases set forth in Section 11 herein, including but not limited to the release of all Causes of Action against the Trustee and the Consenting Holders, all Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. **Subject to the releases set forth in Section 11 herein, no Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of the Plan or the occurrence of the Effective Date.**

6.20.    *Corporate Action*.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other Entity, including: (1) assumption of Executory Contracts; (2) selection of the directors, managers, and officers for the Reorganized Debtor; (3) the execution of and entry into the 2021 Bond Documents; (4) the issuance and distribution of the Series 2021 Bonds as provided herein; and (5) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in this Plan involving the company structure of the Reorganized Debtor and any company action required by the Debtor or Reorganized Debtor, as applicable, in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor or Reorganized Debtor, as applicable.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or Reorganized Debtor, as applicable (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof), shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (1) the 2021 Bond Documents, (2) the Series 2021 Bonds and (3) any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

6.21.    *Effectuating Documents; Further Transactions*.  Prior to, on, and after the Effective Date, the Debtor and Reorganized Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of this Plan, the 2021 Bond Documents, the 2021 Bonds and any other securities issued under this Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required under this Plan.  All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Bankruptcy Court.

## SECTION 7.  ASSUMPTION AND REJECTION OF Executory Contracts

7.1.    *Assumption and Rejection of Executory Contracts*.  Except as otherwise provided in this Plan or in a motion filed by the Debtor before the Effective Date, each of the Executory Contracts of the Debtor, including the Residency Agreements and Admission Agreements, shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code, other

than: (1) those that are identified on the Rejection Schedule, (2) those that have previously been rejected by a Final Order of the Bankruptcy Court, (3) those that are the subject of a motion to reject Executory Contracts that is pending on the Confirmation Date, or (4) those that expired or terminated pursuant to their own terms prior to the Effective Date.  Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions or rejections of each Executory Contract as set forth in the Plan, the Assumption Schedule, or the Rejection Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date, except as otherwise provided in the Plan or Confirmation Order. Each Executory Contract assumed pursuant to the Plan or by Bankruptcy Court order will re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified under applicable federal law or as otherwise agreed by the Debtor and the applicable counterparty to the Executory Contract.  All existing Residency Agreements and Admission Agreements shall be assumed.

7.2.    ***Inclusiveness***.  Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each Executory Contract shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract.

7.3.    ***Cure of Defaults***.  Any monetary defaults under an Executory Contract to be assumed will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Assumption Notice or as otherwise agreed or determined by a Final Order of the Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts may otherwise agree.  In the event of a dispute regarding: (a) any Cure Claim; (b) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed; or (c) any other matter pertaining to assumption or the satisfaction of any Cure Claim will be made following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts; provided, however, that prior to the Effective Date, the Debtor may settle any dispute regarding such Cure Claim without further notice to or action, order, or approval of the Court.

At least seven days before the Voting Deadline, the Debtor will distribute, or cause to be distributed, Assumption Notices to the applicable third parties. **Any objection by a counterparty to an Executory Contract to the proposed assumption or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline**.  Any counterparty to an Executory Contract that fails to timely object to the proposed assumption or Assumption Notice will be deemed to have assented to such assumption and Cure Claim.

In the event of an unresolved dispute regarding (a) any Cure Claim; (b) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed; or (c) any other matter pertaining to assumption, such dispute will be resolved by a Final Order of the Bankruptcy Court.

7.4.    ***Claims Based on Rejection of Executory Contracts and Unexpired Leases.***  Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, if any, must be

Filed with the Bankruptcy Court no later than the Claims Bar Date, or (b) a date provided in an order of the Court authorizing the rejection of the respective Executory Contract (including the Confirmation Order), or if no date is provided, thirty (30) calendar days after entry of the order authorizing such rejection.

Any Claims arising from the rejection of an Executory Contract not timely Filed with the Claims and Noticing Agent will be automatically Disallowed, forever barred from assertion, and will not be enforceable against the Debtor, the Debtor's Estate, the Reorganized Debtor, or their property without the need for any objection by the Debtor or Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract will be deemed fully satisfied, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

All Claims arising from the rejection by the Debtor of any Executory Contract pursuant to section 365 of the Bankruptcy Code will be classified as General Unsecured Claims and will be treated in accordance with Section 4 of the Plan.

**7.5.** *Indemnification*. On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of this Plan, and the Reorganized Debtor's governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the certificate of incorporation, bylaws, or similar organizational documents of the Debtor as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed, or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted. The Reorganized Debtor shall not amend and/or restate its certificate of incorporation, bylaws, or similar organizational document before or after the Effective Date to terminate or materially adversely affect (1) the Reorganized Debtor's obligations referred to in the immediately preceding sentence or (2) the rights of such managers, directors, officers, employees, or agents referred to in the immediately preceding sentence. Notwithstanding anything to the contrary herein, the Reorganized Debtor shall not be required to indemnify the Debtor's managers, directors, officers, or employees for any claims or Causes of Action for which indemnification is barred under applicable law, the Debtor's organizational documents, or applicable agreements governing the Debtor's indemnification obligations.

**7.6.** *Full Release and Satisfaction*. Assumption of any Executory Contract pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract at any time before the effective date of the assumption but shall not release or satisfy the Cure Claims related to such assumption. Any Proofs of Claim Filed with respect to an Executory Contract that has been assumed will be deemed Disallowed and expunged, without further notice to, action, order, or approval of, the Bankruptcy Court.

**7.7.** *Reservation of Rights*. Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is

in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder.

**7.8.    *Nonoccurrence of Effective Date*.**  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## SECTION 8.  PROVISIONS REGARDING DISTRIBUTIONS

**8.1.    *Timing and Calculation of Amounts to Be Distributed*.**  Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim or Interest will receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan; provided, however, that in order to receive cash distributions Holders of Allowed Claims and Interests must properly complete and return to the Disbursing Agent an executed Internal Revenue Service Form W-9 or W-8, as appropriate.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests will be made pursuant to the provisions set forth in Section 11.  The Debtor will have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

**8.2.    *Distributions by Disbursing Agent*.**  Unless otherwise specifically provided for in the Plan, the Disbursing Agent(s) will make all distributions required to be made under the Plan.  The Reorganized Debtor may act as Disbursing Agent or may employ or contract with other Entities to assist in or make the distributions required by the Plan.

**8.3.    *Interest and Penalties on Claims*.**  Unless otherwise specifically provided for in the Plan, the Confirmation Order, or the 2021 Bond Documents, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, post-petition interest and penalties will not accrue or be paid on any Claims, including Other Priority Claims and General Unsecured Claims, and no Holder of a Claim will be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of the Plan.

**8.4.    *Manner of Cash Payment*.**  Payments of Cash made pursuant to the Plan will be made, at the option and in the sole discretion of the Reorganized Debtor, by checks drawn on or wire transfers from a bank selected by the Reorganized Debtor.

**8.5.    *Withholding and Reporting Requirements*.**  In connection with the Plan and all distributions hereunder, the Reorganized Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder will be subject to any such withholding and reporting requirements.  The Reorganized

Debtor will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**8.6.    *Setoff and Recoupment.***  The Reorganized Debtor may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws and subject to the terms of the 2014 Bond Documents and 2021 Bond Documents, but will not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim, or claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or the Reorganized Debtor may assert against any Holder of an Allowed Claim, and all setoff and/or recoupment claims of the Debtor and/or the Reorganized Debtor are hereby preserved.

**8.7.    *Undeliverable or Non-Negotiated Distributions.***  All undeliverable distributions under the Plan that remain unclaimed for one year after attempted distribution will indefeasibly revert to the Reorganized Debtor.  Upon such reversion, the relevant Allowed Claim will be automatically discharged and forever barred, notwithstanding any federal or state escheatment laws to the contrary.

**8.8.    *Claims Paid by Third Parties.***  To the extent a Holder receives a distribution on account of a Claim and also receives payment from a party other than the Debtor or the Reorganized Debtor on account of such Claim, such Holder must, within fourteen (14) days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan.

**8.9.    *Claims Payable by Third Parties.***  No distributions under the Plan will be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**8.10.    *Applicability of Insurance Policies.***  Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims will be made in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything herein to the contrary, nothing in this paragraph will constitute or be deemed to be a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtor or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor will anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**8.11.    *Minimum Distributions.*** No distribution will be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the specific Holder of an Allowed Claim has an economic value of less than $25.00.

**8.12.    *Distributions on Account of Bond Claims.*** Notwithstanding anything to the contrary in this Section 8, distributions to Holders of Bond Claims shall be made in accordance with the 2021 Bond Documents.**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

**9.1.    *Allowance of Claims.*** On and after the Effective Date, the Debtor or the Reorganized Debtor will retain any and all of its rights and defenses that it had with respect to any Claim that existed immediately before the Effective Date.

**9.2.    *Claims Administration.*** After the Effective Date, the Reorganized Debtor will have the sole authority to: (1) File and prosecute objections to Claims, settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**9.3.    *Claims Estimation.*** Before, on, or after the Effective Date, the Debtor or Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that is either subject to appeal or has not been the subject of a Final Order, will be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount will constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor or Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event will any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**9.4.    *Adjustment to Claims Without Objection.*** Any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by

the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. Additionally, any Claim that is duplicative or redundant with another Claim against the Debtor may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that the Debtor shall provide notice to the affected Party of such action.

9.5.    ***Time to File Objections to Claims.***  Any objections to Claims must be Filed on or before the Claims Objection Bar Date.

9.6.    ***Disallowance of Claims.***  Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, will be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such causes of Action against that Entity have been settled or the Bankruptcy Court has entered an order with respect thereto and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor, as applicable.  All Proofs of Claim Filed on account of an indemnification obligation will be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of the Bankruptcy Court; provided that the Debtor shall provide notice to the affected Party of such action.

Except as otherwise provided herein or as agreed to by the Reorganized Debtor, any and all Proofs of Claim Filed after the Claims Bar Date will be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.

9.7.    ***Amendments to Claims.***  On or after the Effective Date, a Claim may not be Filed or amended  without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed will be deemed disallowed in full and expunged without further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

9.8.    ***No Distributions Pending Allowance.***  If an objection to a Claim or Interest or portion thereof is Filed, no payment or distribution provided under the Plan may be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes and Allowed Claim or Interest, unless otherwise agreed to by the Reorganized Debtor.

9.9.    ***Distributions After Allowance.***  To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) will be made to the Holder

of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent(s) will provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any post-Effective Date interest to be paid on account of such Claim.

**9.10.    *No Applicability to Bond Claims.***    This Section 9 shall not apply to the Bond Claims.

## SECTION 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**10.1.    *Conditions Precedent to Confirmation*.**  Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)    The proposed Confirmation Order shall be in form and substance reasonably satisfactory in all respects to the Debtor, the Trustee and the Consenting Holders; and

(b)    This Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto, including the Definitive Documents, shall be in form and substance reasonably acceptable to the Debtor, the Trustee and the Consenting Holders, on the terms contemplated by the Plan Term Sheet.

**10.2.    *Conditions Precedent to the Effective Date*.**  The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Trustee, and the Consenting Holders, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

(b)    The Plan Support Agreement shall not have been terminated, and remains in full force and effect;

(c)    On the occurrence of the Effective Date, the conditions to effectiveness of the 2021 Bond Documents shall have been satisfied or waived by the 2021 Bond Trustee and the Consenting Holders, and the Refinancing Transaction shall have closed pursuant to the terms of the Plan Support Agreement;

(d)    The Effective Date shall be no later than September 8, 2021.

(e)    All actions, documents, certificates, opinions and agreements necessary to implement this Plan, including, without limitation, 2021 Bond Documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(f)    All requisite governmental authorities and third parties shall have approved or consented, to the extent required, to all actions, documents, certificates, and agreements necessary to implement this Plan; and

(g)    All Accrued Professional Compensation Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Claims after the Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Claims by the Bankruptcy Court.

**10.3.**    *Waiver of Conditions*.  The conditions to confirmation and consummation of this Plan set forth herein may be waived in writing at any time by the Debtor, with the written consent of the Trustee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

**10.4.**    *Effect of Failure of Conditions*.  If consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other Person in any respect.

## SECTION 11.  EFFECT OF CONFIRMATION

**11.1.**    *General.*  Under section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved under this Plan.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and any Holders of Claims and Interests and is fair, equitable and reasonable.  Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; *provided, however*, that nothing contained herein shall preclude any Person or Entity from exercising their rights under and consistent with the terms of this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan including but not limited to the 2021 Bond Documents.  Notwithstanding the foregoing, any subordinated debt expressly provided for in this Plan or the 2021 Bond Documents shall remain subordinated to the extent provided for in such documents.

**11.2.** ***Releases by the Debtor.*** Pursuant to section 1123(b) of the Bankruptcy Code, notwithstanding anything contained in this Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, including the consummation of the transactions contemplated by this Plan, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtor, the Reorganized Debtor, and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor, the Reorganized Debtor, or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, tort, contract, or otherwise, that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the 2014 Bonds, the assertion or enforcement of rights and remedies against the Debtor, the Debtor's in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between the Debtor and any non-Debtor, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Plan Support Agreement, the Disclosure Statement, the Refinancing Transaction, this Plan (including the Plan Supplement), the Cash Collateral Order, or any other restructuring transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan Support Agreement, this Plan (including for the avoidance of doubt the plan supplement), or the 2021 Bond Documents, before or during the filing of the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of Confirmation of this Plan, the pursuit of consummation of this Plan, the administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Refinancing Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the 2021 Bond Documents, the LSA, the Member Contribution Agreement or any Claim or obligation arising under the Plan.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or

the vote, consent, authorization or approval of any Person and the Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under the foregoing release.  Notwithstanding the foregoing, nothing in this Section 11.2 shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Bankruptcy Rule 9019, of foregoing debtor release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the foregoing release is:   (i) in exchange for the good and valuable consideration provided by the Released Parties including, without limitation, the Released Parties' contributions to facilitating the implementation of this Plan; (ii) a good faith settlement and compromise of the Claims released by the debtor's release; (iii) in the best interest of the Debtor and its Estate; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to the Debtor, the Reorganized Debtor, or the Debtor's Estate asserting any Claim or Cause of Action released pursuant to the debtor's release.

**11.3.**   *Releases by Holders of Claims.*  **ON AND AFTER THE EFFECTIVE DATE, EXCEPT (I) FOR THE RIGHT TO ENFORCE THIS PLAN OR ANY RIGHT OR OBLIGATION ARISING UNDER THE PLAN SUPPLEMENT THAT REMAINS IN EFFECT OR BECOMES EFFECTIVE AFTER THE EFFECTIVE DATE OR (II) AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR CONFIRMATION ORDER, INCLUDING THE 2021 BOND DOCUMENTS, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE OBLIGATIONS OF THE DEBTOR UNDER THIS PLAN AND THE CONTRIBUTIONS OF THE RELEASED PARTIES TO FACILITATE AND IMPLEMENT THIS PLAN, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EACH RELEASED PARTY IS, AND IS HEREBY DEEMED TO BE, CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, TORT, CONTRACT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR OR THE REORGANIZED DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE 2014 BONDS, THE ASSERTION OR**

ENFORCEMENT OF RIGHTS AND REMEDIES AGAINST THE DEBTOR, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, INTERCOMPANY TRANSACTIONS BETWEEN THE DEBTOR AND ANY NON-DEBTOR, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE PLAN SUPPORT AGREEMENT, THE DISCLOSURE STATEMENT, THE REFINANCING TRANSACTION, THIS PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), THE CASH COLLATERAL ORDER, OR ANY OTHER RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THIS PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE PLAN SUPPORT AGREEMENT, THIS PLAN (INCLUDING FOR THE AVOIDANCE OF DOUBT THE PLAN SUPPLEMENT), THE 2021 BOND DOCUMENTS, THE LSA OR THE MEMBER CONTRIBUTION AGREEMENT, BEFORE OR DURING THE FILING OF THE CHAPTER 11 CASE, THE FILING OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE PURSUIT OF CONSUMMATION OF THIS PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THIS PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THIS PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY OTHER THAN THE DEBTOR THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY POST EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THIS PLAN, THE CONFIRMATION ORDER, ANY REFINANCING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE 2021 BOND DOCUMENTS, THE LSA, THE MEMBER CONTRIBUTION AGREEMENT, OR ANY CLAIM OR OBLIGATION ARISING UNDER THIS PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASES ARE:  (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A

**GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASES; (E) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASES.**

**11.4.** *Exculpation.* **Except as otherwise specifically provided in this Plan or the Confirmation Order, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with or arising out of this Chapter 11 Case, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Plan Support Agreement and related prepetition transactions, the Disclosure Statement, this Plan, the Plan Supplement, or any Refinancing Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by this Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during this Chapter 11 Case, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Case, the solicitation of votes for or the pursuit of confirmation of this Plan, the administration, funding, consummation, or distribution of property under of this Plan or any related agreement, the occurrence of the Effective Date, the issuance of securities under or in connection with this Plan, or the transactions in furtherance of any of the foregoing, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under this Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with this Plan including the 2021 Bond Documents, the LSA and the Member Contribution Agreement; or (b) claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties and other parties set forth above have, and upon confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

**11.5.** *Discharge of Claims and Interests.* To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, effective as of the Effective Date, all

consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Interests and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, distributed or retained under this Plan on account of such Claims, Interests or Causes of Action. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

**11.6.** *Injunction.* **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, INCLUDING BUT NOT LIMITED TO ANY RIGHT ARISING UNDER OR RELATED TO THE 2021 BOND DOCUMENTS, THE LSA OR THE MEMBER CONTRIBUTION AGREEMENT FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH OF (I) – (V) ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED, DISCHARGED). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

**11.7.    *Binding Nature of Plan.*  ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.**

**11.8.    *Protection Against Discriminatory Treatment*.**  To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Persons and Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against the Reorganized Debtor, or another Person or Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

**11.9.    *Preservation of Privilege and Defenses*.**  No action taken by the Debtor or Reorganized Debtor in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

**11.10.    *Injunction Against Interference with Plan*.**  Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Reorganized Debtor's and their respective Affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

**11.11.    *Release of Liens*.**  Except as otherwise provided in this Plan, the Confirmation Order, the 2021 Bond Documents, including to the extent the 2021 Bond Documents amend or restate the 2014 Bond Documents, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the

Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in this Plan, the Confirmation Order, the 2021 Bond Documents, including to the extent the 2021 Bond Documents amend or restate the 2014 Bond Documents, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## SECTION 12.  Modification, Revocation or Withdrawal of this Plan

**12.1.  *Modification and Amendments*.**  This Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtor with the consent of the Trustee and in consultation with the Creditors' Committee in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, the Debtor or the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

**12.2.  *Effect of Confirmation on Modifications*.**  Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**12.3.  *Revocation or Withdrawal of this Plan*.**  The Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date does not occur, then:  (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

## SECTION 13.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and this Plan, other than rights and obligations arising under the 2021 Bond Documents, including all rights and obligations arising under the LSA, the Member Contribution Agreement and the Subvention Certificate including, but not limited to, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution

of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to:  (i) the assumption or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, and Cure Claims, pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide or resolve any matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any matter involving the Reorganized Debtor;

(g)     adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(i)     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(j)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(l)     adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(m)     consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

41

(n)    hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

(o)    enforce all orders previously entered by the Bankruptcy Court;

(p)    hear any other matter not inconsistent with the Bankruptcy Code; and

(q)    enter a final decree closing the Chapter 11 Case.

## SECTION 14.  MISCELLANEOUS PROVISIONS

**14.1.    *Section 1125(e) Good Faith Compliance*.**  As of and subject to the occurrence of the Confirmation Date, the Debtor and its Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

**14.2.    *Substantial Consummation*.**  On the Effective Date, this Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

**14.3.    *Dissolution of the Creditors' Committee*.**  On the Effective Date, the Creditors' Committee will dissolve automatically and the members thereof will be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code related to their service on the Creditors' Committee, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Creditors' Committee and its Professionals.  The Reorganized Debtor will no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date, except for allowable fees and expenses for the preparation and presentation of their Professional Fee Claims.

**14.4.    *Plan Supplement*.**  Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

**14.5.    *Further Assurances*.**  The Debtor or the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Reorganized Debtor and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**14.6.    *Exhibits Incorporated*.**  All exhibits to this Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

**14.7.   *Inconsistency*.**  In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern. In the event of any inconsistency among the Confirmation Order and the Plan, the Confirmation Order shall govern.

**14.8.   *No Admissions*.**  If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

**14.9.   *Reservation of Rights*.**  Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred.  None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

**14.10.   *Successors and Assigns*.**  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

**14.11.   *Entire Agreement*.**  On the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**14.12.   *Notices*.**  All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

AMSTERDAM HOUSE CONTINUING CARE
RETIREMENT COMMUNITY, INC.
Attention: President and CEO
300 E. Overlook
Port Washington, New York 11050
Telephone: (516) 472-6620
Facsimile: (516) 472-6690
E-mail: jdavis@amsterdamnh.org

with copies to:

SIDLEY AUSTIN LLP
Attention:  Thomas R. Califano
William E. Curtin
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
E-mail:  tom.califano@sidley.com
wcurtin@sidley.com

- and -

SIDLEY AUSTIN LLP
Attention:  Jackson T. Garvey
One South Dearborn
Chicago, IL 60603
Telephone:  (312) 853-7000
Facsimile:  (212) 853-7036
E-mail:  jgarvey@sidley.com

All notices, requests, and demands to or upon the Creditors' Committee in the Chapter 11
Case shall be in writing and, unless otherwise provided in the Plan, shall be deemed to have been
duly given or made when actually delivered or, if by facsimile transmission, when received and
telephonically confirmed to the below recipients:

PERKINS COIE LLP
Attention:  Eric Walker
131 S. Dearborn Street Suite 1700
Chicago, Illinois 60603
Telephone:  (312) 324-8659
Facsimile:  (312) 324-9659
E-mail:  ewalker@perkinscoie.com

- and -

PERKINS COIE LLP
Attention:  John D. Penn
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone:  (214) 965-7734
Facsimile:  (214) 965-7784
E-mail:  jpenn@perkinscoie.com

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent
to them at their last known address or to the last known address of their attorney of record in the

Chapter 11 Case.  Any such Holder of a Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

14.13.  *Severability*.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.14.  *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

14.15.  *Request for Confirmation*.  The Debtor requests entry of the Confirmation Order under section 1129(a) of the Bankruptcy Code and, to the extent necessary, section 1129(b) of the Bankruptcy Code.


[*Remainder of Page Intentionally Left Blank*]

Dated: July 12, 2021                    Respectfully submitted,

AMSTERDAM HOUSE CONTINUING CARE
RETIREMENT COMMUNITY, INC.

By: _____
      Name: James Davis
      Title: President and Chief Executive Officer

*[Signature page for First Amended Plan of Reorganization]*