Thomas R. Califano
William E. Curtin
Shafaq Hasan
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: tom.califano@sidley.com
      wcurtin@sidley.com
      shafaq.hasan@sidley.com

Jackson T. Garvey
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: jgarvey@sidley.com

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.,[1]<br>aka The Amsterdam at Harborside<br>aka The Harborside<br>aka Harborside Legacy Fund<br>aka Harborside Legacy Foundation,<br><br>             Debtor. | Chapter 11<br><br>Case No. 21-71095 (AST) |

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT**
**OF ENTRY OF AN ORDER CONFIRMING THE REVISED**
**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR**
**<u>AMSTERDAM HOUSE CONTINUING CARE RETIREMENT COMMUNITY, INC.</u>**

---

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

I.    Background ........................................................................................................................ 3

    A.    General Background of the Chapter 11 Case.............................................................. 3

    B.    The Debtor's Plan of Reorganization ........................................................................ 4

    C.    Voting Status ............................................................................................................. 6

ARGUMENT ....................................................................................................................... 8

II.   The Revised First Amended Plan Complies with the Applicable Provisions of Section
    1129 of the Bankruptcy Code and Should be Confirmed ............................................. 8

    A.    The Revised First Amended Plan Complies with the Application Provisions of
        Section 1129(a)(1) of the Bankruptcy Code............................................................. 9

        1.    The Revised First Amended Plan's Classification of Claims and Interests
            Complies with Section 1122 of the Bankruptcy Code........................................ 10

        2.    The Revised First Amended Plan Satisfies the Mandatory Requirements of
            Section 1123(a) of the Bankruptcy Code ......................................................... 11

        3.    Compliance with Section 1123(b) of the Bankruptcy Code ............................... 13

    B.    The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code
        (11 U.S.C. § 1129(a)(2))......................................................................................... 16

        1.    The Debtor Has Complied with the Disclosure and Solicitation Requirement of
            Section 1125 ....................................................................................................... 17

        2.    The Debtor Satisfied the Plan Acceptance Requirements of Section 1126....... 18

    C.    The Revised First Amended Plan Has Been Proposed in Good Faith (11 U.S.C.
        § 1129(a)(3))........................................................................................................... 18

    D.    The Revised First Amended Plan Provides that the Payments of Professional Fees
        and Expenses Are Subject to Bankruptcy Court Approval (11 U.S.C. § 1129(a)(4))
        .................................................................................................................................. 20

    E.    The Debtor Has Disclosed All Necessary Information Regarding Directors and
        Officers of the Reorganized Debtor (11 U.S.C. § 1129(a)(5)).................................. 21

    F.    Section 1129(a)(6) of the Bankruptcy Code Is Inapplicable to the Revised First
        Amended Plan ......................................................................................................... 21

    G.    The Revised First Amended Plan Is in the Best Interests of All Holders of Claims
        and Interests in the Debtor (11 U.S.C. § 1129(a)(7)).............................................. 22

    H.    The Revised First Amended Plan Qualifies for "Cram Down" And, Thus, Section
        1129(a)(8) Need Not Be Satisfied ......................................................................... 23

    I.    The Revised First Amended Plan Complies with Statutorily Mandated Treatment
        of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9))...................... 23

    J.    At Least One Impaired Class of Claims Has Accepted the Revised First Amended
        Plan (11 U.S.C. § 1129(a)(10))............................................................................. 25

K.  **The Revised First Amended Plan Is Feasible (11 U.S.C. § 1129(a)(11))** ................. 25

L.  **All Fees Payable Under Section 1930 of Title 28 Have Been or Will Be Paid Under the Revised First Amended Plan (11 U.S.C. § 1129(a)(12))** ...................................... 30

M.  **Section 1129(a)(13) Does Not Apply to the Revised First Amended Plan** .............. 31

N.  **Section 1129(a)(14) of the Bankruptcy Code Is Inapplicable to the Revised First Amended Plan** ........................................................................................................... 31

O.  **Section 1129(a)(15) of the Bankruptcy Code Is Inapplicable to the Revised First Amended Plan** ........................................................................................................... 31

P.  **The Revised First Amended Plan Complies with All Applicable Provisions of Nonbankruptcy Law Governing Transfers of Property by Not-for-Profit Corporations (11 U.S.C. § 1129(a)(16))** .......................................................................... 32

Q.  **The Revised First Amended Plan Satisfies the Cram Down Requirement Under Section 1129(b)** ......................................................................................................... 32

R.  **The Debtor Has Only Sought to Confirm One Plan Under § 1129(c)** .................... 34

S.  **The Revised First Amended Plan's Principal Purpose Is Not the Avoidance of Taxes (11 U.S.C. § 1129(d))** ...................................................................................... 34

T.  **Section 1129(e) of the Bankruptcy Code Is Inapplicable in the Chapter 11 Case** . 34

III.  **The Discretionary Contents of the Revised First Amended Plan, Including the Releases, Are Appropriate** .................................................................................................. 35

A.  **The Releases Contained in the Revised First Amended Plan are Appropriate** ..... 36

1.  **The Court Should Approve the Debtor Release** .................................................. 36

2.  **The Court Should Approve the Third-Party Release** ........................................... 38

B.  **The Exculpation Provision is Appropriate and Should Be Approved** ................... 40

C.  **The Injunction Provision is Appropriately Tailored to Implement the Revised First Amended Plan and Should be Approved** ........................................................ 42

**WAIVER OF STAY OF CONFIRMATION ORDER** ............................................................. 43

**CONCLUSION** ....................................................................................................................... 45

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 11,111, Inc.*,
   117 B.R. 471 (Bankr. D. Minn. 1990) ...................................................................10

*In re: Absolut Facilities Management, LLC, et al.*,
   Case No. 19-76260 (AST) (Bankr. E.D.N.Y. May 18, 2020) ...........................................41, 42

*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007)...............................................................................22

*In re Adelphia Commc'ns Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007)......................................................................39

*In re Airadigm Commc'ns, Inc.*,
   519 F.3d 640 (7th Cir. 2008) ................................................................................35

*In re Albert Lindley Lee Mem'l Hosp.*,
   No. 09-30845, 2010 WL 4739711 (Bankr. N.D.N.Y. July 15, 2010) ....................................32

*In re Almatis, B.V.*,
   No. 10-12308 (Bankr. S.D.N.Y. Sept. 20, 2010)...............................................41, 43

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   No. 07-12395 (BRL) 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007) ...................42, 43

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St.*,
   526 U.S. 434 (1999)....................................................................................22, 33

*In re Cellular Info. Sys., Inc.*,
   171 B.R. 926 (Bankr. S.D.N.Y. 1994)....................................................................37

*In re Cengage Learning, Inc.*,
   No. 13-44106 (ESS) (Bankr. E.D.N.Y. Mar. 14, 2014) ..................................41, 43

*In re Chateaugay Corp.*,
   177 B.R. 176 (Bankr. S.D.N.Y. 1995) ......................................................................8

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
   416 F.3d 136 (2d Cir. 2005)................................................................................39

*DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*,
   634 F.3d 79 (2d Cir. 2011)..................................................................................26

*In re Dow Corning Corp.*,
    280 F.3d 648 (6th Cir. 2002) ...........................................................................8, 35

*In re Drexel Burnham Lambert Grp., Inc.*,
    138 B.R. 714 (Bankr. S.D.N.Y. 1992), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992) .......................10

*In re Drexel Burnham Lambert Grp., Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992).......................................................................... *passim*

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)........................................................................................23

*In re Enron Corp.*,
    326 B.R. 497 (S.D.N.Y. 2005)................................................................................40, 42

*In re Genco Shipping & Trading Ltd.*,
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) .............................................................................8

*In re Granite Broad. Corp.*,
    369 B.R. 120 (Bankr. S.D.N.Y. 2007) ...........................................................................42

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe*
    *Enters., Ltd. II)*,
    994 F.2d 1160 (5th Cir. 1993) ........................................................................................8

*In re: Interfaith Medical Center, Inc.*,
    Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. June 11, 2014) ..........................................41, 42

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other*
    *grounds*, 78 B.R. 407 (S.D.N.Y. 1997), *aff'd sub nom. Kane v. Johns-*
    *Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) .........................................................9, 17, 20, 26

*In re Johnson*,
    69 B.R. 726 (Bankr. W.D.N.Y. 1987) .............................................................................10

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988)...............................................................................8, 19, 26, 33

*In re Leslie Fay Cos.*,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997).........................................................................19, 26

*In re Motors Liquidation Co.*,
    447 B.R. 198 (S.D.N.Y. 2011)....................................................................................37

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)...............................................................................................19

*In re One Times Square Assocs. Ltd. P'ship*,
    159 B.R. 695 (Bankr. S.D.N.Y. 1993) ...................................................................26

*In re Oneida Ltd.*,
    351 B.R. 79 (Bankr. S.D.N.Y. 2006) .....................................................................40

*In re: Orion Healthcorp, Inc., et al.*,
    Case No. 18-71748 (AST) (Bankr. E.D.N.Y. Feb. 26, 2019).........................41, 42

*Pereira v. Foong (In re Ngan Gung Rest.)*,
    254 B.R. 566 (Bankr. S.D.N.Y. 2000)...................................................................19

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
    761 F.2d 1374 (9th Cir. 1985) ...............................................................................26

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000)...................................................................................40

*ReGen Capital I, Inc. v. Halperin (In re Wireless Data, Inc.)*,
    547 F.3d 484 (2d Cir. 2008)...................................................................................22

*In re Residential Capital, LLC*,
    No. 12-12020 (Bankr. S.D.N.Y. Dec. 11, 2013).................................................41, 43

*Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*,
    68 F.3d 26 (2d Cir. 1995) ......................................................................................37

*In re Rubie's Costume Company, Inc., et al.*,
    Case Nos. 20-71970 ..........................................................................................41, 42

*In re Save Our Springs (S.O.S.) Alliance, Inc.*,
    388 B.R. 202 (Bankr. W.D. Tex. 2008), *aff'd*, 632 F.3d 168 (5th Cir. 2011) ........33

*Teamsters Nat'l Freight Indus. Negotiating Comm. v U.S. Truck Co. (In re U.S. Truck Co.)*,
    800 F.2d 581 (6th Cir. 1986) .................................................................................10

*In re Texaco*,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y.
    1988) ........................................................................................................................9

*The Woodcrest Club, Inc.*, No. 09–79481 (DTE), 2010 WL 5053972 (Bankr.
    E.D.N.Y. Aug. 9, 2010) ..........................................................................................8

*In re U.S. Truck Co.*,
    47 B.R. 932 (E.D. Mich. 1985)..............................................................................27

*United States v. Energy Res. Co.*,
    495 U.S. 545 (1990) .................................................................................35

*United States v. Reorganized CF&I Fabricators, Inc.*,
    518 U.S. 213 (1996) .................................................................................22

*In re Uno Rest. Holdings Corp.*,
    No. 10-10209 (Bankr. S.D.N.Y. July 6, 2010) ...............................41, 43

*In re WCI Cable, Inc.*,
    282 B.R. 457 (Bankr. D. Or. 2002)..........................................................37

*In re Woodmere Investors Ltd. P'ship*,
    178 B.R. 346 (Bankr. S.D.N.Y. 1995) .....................................................26

*In re WorldCom, Inc.*,
    No. 0213533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .........9, 17, 19, 37

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ..........................................................19

**Statutes**

11 U.S.C. § 105(a) .........................................................................................35

11 U.S.C. § 524(g) .........................................................................................42

11 U.S.C. § 1122(a) .......................................................................................10

11 U.S.C. §§ 1123(a)(1)–(8) .........................................................................11

11 U.S.C. § 1123(a)(1)-(5), (7) .....................................................................13

11 U.S.C. § 1123(b) .......................................................................................13

11 U.S.C. § 1123(b)(1) ..................................................................................13

11 U.S.C. § 1123(b)(1)–(6) ...........................................................................35

11 U.S.C. § 1123(b)(2) ..................................................................................14

11 U.S.C. § 1123(b)(3)(A) ..................................................................14, 36, 37

11 U.S.C. §1123(b)(3)(B) ..............................................................................15

11 U.S.C. § 1123(b)(5) ..................................................................................15

11 U.S.C. § 1123(b)(6) ............................................................................16, 35

11 U.S.C. § 1125(b) ...................................................................................................................17

11 U.S.C. § 1126(c) .............................................................................................................18, 23

11 U.S.C. § 1126(f) ...............................................................................................................7, 23

11 U.S.C. § 1129(a)(2) ........................................................................................................16, 17

11 U.S.C. § 1129(a)(3) ........................................................................................................18, 20

11 U.S.C. § 1129(a)(4) ..............................................................................................................20

11 U.S.C. § 1129(a)(5) ..............................................................................................................21

11 U.S.C. § 1129(a)(6) ..............................................................................................................22

11 U.S.C. § 1129(a)(7) ..............................................................................................................22

11 U.S.C. § 1129(a)(7)(A) .........................................................................................................22

11 U.S.C. § 1129(a)(9) ....................................................................................................23, 24, 25

11 U.S.C. § 1129(a)(10) ............................................................................................................25

11 U.S.C. § 1129(a)(11) .................................................................................................25, 26, 30

11 U.S.C. § 1129(a)(12) ............................................................................................................30

11 U.S.C. § 1129(a)(14) ............................................................................................................31

11 U.S.C. § 1129(a)(15) ............................................................................................................32

11 U.S.C. § 1129(a)(16) ............................................................................................................32

11 U.S.C. §1129(b)(1) .........................................................................................................33, 34

11 U.S.C. § 1129(b)(2)(B)(ii) ....................................................................................................33

11 U.S.C. § 1129(c) ...................................................................................................................34

11 U.S.C. § 1129(C)(ii) .............................................................................................................33

11 U.S.C. § 1129(d) ...................................................................................................................34

11 U.S.C. § 1129(e) ...................................................................................................................35

N.Y. Not-for-Profit Corp. Law § 501 (Consol. 2014) ................................................................13

**Other Authorities**

Fed. R. Bankr. P. 3020(e) ...............................................................................................43

Fed. R. Bankr. P. 7062(a) ...............................................................................................43

Fed. R. Bankr. P. 9019(a) ...............................................................................................37

Fed. R. Bankr. P. 3020(b)(2) ...........................................................................................18

H.R. Rep. No. 95-595 (1977) ...........................................................................................17

H.R. Rep. No. 95595 (1977) ..............................................................................................9

S. Rep. No. 95-989 (1978) ...........................................................................................9, 17

S. Rep. No. 95-989 (1978) ...............................................................................................23

Amsterdam House Continuing Care Retirement Community, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), submits this memorandum of law (this "Confirmation Memorandum") in support of its request for entry of an order confirming the *Debtor's Revised First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 193] (as it may be further amended, modified or supplemented from time to time, the "Revised First Amended Plan").[1]    In connection with this Confirmation Memorandum, the Debtor submits the *Declaration of James Davis In Support of the Revised First Amended Chapter 11 Plan of Reorganization for Amsterdam House Continuing Care Retirement Community, Inc.* [Docket No. 195] (the "Davis Declaration") and the *Declaration of David B. Fields In Support of the Revised First Amended Chapter 11 Plan of Reorganization for Amsterdam House Continuing Care Retirement Community, Inc.* [Docket No. 196] (the "Fields Declaration"), each of which was filed concurrently herewith.  In addition, this Confirmation Memorandum makes reference to the *Declaration of Andres A. Estrada with Respect to the Tabulation of Votes on the Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 190] (the "Voting Declaration" and, together with the Davis Declaration and Fields Declaration, the "Declarations").  In further support of its request for confirmation of the Revised First Amended Plan, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Revised First Amended Plan is the product of extensive good faith, arm's-length negotiations between the Debtor and its primary stakeholders, including the trustee for the Debtor's outstanding 2014 Bonds (including any successors, the "2014 Bond Trustee"), the holders of approximately 75% in principal amount of the Debtor's 2014 Bonds (the "Consenting

---

[1] Capitalized terms used but not defined in this Confirmation Memorandum shall have the meanings given to them in the Revised First Amended Plan.

Holders"). The Debtor worked cooperatively with its primary regulators, with its Residents and with the families of former residents who had significant claims for entrance fee refunds. The Revised First Amended Plan preserves the Debtor's business, puts it on sound financial footing for the future and allows the Debtor to meet its obligations to past, present, and future Residents. The Plan also puts the Debtor in compliance with applicable New York State regulations. The Revised First Amended Plan also facilitates the consummation of a debt-for-debt exchange supported by the vast majority of holders of 2014 Bonds and the issuance of new bond debt to fund plan obligations. Under the Revised First Amended Plan, the Series 2014A Bonds and Series 2014B Bonds will be exchanged for Series 2021B Bonds in a face amount equal to 91% of their principal amount outstanding, a debt principal reduction of approximately $12,589,930. The existing Series 2014C Bonds, with an outstanding principal amount of $59,537,660, will be extinguished without any payment or consideration. Further, pursuant to the Revised First Amended Plan, not only will the Debtor reduce its bond obligations by nearly $80,000,000 plus accrued interest, but an additional bond purchase by the Consenting Holders and contributions by the Member will collectively bring $58,710,000 of new money into the Debtor to meet its debt service obligations, fund compliance with regulatory requirements (including minimum liquidity reserve requirements), fund the payment of entrance fee refunds to former residents, and fund operational expenses, dramatically improving liquidity. The consummation of the Revised First Amended Plan will position the Debtor to continue to provide the highest levels of Resident care into the future. For the reasons set forth herein and in the Declarations, the Revised First Amended Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Accordingly, the Debtor respectfully submits that the Court should enter an order confirming the Revised First Amended Plan.

## I.      Background

### A.      General Background of the Chapter 11 Case

2.      On June 14, 2021 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (this "<u>Court</u>").  The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 30, 2021, the United States Trustee for the Eastern District of New York (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors (the "<u>Creditors' Committee</u>") pursuant to section 1102 of the Bankruptcy Code [Docket No. 73].

3.      For an overview of the facts relevant to the relief discussed herein, the Debtor refers the Court to the record of this chapter 11 case (the "<u>Chapter 11 Case</u>"), including the following:

(a)      the *Declaration of James Davis in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [Docket No. 2] (the "<u>First-Day Declaration</u>");

(b)      the Revised First Amended Plan;

(c)      the Revised First Amended Disclosure Statement (as defined herein);

(d)      the Disclosure Statement Order (as defined herein);

(e)      the Plan Supplement (as defined herein);

(f)      the Voting Declaration;

(g)      the Davis Declaration; and

(h)      the Fields Declaration.

The Debtor incorporates herein by reference, as if fully set forth herein, the foregoing documents and any other evidence proffered or adduced or arguments presented in the Chapter 11 Case, including at the Confirmation Hearing (as defined below).  The Debtor will seek to enter the Declarations into evidence at the Confirmation Hearing.

**B.      The Debtor's Plan of Reorganization**

4.      On June 15, 2021, the Debtor filed the *Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 16] (the "<u>Original Plan</u>").   Concurrently therewith, the Debtor also filed the *Disclosure Statement for Debtor's Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "<u>Original Disclosure Statement</u>").  On June 18, 2021, the Debtor filed the *Debtor's Motion for an Order (I) Approving the Disclosure Statement; (II) Establishing Plan Solicitation, Voting, and Tabulation Procedures; (III) Approving Forms of Notices and Ballots; (IV) Scheduling a Hearing for Plan Confirmation; (V) Shortening Notice for Disclosure Statement Hearing and Objections to Disclosure Statement; (VI) Shortening Notice for Objections to Plan and (VII) Granting Related Relief* [Docket No. 46] (the "<u>Solicitation Procedures Motion</u>").

5.      On July 12, 2021, the Debtor filed the *Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 105] (the "<u>First Amended Plan</u>") and the *Disclosure Statement for the Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 106] (the "<u>First Amended Disclosure Statement</u>").   On July 19, 2021, the Debtor filed a revised *Disclosure Statement for Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "<u>Revised First Amended Disclosure Statement</u>") [Docket No. 129].

6.      On July 20, 2021, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Establishing Plan Solicitation, Voting, and Tabulation Procedures; (III) Approving Forms of Notices and Ballots; (IV) Scheduling a Hearing for Plan Confirmation; (V) Shortening Notice for Disclosure Statement Hearing and Objections to Disclosure Statement; (VI) Shortening Notice for Objections to Plan and (VII) Granting Related Relief* [Docket No. 132] (the "<u>Disclosure Statement Order</u>"), which, among other things, approved the adequacy of the Disclosure

Statement, the solicitation and voting procedures attached to the Solicitation Procedures Motion as Exhibit B (the "Solicitation and Voting Procedures"), and the forms and manner of service of certain related notices, forms, and ballots attached as exhibits to the Disclosure Statement Order (collectively, the "Solicitation Packages"). On July 23, 2021, the Debtor caused the Solicitation Packages, notices of non-voting status to holders of unimpaired claims and holders of claims deemed to reject the First Amended Plan, and notices of the Confirmation Hearing to be distributed, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by the *Certificate of Service of Andres Estrada re: Solicitation Materials Served on July 23, 2021* and the *Supplemental Certificate of Service of Heather Fellows re: Solicitation Materials Served on July 27, 2021* [Docket Nos. 149 and 152] (the "Solicitation Affidavits of Service"). On July 26, 2021, the Debtor also caused notice of the hearing on confirmation of the Revised First Amended Plan (the "Confirmation Hearing") to be published in the *New York Times*, as evidenced by the *Affidavit of Publication of Notice of Confirmation Hearing and Objection Deadline with Respect to the First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Proposed by the Debtor in The New York Times National Edition* [Docket No. 147].

7.      On August 6, 2021, the Debtor filed the *Supplement to Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 166] (as it has been and may be further modified or supplemented from time to time, the "Plan Supplement"). The Plan Supplement contains the following documents: (a) the Assumption Schedule; (b) the Rejection Schedule; (c) the opinion of bond counsel with respect to the Series 2021 Bonds; (d) the Member Contribution Agreement; and (e) the LSA. Notice of the filing of the Plan Supplement

was served on all Holders of Claims on August 11, 2021 and on certain other parties in interest on August 6, 2021, as set forth in the *Certificates of Service* dated August 7, 2021 and August 16, 2021 [Docket Nos. 172, 183].

8.      On August 18, 2021, the Debtor filed the *First Amended Supplement to Debtor's First Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 189], which attached an amended copy of the Assumption Schedule.

9.      On August 18, 2021 the Debtor filed the Voting Declaration.   The Voting Declaration attaches a Ballot Tabulation Summary, which summarizes and includes the details of the results of voting on the Revised First Amended Plan (the "Ballot Tabulation Summary"), as Exhibit A.

10.      No objections were filed to the First Amended Plan.  The Debtor received certain informal comments and requests that clarifying language be added to the First Amended Plan, and the Debtor's responses to these comments are reflected in the Revised First Amended Plan or the proposed confirmation order (the "Proposed Confirmation Order").

11.      Consequently, the Debtor filed the Revised First Amended Plan, which made certain conforming, technical, and non-material edits to the First Amended Plan on August 20, 2021.

**C.      Voting Status**

12.      The Revised First Amended Plan designates seven Classes of Claims against, and Interests in, the Debtor.  As set forth in greater detail in the Ballot Tabulation Summary, the following Classes of Claims under the Revised First Amended Plan were entitled to vote on, and voted to accept or reject, the Revised First Amended Plan as set forth below:

| Class | Ballots Voting to Accept | | Ballots Voting to Reject | | Result |
|---|---|---|---|---|---|
| | % (Number) | % (Amount) | % (Number) | % (Amount) | |
| **Class 3:** Bond Claims | 83.46% (106) | 98.00% ($171,201,064.00) | 16.54% (21) | 2.00% ($4,012,541) | Voted to Accept |
| **Class 4**: General Unsecured Claims | 66.67% (4) | 64.96% ($59,413.17) | 33.33% (2) | 35.04% ($32,050.93) | Voted to Reject |
| **Class 5:** Resident Refund Claims | 100.00% (27) | 100.00% ($17,128,355.82) | 0.00% (0) | 0.00% ($0) | Voted to Accept |

13.     Class 3 (Bond Claims), Class 4 (General Unsecured Claims) and Class 5 (Resident Refund Claims) received Solicitation Packages as impaired classes and were entitled to vote on the First Amended Plan (the "Voting Classes").  Classes 3 and 5 voted to accept the First Amended Plan Classes 1, 2, and 7 are not impaired under the First Amended Plan and, therefore, are conclusively presumed to have accepted the First Amended Plan and not entitled to vote (collectively with Class 6, the "Non-Voting Classes").  11 U.S.C. § 1126(f).  Class 6 (Intercompany Claims) is conclusively deemed to reject the First Amended Plan, and Class 4 (General Unsecured Claims) was the sole Voting Class that voted to reject the First Amended Plan—and did so by only one percent (collectively, the "Rejecting Classes").  Consistent with the plan support agreement (as it may be further modified or supplemented from time to time, the "Plan Support Agreement"), the Consenting Holders voted to accept the Revised First Amended Plan.

## **ARGUMENT**

II.     **The Revised First Amended Plan Complies with the Applicable Provisions of Section 1129 of the Bankruptcy Code and Should be Confirmed**

14.     To confirm the Revised First Amended Plan, the Court must find that the Debtor has satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. *See, e.g., Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988) ("the legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans . . ."); *The Woodcrest Club, Inc.*, No. 09–79481 (DTE), 2010 WL 5053972, at *2 (Bankr. E.D.N.Y. Aug. 9, 2010) ("The Debtor has the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence."); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 241 (Bankr. S.D.N.Y. 2014) ("The Debtors, as the proponents of the Revised First Amended Plan, bear the burden of establishing by a preponderance of the evidence that the Revised First Amended Plan meets the requirements of Section 1129 of the Bankruptcy Code."); *see also Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) ("The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both [under] § 1129(a) and in a cramdown.") (footnote omitted).

15.     Bankruptcy courts have considerable discretion to confirm chapter 11 plans. *See, e.g., In re Chateaugay Corp.*, 177 B.R. 176, 186 (Bankr. S.D.N.Y. 1995) ("[I]t remains clear that Congress intended to afford bankruptcy judges broad discretion to decide the propriety of plans in light of the facts of each case.") (citation omitted); *see also In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) ("Consistent with section 105(a)'s broad grant of authority, the Code

allows bankruptcy courts considerable discretion to approve plans of reorganization.") (*citing United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) and 11 U.S.C. § 1123(b)(6))).

16.     As set forth below, the Revised First Amended Plan satisfies all applicable elements of section 1129 and otherwise complies with all applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.  No party in this Chapter 11 Case suggests otherwise, no objections were filed to confirmation of the First Amended Plan or Revised First Amended Plan, and the First Amended Plan was accepted by two of the three eligible Voting Classes, with the third Voting Class only one percent short of acceptance.  Accordingly, the Court should confirm the Revised First Amended Plan.

### A.     The Revised First Amended Plan Complies with the Application Provisions of Section 1129(a)(1) of the Bankruptcy Code

17.     Section 1129(a)(1) of the Bankruptcy Code requires that a chapter 11 plan must comply with the applicable provisions of the Bankruptcy Code.  The legislative history of section 1129(a)(1) indicates that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and equity interests and contents of a plan, respectively.  *See* H.R. Rep. No. 95595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also In re WorldCom, Inc.*, No. 0213533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Drexel Burnham II"); *In re Texaco*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) (citations omitted), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988); *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1997), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

18.     As explained below, the Revised First Amended Plan complies with sections 1122 and 1123 of the Bankruptcy Code in all respects.

1.    **The Revised First Amended Plan's Classification of Claims and Interests Complies with Section 1122 of the Bankruptcy Code**

19.    Section 1122 of the Bankruptcy Code provides, in pertinent part:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).   Under this section, a plan may designate multiple classes of claims or interests if each claim or interest within a class is substantially similar to other claims or interests in that class.   "Substantially similar" generally has been interpreted to mean similar in legal character to other claims to a debtor's assets or to other interests in a debtor.   *See Drexel Burnham II*, 138 B.R. at 757.   The classification requirements of section 1122 do not require that all substantially similar claims or interests be placed in the same class, but merely that any group be homogenous.   *See Teamsters Nat'l Freight Indus. Negotiating Comm. v U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 585 (6th Cir. 1986) ("Section 1122(a) specifies that only claims which are 'substantially similar' may be placed in the same class.   It does not require that similar claims *must* be grouped together, but merely that any group created must be homogenous."); *Drexel Burnham II*, 138 B.R. at 757 ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.   It does not require that similar classes be grouped together, but merely that any groups be homogenous or share some attributes."); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992) ("[Section 1122(a)] does not require that similar classes be grouped together, but merely that any group be homogenous."), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992) ("Drexel Burnham I"); *see also In re Johnson*, 69 B.R. 726, 728 (Bankr. W.D.N.Y. 1987); *In re 11,111, Inc.*, 117 B.R. 471, 476 (Bankr. D. Minn. 1990).

20.    The Revised First Amended Plan complies with section 1122(a) by classifying claims and interests into classes based upon legal rights, priority, and business considerations

underlying such claims and interests.  The Revised First Amended Plan provides for seven Classes of Claims and Interests in the Debtor as follows:

- Class 1 consists of all Other Priority Claims.

- Class 2 consists of all Other Secured Claims.

- Class 3 consists of all Series 2014 Bond Claims.

- Class 4 consists of all General Unsecured Claims, Including Rejection Damage Claims.

- Class 5 consists of all Resident Refund Claims.

- Class 6 consists of all Intercompany Claims.

- Class 7 consists of all Interests in the Debtor.

21.    As required by section 1122 of the Bankruptcy Code, all Claims and Interests in each Class established under the Revised First Amended Plan are substantially similar to the other Claims or Interests in such Class.  *See* Davis Declaration at ¶ 10.  Therefore, the Revised First Amended Plan satisfies section 1122 of the Bankruptcy Code.

## 2.    The Revised First Amended Plan Satisfies the Mandatory Requirements of Section 1123(a) of the Bankruptcy Code

22.    Section 1123(a) of the Bankruptcy Code identifies eight requirements for the contents of a chapter 11 plan.  *See* 11 U.S.C. §§ 1123(a)(1)–(8).  As demonstrated below, the Revised First Amended Plan complies with all applicable requirements of section 1123(a) of the Bankruptcy Code because:

(i)    as required by section 1123(a)(1) of the Bankruptcy Code, Section 3 of the Revised First Amended Plan designates classes of claims and interests;

(ii)    as required by section 1123(a)(2) of the Bankruptcy Code, Section 3 of the Revised First Amended Plan specifies which classes of claims and interests are not impaired under the Revised First Amended Plan;

(iii)    as required by section 1123(a)(3) of the Bankruptcy Code, Section 4 of the Revised First Amended Plan specifies the treatment of impaired classes of claims and interests;

(iv)    as required by section 1123(a)(4) of the Bankruptcy Code, Section 4 of the Revised First Amended Plan provides the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;

(v)    as required by section 1123(a)(5) of the Bankruptcy Code, the Revised First Amended Plan and the various documents in the Plan Supplement provide adequate and proper means for implementing the Revised First Amended Plan, including, without limitation: (i) the Refinancing Transaction; (ii) the issuance of the Series 2021 Bonds and entry into the 2021 Bond Documents; (iii) the contribution of $9 million by the Member in accordance with the terms of the Member Contribution Agreement; (iv) the maintenance of supporting reserve funds and the Member's provision of $9 million in liquidity support pursuant to the Liquidity Support Agreement; (v) the continued corporate existence of the Debtor on and after the Effective Date the Reorganized Debtor; (vi) the vesting of assets in the Reorganized Debtor; (vii) the cancellation of agreements, security interests, and other interests; (viii) the exemption from certain transfer taxes and recording fees; (ix) the maintenance of the members of the board of directors and officers unless otherwise disclosed in the Plan Supplement or prior to the commencement of the Confirmation Hearing; (x) the assumption of certain insurance policies; (xi) the preservation of rights of action; (xii) all actions set forth in Section 6 of the Revised First Amended Plan; and, (xiii) the taking of all necessary and appropriate actions by the Debtor or Reorganized Debtor, as applicable, to effectuate the transactions under and in connection with the Revised First Amended Plan. (*see* Davis Declaration at ¶ 12); and

(vi)    as required by section 1123(a)(7) of the Bankruptcy Code, Section 6.16 of the Revised First Amended Plan is consistent with the interests of creditors and interest holders and with public policy with respect to the manner of selection of the

Reorganized Debtor's officers and directors.  *See* Davis Declaration at ¶ 13.[2]

23.    In light of the foregoing, the Debtor respectfully submits that the Revised First Amended Plan satisfies section 1123(a) of the Bankruptcy Code.

### 3.    Compliance with Section 1123(b) of the Bankruptcy Code

24.    Section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan.  *See* 11 U.S.C. § 1123(b).  The Revised First Amended Plan contains the following permissive provisions allowed under section 1123(b):

       (i)    **The Revised First Amended Plan Impairs and Leaves Unimpaired Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))**

25.    Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."   11 U.S.C. § 1123(b)(1).  The Revised First Amended Plan impairs and leaves unimpaired certain Classes of Claims and Interests.  Specifically, pursuant to Section 3 of the Revised First Amended Plan, Class 3 (Bond Claims), Class 4 (General Unsecured Claims, including Rejection Damages Claims), Class 5 (Resident Refund Claims), and Class 6 (Intercompany Claims) are impaired, while Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 7 (Interests in the Debtor) are unimpaired under the Revised First Amended Plan.

---

[2] *See* 11 U.S.C. § 1123(a)(1)-(5), (7).  Section 1123(a)(6) of the Bankruptcy Code is inapplicable in this case because, among other things, the Reorganized Debtor will be a non-stock corporation whose sole member will be ACCHS. The New York Not-for-Profit Corporation Law, which will govern the Reorganized Debtor, does not permit the issuance of nonvoting equity securities.  *See* N.Y. Not-for-Profit Corp. Law § 501 (Consol. 2014).  Section 1123(a)(8) of the Bankruptcy Code is also inapplicable because the Debtor is not an individual.

(ii)     **The Revised First Amended Plan Provides for the Assumption, Rejection, and Assignment of Certain Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))**

26.     Section 1123(b)(2) of the Bankruptcy Code provides that a plan may "subject to section 365 of [the Bankruptcy Code], provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Pursuant to Section 7 of the Revised First Amended Plan, all executory contracts and unexpired leases, including the Residency Agreements and Admission Agreements, shall be deemed to be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, except for those executory contracts (1) that are identified on the Rejection Schedule, (2) those that have previously been rejected by a Final Order of the Bankruptcy Court, (3) those that are the subject of a motion to reject Executory Contracts that is pending on the Confirmation Date, or (4) those that expired or terminated pursuant to their own terms prior to the Effective Date. The Debtor intends to assume all of its executory contracts.

(iii)    **The Revised First Amended Plan Provides for the Settlement of Claims Belonging to the Debtor and Its Estate (11 U.S.C. § 1123(b)(3)(A))**

27.     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a plan may "provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). As further detailed in Part III below, the releases described in Section 11 of the Revised First Amended Plan constitute a good-faith compromise and settlement of the Causes of Action released by the Debtor pursuant to that provision of the Revised First Amended Plan.

(iv)     **The Revised First Amended Plan Provides for the Retention of Certain Claims (11 U.S.C. §1123(b)(3)(B))**

28.     Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may "provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor or to the estate]." 11 U.S.C. § 1123(b)(3)(B).  Section 6.19 of the Revised First Amended Plan provides that, subject to the releases set forth in Section 11 of the Revised First Amended Plan, including but not limited to the release of all Causes of Action against the Trustee and the Consenting Holders, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

(v)     **The Revised First Amended Plan Modifies the Rights of Holders of Certain Claims (11 U.S.C. § 1123(b)(5))**

29.     Section 1123(b)(5) of the Bankruptcy Code provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5).  As authorized by section 1123(b)(5) of the Bankruptcy Code, Sections 3 and 4 of the Revised First Amended Plan set forth, among other things, the proposed treatment of unsecured and secured Claims against the Debtor's estate.  In certain instances, the rights of certain claimants are modified, while in other instances the rights of holders of Claims in particular Classes are unaffected.

(vi)    **The Other Discretionary Provisions of the Revised First Amended Plan are Appropriate and Not Inconsistent with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1123(b)(6))**

30.    The Bankruptcy Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 1123(b)(6). The Revised First Amended Plan provides for certain release (Sections 11.2, 11.3), exculpation (Section 11.4), and injunction (Section 11.6) provisions with respect to certain claims or Causes of Action. As set forth in Section III below, the release, exculpation, and injunction provisions of the Revised First Amended Plan are entirely appropriate and should be approved.

31.    Section 1123(d) of the Bankruptcy Code provides that "[n]otwithstanding subsection (a) of [section 1123] and sections 506(b), 1129(a)(7), and 1129(b) of [the Bankruptcy Code], if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). Section 7 of the Revised First Amended Plan includes procedures for the determination and payment of cure amounts in accordance with the Bankruptcy Code.

32.    Based on the foregoing, the Revised First Amended Plan complies with the applicable requirements of section 1123 of the Bankruptcy Code.

B.    **The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

33.    Section 1129(a)(2) requires that a debtor comply with the solicitation provisions of the Bankruptcy Code, including the disclosure and solicitation requirements in section 1125 and the plan acceptance requirements in section 1126 of the Bankruptcy Code. Legislative history and case law make clear that the "applicable provisions" with which compliance is required under section 1129(a)(2) are the disclosure and solicitation requirements of sections 1125 and 1126 of

the Bankruptcy Code. *See In re WorldCom*, 2003 WL 23861928, at \*25–26; *Drexel Burnham II*, 138 B.R. 759; *In re Johns-Manville Corp.*, 68 B.R. at 630 ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code. These sections provide for the appropriate manner of disclosure and solicitation of plan votes.") (citations omitted); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

34. As discussed below, the Debtor has fully complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, and thus satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

### 1. The Debtor Has Complied with the Disclosure and Solicitation Requirement of Section 1125

35. Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). On July 20, 2021—before the Debtor commenced soliciting votes on the Revised First Amended Plan—the Court entered the Disclosure Statement Order approving the Revised First Amended Disclosure Statement as containing adequate information and approving the Solicitation and Voting Procedures. As set forth in the Solicitation Affidavits of Service, the Debtor complied with the Disclosure Statement Order and properly mailed solicitation packages and related notices to all necessary parties.

### 2. The Debtor Satisfied the Plan Acceptance Requirements of Section 1126

36.     Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.  The Debtor did not solicit votes from Classes 1, 2, and 7, which are unimpaired.  The Debtor likewise did not solicit votes from Class 6, whose claims are either reinstated or canceled, and therefore are not entitled to any distributions under the Revised First Amended Plan and are deemed to reject the Revised First Amended Plan pursuant to section 1126(g).  *See* Revised First Amended Plan, Section 4.6.

37.     The Debtor solicited votes from holders of claims in Classes 3, 4, and 5 because each of the Voting Classes is impaired and entitled to receive a distribution under the Revised First Amended Plan.  *See* Revised First Amended Plan, Section 3.  With respect to the Voting Classes, the Bankruptcy Code provides that a class accepts a plan where holders of claims holding at least two-thirds in amount and more than one-half in number of allowed claims in such class vote to accept such plan.  11 U.S.C. § 1126(c).  Classes 3 and 5, two of the three eligible Voting Classes, have voted to accept the Revised First Amended Plan in sufficient numbers and by sufficient amounts as required by section 1126(c).  *See* Voting Declaration, Ex. A.  The third Voting Class, Class 4, voted to reject the Revised First Amended Plan by only a single percentage point.

### C. The Revised First Amended Plan Has Been Proposed in Good Faith (11 U.S.C. § 1129(a)(3))

38.     Section 1129(a)(3) of the Bankruptcy Code requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law."  Bankruptcy Rule 3020(b)(2) provides that the Court may confirm the Revised First Amended Plan without hearing evidence specifically addressing the requirements of section 1129(a)(3), so long as no objection has been filed on such grounds.  Fed. R. Bankr. P. 3020(b)(2).  No such objection has been filed.

39.     To evidence good faith, the Second Circuit requires a showing that "the plan was proposed with 'honesty and good intentions.'"   *Kane v. Johns-Manville Corp.*, 843 F.2d at 649 (*citing Koelbl v. Glessins (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984) (*quoting Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935)).   Applying this standard, courts have held that, considering all circumstances, "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code." *In re WorldCom*, 2003 WL 23861928, at *51 (citations omitted); *Drexel Burnham II*, 138 B.R. at 759; *see also In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan."); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999).

40.     Here, the Revised First Amended Plan has been proposed in good faith following extensive good-faith, arm's-length negotiations between the Debtor and its primary stakeholders with the legitimate and honest purpose of restructuring the Debtor's outstanding bond debt and maximizing the recoveries for all parties in interest in the Debtor's estate.   *See* Davis Declaration ¶ 6.   All of the Debtor's Residency Agreements and Admission Agreements will be assumed under the Revised First Amended Plan.   *Id.*   Therefore, the Revised First Amended Plan achieves the primary objective of continuing the Debtor as a viable business while distributing value to creditors for amounts owed.   *Id.* at ¶ 14; *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); *Pereira v. Foong (In re Ngan Gung Rest.)*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (highlighting the importance of

19

payment of creditors in chapter 11 cases).  Accordingly, the Revised First Amended Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

### D. The Revised First Amended Plan Provides that the Payments of Professional Fees and Expenses Are Subject to Bankruptcy Court Approval (11 U.S.C. § 1129(a)(4))

41.    Under section 1129(a)(4) of the Bankruptcy Code, the Court must find that "[a]ny payment made or to be made by the proponent . . . for services or costs and expenses in or in connection with the case, or in connection with the plan and incident to the case" be approved by the Court or subject to the Court's approval, as reasonable.  *See* 11 U.S.C. § 1129(a)(4).  Section 1129(a)(4) has been construed to require that all compensation for services rendered, and reimbursement of expenses incurred, by professionals to be paid from property of the estate be subject to approval as to their reasonableness by the Court.  *See Drexel Burnham II*, 138 B.R. at 760; *In re Johns-Manville Corp.*, 68 B.R. at 632; 7 *Collier on Bankruptcy* ¶ 1129.03[4], at 1129–41 (15th ed. rev. 2007).

42.    Pursuant to the *Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Docket No. 122], Section 2.1 of the Revised First Amended Plan, and the Proposed Confirmation Order, all compensation for services rendered, and reimbursement of expenses incurred from the Petition Date to the confirmation date (the "Confirmation Date") by professionals to be paid from property of the estate shall be subject to approval as to their reasonableness by the Court.  *See also* Davis Declaration ¶ 16.  Accordingly, the Revised First Amended Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**E.    The Debtor Has Disclosed All Necessary Information Regarding Directors and Officers of the Reorganized Debtor (11 U.S.C. § 1129(a)(5))**

43.    Section 1129(a)(5) of the Bankruptcy Code requires that (a) the plan proponent disclose the identity and affiliations of the persons proposed to serve as the initial directors and officers of the reorganized debtor, (b) the appointment or continuance of such officers or directors be consistent with the interests of creditors, equity security holders and public policy and (c) the plan proponent disclose the identity of, and the nature of any compensation paid to, insiders that will be retained or employed by the reorganized debtors, if any.  *See* 11 U.S.C. § 1129(a)(5).

44.    Section 6.16 of the Revised First Amended Plan provides that the members of the board of directors and officers of the Debtor as of the Petition Date will remain in their current capacities as directors and officers of the Reorganized Debtor unless otherwise disclosed in the Plan Supplement or prior to the commencement of the Confirmation Hearing, in each case subject to the ordinary rights and powers of the board of directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to the Revised First Amended Plan.  *See* Davis Declaration ¶ 18.  The Debtor's existing officers and directors are competent and have extensive experience managing the Debtor's affairs.  *Id.*  Further, no additional insiders are being employed by the Reorganized Debtor and the compensation of insiders being retained by the Reorganized Debtor will remain unchanged from prior to the Petition Date.  *Id.*  The retention of the Debtor's existing officers and directors is consistent with the interests of holders of Claims against and Interests in the Debtor and with public policy.

**F.    Section 1129(a)(6) of the Bankruptcy Code Is Inapplicable to the Revised First Amended Plan**

45.    Section 1129(a)(6) of the Bankruptcy Code requires that "[a]ny governmental regulatory commission with jurisdiction, after the confirmation of the plan, over the rates of the

debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6). The Revised First Amended Plan does not provide for rate changes by the Debtor. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Revised First Amended Plan.

G.      **The Revised First Amended Plan Is in the Best Interests of All Holders of Claims and Interests in the Debtor (11 U.S.C. § 1129(a)(7))**

46.      Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity security holders of the debtor. *See* 11 U.S.C. § 1129(a)(7). This "best interests" test, which focuses on potential individual dissenting creditors, requires that each holder of a claim or equity interest either accept the plan or receive or retain property under the plan that is not less than the amount such a holder would receive or retain in a chapter 7 liquidation. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St.*, 526 U.S. 434, 440 (1999); *United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996); *ReGen Capital I, Inc. v. Halperin (In re Wireless Data, Inc.)*, 547 F.3d 484, 495 (2d Cir. 2008); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 364-65 (S.D.N.Y. 2007). By its express terms, section 1129(a)(7) of the Bankruptcy Code does not apply to unimpaired Classes under the Revised First Amended Plan, and the best interests test is satisfied to the extent each holder of an impaired Class of Claims or Interests has voted to accept the Revised First Amended Plan. *See* § 1129(a)(7)(A). Under section 1129(a)(7) of the Bankruptcy Code, this requirement applies only to non-accepting holders of impaired claims or equity interests. *See In re Drexel Burnham Lambert Grp.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

47.      The Revised First Amended Plan satisfies the best interests test because it provides recoveries equal to or greater than what these creditors would receive in a chapter 7 liquidation. *See* Disclosure Statement, Ex. E (Liquidation Analysis); *See* Davis Declaration ¶ 19. Based on the

Liquidation Analysis performed by the Debtor, the Revised First Amended Plan is expected to provide recoveries to each class of Claims or Interests, including the sole rejecting Voting Class and the deemed rejecting class, equal to or greater than the recoveries such class of Claims or Interests would receive in a chapter 7 liquidation.

### H. The Revised First Amended Plan Qualifies for "Cram Down" And, Thus, Section 1129(a)(8) Need Not Be Satisfied

48. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or be unimpaired under a plan. *See* 11 U.S.C § 1126(c). A class that is not impaired under a plan, and each holder of a claim or interest in such a class, is conclusively presumed to have accepted the plan. § 1126(f); *see In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired class is presumed to have accepted the plan); *see also* S. Rep. No. 95-989, at 123 (1978) (section 1126(f) of the Bankruptcy Code "provides that no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan.").

49. Classes 3 and 5 voted to accept the Revised First Amended Plan, while Class 4 (General Unsecured Claims) has voted to reject the Revised First Amended Plan, and Class 6 (Intercompany Claims) is deemed to reject the Revised First Amended Plan. *See* Voting Declaration, Ex. A. However, as described further in Part II.Q., the Revised First Amended Plan satisfies the criteria for "cram down" under §1129(b) of the Bankruptcy Code and, thus, §1129(a)(8) of the Bankruptcy Code need not be satisfied.

### I. The Revised First Amended Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9))

50. Section 1129(a)(9) of the Bankruptcy Code requires that persons holding allowed claims entitled to priority under sections 503(b) and 507(a) receive specified cash payments under

the plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim.  11 U.S.C. § 1129(a)(9).  The Revised First Amended Plan complies with section 1129(a)(9) of the Bankruptcy Code.

51.  Section 2.1 of the Revised First Amended Plan provides that Holders of Allowed Administrative Claims, including Professional Fee Claims filed according to the procedures set forth in Section 2.1(a) of the Revised First Amended Plan, will receive Cash in an amount equal to the full unpaid amount of such Allowed Administrative Claim (a) if such Allowed General Administrative Claim is based on liabilities that the Debtor incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such Allowed General Administrative Claim; (b) if such Allowed General Administrative Claim is due, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than thirty (30) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Court or as soon as reasonably practicable thereafter; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.  The treatment of Allowed Administrative Expense Claims and Professional Fee Claims, therefore, satisfies section 1129(a)(9)(A) of the Bankruptcy Code.

52.  Section 2.2 of the Revised First Amended Plan provides that Holders of Allowed Priority Tax Claims shall receive payment in full in Cash in accordance with the terms of any agreement between the Debtor or Reorganized Debtor, as applicable, and such Holder, or as such

Allowed Priority Tax Claim may be due and payable under applicable non-bankruptcy law or in the ordinary course of business on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.  *See* Revised First Amended Plan, Section 2.2. Accordingly, the treatment of Priority Tax Claims also satisfies section 1129(a)(9)(C) of the Bankruptcy Code.

53.    All Claims entitled to priority under section 507 of the Bankruptcy Code will be satisfied in full under the Revised First Amended Plan, and accordingly, the Revised First Amended Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

54.    Based on the foregoing, the Revised First Amended Plan complies with section 1129(a)(9) of the Bankruptcy Code.

**J.      At Least One Impaired Class of Claims Has Accepted the Revised First Amended Plan (11 U.S.C. § 1129(a)(10))**

55.    Section 1129(a)(10) of the Bankruptcy Code requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  As described above and set forth in the Ballot Tabulation Summary, Classes 3 and 5 are impaired, are entitled to vote, and voted to accept the Revised First Amended Plan (excluding any acceptances by insiders).  *See* Voting Declaration, Ex. A; *see also* Davis Declaration ¶ 20. Accordingly, the Revised First Amended Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**K.      The Revised First Amended Plan Is Feasible (11 U.S.C. § 1129(a)(11))**

56.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine the Revised First Amended Plan is feasible prior to confirmation.   Specifically, the Court must determine that confirmation "is not likely to be followed by the liquidation, or the need for further

financial reorganization, of the debtors or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

57.    The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code requires a court to determine whether the proposed plan offers a reasonable assurance of success. *See, e.g., DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 106 (2d Cir. 2011); *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *In re Leslie Fay Cos.*, 207 B.R. at 788; *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995); *Drexel Burnham II*, 138 B.R. at 762; *In re Johns-Manville Corp.*, 68 B.R. at 635.   Success need not be guaranteed. *See, e.g.*, *In re DBSD N. Am., Inc.*, 634 F.3d at 106 (citing *Kane* for the proposition that "[f]or a plan to be feasible, it must 'offer[] a reasonable assurance of success,' but it need not 'guarantee[]' success."); *Kane v. Johns-Manville Corp.*, 843 F.2d at 649 ("Success need not be guaranteed."); *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("'It is not necessary that the success be guaranteed, but only that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success.'") (quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11], at 112954 (15th ed. 1992)).

58.    The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed. *Drexel Burnham II*, 138 B.R. 762 (citing *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985)).   The purpose of the feasibility test is to protect against visionary or speculative plans. As noted by the Ninth Circuit:

> The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 *Collier on Bankruptcy* ¶ 1129.02, at 1129-36.11 (15th ed. 1984)).   However, just

as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. *See In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed.").

59. The Debtor, with the help of its financial professionals, has analyzed the ability of the Reorganized Debtor to meet its obligations under the Revised First Amended Plan and retain sufficient liquidity and capital resources to conduct its business. *See* Davis Declaration ¶ 23. For example, the Debtor prepared financial projections, attached to the Revised First Amended Disclosure Statement as Exhibit D (the "Financial Projections"), to show that after the Effective Date, the Reorganized Debtor will have sufficient liquidity to operate its business and that no liquidation or further reorganization will be necessary. *Id.*; *Fields Declaration* at ¶¶ 8–9.

60. Moreover, there are significant differences between this Chapter 11 Case and the Debtor's previous chapter 11 filing in 2014 (the "2014 Chapter 11 Case"). While in the 2014 Chapter 11 Case the Debtor's then-existing series 2007 bonds (plus accrued and unpaid interest during the bankruptcy period) were exchanged for new 2014 Bonds, without any influx of cash and without any reduction in principal, in this Chapter 11 Case the Series 2014A Bonds and Series 2014B Bonds will be exchanged for Series 2021B Bonds in a face amount equal to 91% of their principal amount outstanding, resulting in a debt principal reduction of approximately $12,589,930. Fields Declaration ¶ 12. The existing Series 2014C Bonds, with an outstanding principal amount of $59,537,660, will be extinguished without any payment or consideration. *Id.*

61. Further, pursuant to the Revised First Amended Plan, not only will the Debtor reduce its bond obligations by nearly $80,000,000 plus accrued interest, but is also issuing new

bonds with a face amount in excess of $40,000,000 (which the Consenting Bondholders have committed to purchase). The Debtor's Member is contributing $9,000,000 to meet plan obligations and has committed to provide an additional $9,000,000 through a Liquidity Support Agreement. This new funding will allow the Debtor to meet its debt service obligations, fund compliance with regulatory requirements (including minimum liquidity reserve requirements), fund the payment of entrance fee refunds for former residents, and fund operational expenses, dramatically improving liquidity. Fields Declaration ¶ 13.

62.     Specifically, on the Effective Date of the Revised First Amended Plan, the Consenting Holders will purchase an additional $40,710,000 in Series 2021A Bonds for cash. Fields Declaration ¶ 14. This influx of new cash will be used to (a) repay entrance fee refunds owed to the Debtor's former residents in an aggregate amount of approximately $20,835,000; (b) fund $9,000,000 toward the Debtor's satisfaction of the minimum liquidity reserve requirement (the "MLRR") under applicable New York state law; and (c) fund a debt service reserve fund, a contingency and the costs of issuance of the 2021 Bonds. *Id.* Further, the Member will contribute $9 million to the Debtor and provide an additional funded $9 million LSA for not less than a 10-year period, which shall be reserved for making payments to keep the Debtor in regulatory compliance, including required payments of future entrance fee refunds and satisfaction of the MLRR. *Id.*

63.     The Debtor's ability to retain cash on hand will also be greatly improved following consummation of the Revised First Amended Plan. Fields Declaration ¶ 15. Following its 2014 reorganization, any excess cash over 175 days' cash on hand was swept and used toward the repayment of outstanding Series 2014B Bonds. *Id.* Once the Series 2014B Bonds were redeemed in full, the Debtor could build liquidity with excess cash up to 250 days' cash on hand with a 50/50

split to pay accrued interest on the Series 2014C Bonds, then principal. *Id.* In contrast, following consummation of the Revised First Amended Plan, the Debtor will be able to maintain approximately 350 days' cash on hand, which will put the Debtor in a better position to weather disruptions in cash flow going forward. *Id.* In addition to the 350 days' cash on hand, the LSA will be available to keep the Debtor in regulatory compliance and provide a buffer for unforeseen business disruptions. *Id.*

64.     The Debtor's financial success after consummation of the Revised First Amended Plan will, in significant part, be driven by its ability to consistently attract new residents. Fields Declaration ¶ 16. In addition to the financial restructuring described above, the Debtor is currently undertaking certain improvements to its operations and its marketing activities. *Id.* The Debtor has submitted for and expects to imminently secure regulatory approval of revised and additional forms of residency agreements, which will offer lower monthly service fees and lower entrance fees in exchange for fewer days of included assisted living, memory and skilled nursing care in the Debtor's Isaac H. Tuttle Health Center if and when such care is needed by the prospective resident. *Id.* These "Type B" contracts will make the Debtor significantly more appealing to segments of the market that would otherwise not have interest in the "Type A" contracts currently offered to prospective residents. *Id.* In particular, Type B residency agreements are expected to enhance marketing to prospective residents with long-term care insurance policies or other means to pay those expenses. *Id.*

65.     Furthermore, each of the Debtor, the 2014 Bond Trustee, and the Consenting Holders, along with their respective advisors, has scrutinized the Revised First Amended Plan and the financial projections in connection with the development of the Revised First Amended Plan. *See* Davis Declaration ¶ 24. As part of the restructuring process, the Debtor, the 2014 Bond

Trustee, and the Consenting Holders negotiated a consensual bond exchange (the "<u>Restructuring</u> <u>Transaction</u>") and the appurtenant Plan Support Agreement, both of which entailed voluminous correspondence among these parties and their respective legal and financial advisors. *Id.* During the negotiation of the Restructuring Transaction, the parties in interest extensively reviewed the Revised First Amended Plan, the Disclosure Statement, and the Financial Projections, and this negotiation process ultimately resulted in the terms incorporated into the Revised First Amended Plan. *Id.* As a result, there has been detailed review of the Revised First Amended Plan by multiple parties, many of whom will benefit from the Debtor's emergence from chapter 11 as a viable entity capable of paying its debts. *Id.* The fact that the Member and the Consenting Holders have agreed to support the Revised First Amended Plan is a testament to the Revised First Amended Plan's feasibility and likelihood of success. *Id.*

66.     For these reasons, the Revised First Amended Plan provides for an achievable reorganization, which exceeds the requisite showing that the Revised First Amended Plan has a reasonable likelihood of success. Accordingly, the Revised First Amended Plan satisfies the feasibility requirements of section 1129(a)(11) and should be confirmed.

**L.      All Fees Payable Under Section 1930 of Title 28 Have Been or Will Be Paid Under the Revised First Amended Plan (11 U.S.C. § 1129(a)(12))**

67.     Section 1129(a)(12) of the Bankruptcy Code requires that "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). Pursuant to Section 2.3 of the Revised First Amended Plan, all fees payable pursuant to section 1930 of title 28 of the United States Code will be paid in full by the Reorganized Debtor as they become due and owing. Accordingly, the Revised First Amended Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**M.    Section 1129(a)(13) Does Not Apply to the Revised First Amended Plan**

68.    Section 1129(a)(13) requires that a plan provide for the continuation of payment of all retiree benefits (as defined under section 1114 of the Bankruptcy Code) after the effective date.  The Debtor does not have obligations for "retiree benefits" within the meaning of section 1114 of the Bankruptcy Code.  *See* Davis Declaration ¶ 25.  Accordingly, section 1129(a)(13) of the Bankruptcy Code does not apply here.

**N.    Section 1129(a)(14) of the Bankruptcy Code Is Inapplicable to the Revised First Amended Plan**

69.    Section 1129(a)(14) of the Bankruptcy Code requires that "[i]f the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition."  11 U.S.C. § 1129(a)(14).  The Debtor owes no domestic support obligations and is not an individual.  *See* Davis Declaration ¶ 26.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Revised First Amended Plan.

**O.    Section 1129(a)(15) of the Bankruptcy Code Is Inapplicable to the Revised First Amended Plan**

70.    Section 1129(a)(15) of the Bankruptcy Code requires that:

> In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
>
> (A)    the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B)    the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the

plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15).  The Debtor is not an individual, and therefore, section 1129(a)(15) is inapplicable to the Revised First Amended Plan.  *See* Davis Declaration ¶ 27.

## P.    The Revised First Amended Plan Complies with All Applicable Provisions of Nonbankruptcy Law Governing Transfers of Property by Not-for-Profit Corporations (11 U.S.C. § 1129(a)(16))

71.    Section 1129(a)(16) of the Bankruptcy Code provides that:

> All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

11 U.S.C. § 1129(a)(16).  Section 1129(a)(16) "requires that any transfers of property by a not-for-profit corporation shall be made in accordance with any applicable provisions of nonbankruptcy law."  *In re Albert Lindley Lee Mem'l Hosp.*, No. 09-30845, 2010 WL 4739711, at *6 (Bankr. N.D.N.Y. July 15, 2010).  Here, other than payments of the claims of creditors permitted under applicable nonbankruptcy law, the Revised First Amended Plan does not provide for the transfer of any of the Debtor's assets.  *See* Davis Declaration ¶ 28.  The Debtor's primary regulators—the New York State Department of Health and the New York State Department of Financial Services—have been consulted throughout the restructuring process.  *Id.*  Under the Revised First Amended Plan, the Reorganized Debtor will continue to operate as a New York not-for-profit corporation and remain subject to all applicable laws regarding the use of its property. *Id.*  Accordingly, section 1129(a)(16) of the Bankruptcy Code is satisfied.

## Q.    The Revised First Amended Plan Satisfies the Cram Down Requirement Under Section 1129(b)

72.    Section 1129(b) provides a mechanism for confirming a plan where, as here, the requirements of section 1129(a)(8) are not satisfied.  Pursuant to §1129(b), a plan proponent may

only utilize "cram down" to confirm a plan over the objection of a dissenting impaired class of claims "if all of the applicable requirements of subsection (a) of [§1129] other than paragraph (8) are met with respect to the plan . . . ." and if the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the dissenting class.  11 U.S.C. §1129(b)(1).

73.    The "unfair discrimination" standard generally involves a comparison of the treatment given to similarly situated claimants and ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes.  *See, e.g., Kane v. Johns-Manville Corp.*, 843 F.2d at 650.  The Debtor respectfully submits that the Revised First Amended Plan does not discriminate unfairly because the Claims and Interests in Classes 1 through 7 are legally distinct from one another and are properly classified in separate classes under the Revised First Amended Plan.  *See* Davis Declaration ¶ 29.

74.    Further, a plan is "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.  *See* 11 U.S.C. § 1129(b)(2)(B)(ii) & (C)(ii); *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999).  The absolute priority rule is satisfied with respect to a class of impaired unsecured claims or interests so long as the holder of any claim or interest that is junior to the claims or interests of such class will not receive or retain any property under the plan on account of such junior claim or interest.  11 U.S.C. § 1129(b)(2)(B)(ii) and (C)(ii).

75.    The Revised First Amended Plan complies with the absolute priority rule because, as a non-profit, the Debtor does not have "equity holders," within the meaning of section 1129. *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202 (Bankr. W.D. Tex. 2008), *aff'd*, 632 F.3d 168 (5th Cir. 2011) (finding "[the] Plan does not provide for equity holders to receive or

retain an interest, because the Debtor, as a nonprofit organization, has no equity holders."). As the Revised First Amended Plan does not violate the "fair and equitable" requirement of section 1129(b)(1) with regard to the Class 4 (General Unsecured Claims) and does not unfairly discriminate against such class pursuant to section 1129(b)(1), the Revised First Amended Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

### R.    The Debtor Has Only Sought to Confirm One Plan Under § 1129(c)

76.    Section 1129(c) of the Bankruptcy Code provides that "the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144" of the Bankruptcy Code.  11 U.S.C. § 1129(c).  Other than the Revised First Amended Plan (including previous versions thereof), no plan has been filed in this Chapter 11 Case.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

### S.    The Revised First Amended Plan's Principal Purpose Is Not the Avoidance of Taxes (11 U.S.C. § 1129(d))

77.    Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."  11 U.S.C. § 1129(d).  The purpose of the Revised First Amended Plan is not to avoid taxes or the application of section 5 of the Securities Act.  *See* Davis Declaration ¶ 30.  Moreover, no governmental unit or any other party has requested that the Court decline to confirm the Revised First Amended Plan on such grounds.  Accordingly, the Revised First Amended Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

### T.    Section 1129(e) of the Bankruptcy Code Is Inapplicable in the Chapter 11 Case

78.    Section 1129(e) of the Bankruptcy Code provides that "[i]n a small business case, the court shall confirm a plan that complies with the applicable provisions of [the Bankruptcy Code] and that is filed in accordance with section 1121(e) not later than 45 days after the plan is

filed unless the time for confirmation is extended in accordance with section 1121(e)(3)." 11 U.S.C. § 1129(e).  The Chapter 11 Case is not a small business case.  *See* Davis Declaration ¶ 31. Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

### III.    The Discretionary Contents of the Revised First Amended Plan, Including the Releases, Are Appropriate

79.    Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a chapter 11 plan, including "any appropriate provisions not inconsistent with the applicable provisions of this title."  11 U.S.C. § 1123(b)(1)–(6).

80.    Section 105(a) of the Bankruptcy Code grants a bankruptcy court the broad authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a); *see also In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 657 (7th Cir. 2008) ("A bankruptcy court 'appl[ies] the principles and rules of equity jurisprudence and its equitable powers are traditionally broad.") (internal citations omitted); *In re Dow Corning*, 280 F.3d at 656 (same).

81.    Furthermore, section 1123(b)(6) of the Bankruptcy Code grants a bankruptcy court residual authority to approve a chapter 11 plan that includes "any . . . appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1123(b)(6); *Energy Res. Co.*, 495 U.S. at 549; *In re Airadigm Commc'ns, Inc.*, 519 F.3d at 657 ("[A] bankruptcy court is also able to exercise [its] broad equitable powers within the plans of reorganization themselves." (*citing* 11 U.S.C. § 1123(b)(6))); *In re Dow Corning*, 280 F.3d at 656 ("Consistent with section 105(a)'s broad grant of authority, the Code allows bankruptcy courts considerable discretion to approve plans of reorganization." (*citing Energy Res. Co.*, 495 U.S. at 549 and 11 U.S.C. § 1123(b)(6))).  In this instance, the compromises, settlements, discharges, releases, exculpations, and injunctions set forth in Section 11 of the Revised First Amended Plan:

(i) are made in exchange for good and valuable consideration, (ii) were integral to the agreements among the various parties, including the Plan Support Agreement, and are essential to the formulation and implementation of the Revised First Amended Plan, as provided in section 1123 of the Bankruptcy Code, (iii) confer substantial benefits on the Debtor's estate, (iv) are integral and non-severable from the Revised First Amended Plan, (v) are fair, equitable and reasonable, and (vi) are in the best interests of the Debtor, the Estate, the Reorganized Debtor, Holders of Claims or Interests, and other stakeholders.

### A.    The Releases Contained in the Revised First Amended Plan are Appropriate

82.    Section 11.2 of the Revised First Amended Plan provides for the release of certain claims held by the Debtor, the Estate, and the Reorganized Debtor (the "<u>Debtor Release</u>") and Section 11.3 provides for the release of certain claims held by Releasing Parties, subject to certain opt-outs (the "<u>Third-Party Release</u>").  The release provisions of the Revised First Amended Plan are fair to Holders of Claims or Interests and are necessary to the proposed reorganization, and are in exchange for, and are supported by, fair, sufficient, and adequate consideration provided by the parties receiving such releases and are a good faith settlement and compromise of the claims released, and comply with the Bankruptcy Code and applicable non-bankruptcy law.  *See* Davis Declaration ¶ 33.

### 1.    The Court Should Approve the Debtor Release

83.    Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, a plan may "provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate." 11 U.S.C.§ 1123(b)(3)(A).

84.     Section 11.2 of the Revised First Amended Plan (the "<u>Debtor Release</u>") provides that the Debtor, the Reorganized Debtor, and the Estate will release each Released Parties,[3] including each Consenting Holder, the 2014 Bond Trustee, and ACCHS, from claims arising from or related to the Chapter 11 Case.  The Bankruptcy Code specifically provides that a chapter 11 plan may provide for the "settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  *See* 11 U.S.C. § 1123(b)(3)(A).

85.     A plan that proposes to release a debtor's claim is considered a "settlement" for purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code.  *See, e.g.*, *In re WCI Cable, Inc.*, 282 B.R. 457, 469 (Bankr. D. Or. 2002) ("I find that the release and injunction provisions of . . . the WCI plan are submitted for approval by the court pursuant to § 1123(b)(3)(A) and [Bankruptcy Rule 9019(a)]"); *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 33 (2d Cir. 1995) (same); *In re WorldCom*, 2003 WL 23861928, at *39 (same); *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 947 (Bankr. S.D.N.Y. 1994) (same).  In reviewing the contemplated release by the Debtor of certain claims pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Court should be guided by the standard governing Bankruptcy Rule 9019, which requires that such settlement be fair and equitable and in the best interests of the debtor's estate.  *See In re Motors Liquidation Co.*, 447 B.R. 198, 220 (S.D.N.Y. 2011) ("Releases by estates . . . are perfectly permissible in a plan, either as parts of plan settlements or otherwise, though the court must satisfy itself (at least if anyone raises the issue) that the give-up is an appropriate exercise of business judgment, and, possibly, in the best interests of the estate").

---

[3] Under the Revised First Amended Plan, the term "Released Parties" means (i) the Debtor; (ii) the Reorganized Debtor; (iii) the 2014 Bond Trustee; (iv) the Consenting Holders; (v) the Member, (vi) the 2014 Issuer, (vii) the 2021 Bond Trustee; (viii) the 2021 Issuer, and (ix) Holders of all Claims.  *See* Revised First Amended Plan Section 1.1.

86.     The Debtor Release is in the best interests of the Debtor's estate.  Significantly, the Debtor and its advisors do not believe that there are any valuable or significant claims against the Released Parties.  *See* Davis Declaration ¶ 36.  As a result, the Debtor and its advisors believe that preserving causes of action against the Released Parties would likely result in little, if any, benefit to the Debtor or the Estate, but could result in material harm to the Debtor's reorganization efforts, as the consent of the Consenting Holders and the 2014 Bond Trustee to the Restructuring Transaction and the Revised First Amended Plan are predicated on the Debtor Release.  Davis Declaration ¶ 37.  If the Debtor had tried to preserve claims and causes of action against the Released Parties, then substantial bondholder consent to the Revised First Amended Plan and to the Restructuring Transaction would have been impossible to achieve.  *Id.*  The Debtor Release represents a valid settlement of whatever claims the Debtor may have against the Released Parties and a valid exercise of the Debtor's business judgment.  *Id.*  Accordingly, the Debtor Release should be approved.

### 2.      The Court Should Approve the Third-Party Release

87.     Section 11.3 of the Revised First Amended Plan in turn contains a release (the "Third-Party Release") of claims that holders of Claims against the Debtor may hold against the Released Parties.  Like the Debtor Release, the Third-Party Release is the product of arm's-length negotiations, is in exchange for substantial consideration, and has been critical to obtaining the support of the Consenting Holders and the 2014 Bond Trustee for the Revised First Amended Plan.  Moreover, the Third-Party Release is consensual in that all parties to be bound by the Third-Party Release have been given due and adequate notice of the Third-Party Release and were given sufficient opportunity and instruction to elect to "opt out" of the Third-Party Release by completing and timely returning a Ballot or timely filing an objection.  *Davis Declaration* at ¶ 39.  Further, (a) the release of the 2014 Bond Trustee and the Consenting Holders as of the Voting

Deadline by Holders of Claims and Interests is appropriate and necessary in light of such parties' active role in the formulation and prosecution of the Revised First Amended Plan, commitment to purchase Series 2021A Bonds to fund the Revised First Amended Plan, agreement to exchange their 2014 A and B Bonds for Series 2021B Bonds at a discount, and agreement to cancel their 2014 C Bonds without any payment or consideration and (b) the release of the Member by Holders of Claims and Interests is appropriate and necessary in light of the Member's active role in the formulation and prosecution of the Revised First Amended Plan, contribution of $9 million to fund the Revised First Amended Plan pursuant to the Member Contribution Agreement, and provision of $9 million of liquidity support pursuant to the LSA.

88.     In the Second Circuit, third party releases are enforceable if the affected creditors consent.  *See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) ("Nondebtor releases may also be tolerated if the affected creditors consent."); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007) ("The Seventh Circuit held in *Specialty Equipment* that consensual releases are permissible, and the *Metromedia* court did not quarrel with that view").  Furthermore, if a release contained in a proposed chapter 11 plan is appropriately disclosed, then an affected creditor's consent to the release can be established by that creditor's vote in favor of the plan.  *In re Adelphia Commc'ns Corp.*, 368 B.R. at 268.  Here, the Third Party Release was conspicuously disclosed in bold-faced type on the Court-approved ballots contained in the Solicitation Packages, and the ballots clearly instructed creditors voting in favor of the Revised First Amended Plan to mark the appropriate box if they did not wish to be bound by the Third Party Release.  *See* Disclosure Statement Order, Ex. 2 (Ballots).  Accordingly, the Third Party Release is consensual and should be approved.

**B.     The Exculpation Provision is Appropriate and Should Be Approved**

89.     Section 11.4 of the Revised First Amended Plan contains a customary exculpation provision (the "Exculpation Provision") that, with certain limitations, protects the Exculpated Parties[4] from liability that might arise from the administration of the Chapter 11 Case.  *See* Revised First Amended Plan, Section 11.4.  The Exculpation Provision has no effect on liability that results from gross negligence or willful misconduct and does not apply to any acts or omissions expressly set forth in the Revised First Amended Plan.  *Id.*

90.     Limited exculpation provisions that exculpate parties instrumental to the administration of a chapter 11 case are viewed as "reasonable and customary" in the Second Circuit.  Courts have recognized that, without the protections afforded by limited exculpation provisions, "negotiation of a [plan of reorganization in a chapter 11 case] would not . . . [be] possible."  *In re Enron Corp.*, 326 B.R. 497, 501 (S.D.N.Y. 2005) (endorsing the findings of the bankruptcy court concerning the propriety and justification for the limited exculpation provision contained in debtor's chapter 11 plan); *In re Oneida Ltd.*, 351 B.R. 79, 94 n.22 (Bankr. S.D.N.Y. 2006) (exculpation provision contained in chapter 11 plan that provided for release of prepetition and postpetition claims related to various matters associated with confirmation of chapter 11 plan "sufficiently narrow to be unexceptionable").  Similarly, in *In re PWS Holding Corp.*, the United States Court of Appeals for the Third Circuit recognized that exculpation provisions for parties that have participated in the formulation of the plan are "commonplace . . . in chapter 11 plans." *In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000).

---

[4] Under the Revised First Amended Plan, the term "Exculpated Parties" means (a) the Debtor; (b) the Reorganized Debtor; (c) the 2014 Bond Trustee; (d) the Consenting Holders; (e) the Member, (f) the Creditors' Committee, and (g) the members of the Creditors' Committee.  *See* Revised First Amended Plan, Section 1.1.

91.     Based on widely accepted and developed precedent, the Exculpation Provision is wholly justified, properly limited, and should be approved.   The Exculpation Provision is appropriately crafted so as to protect only those parties whose efforts have been instrumental in connection with the formulation and development of the Revised First Amended Plan and who have made a substantial contribution to the overall Chapter 11 Case.  Courts in the Second Circuit, including this Court, routinely approve exculpation provisions similar in scope in various respects to the Exculpation Provision.  *See, e.g.*, *In re Rubie's Costume Company, Inc., et al.*, Case Nos. 20-71970 thru 20-71975 (AST) (Bankr. E.D.N.Y. Oct. 7, 2020) [Docket No. 724] (approving exculpation of the debtor and the creditors' committee, among others); *In re Absolut Facilities Management, LLC, et al.*, Case No. 19-76260 (AST) (Bankr. E.D.N.Y. May 18, 2020) [Docket No. 583] (approving exculpation of DIP lender, along with debtor, debtor's estate and creditors' committee); *In re: Orion Healthcorp, Inc., et al.*, Case No. 18-71748 (AST) (Bankr. E.D.N.Y. Feb. 26, 2019) [Docket No. 701] (confirming plan with exculpation of secured lenders, administrative agent and liquidating trustee); *In re Interfaith Medical Center, Inc.*, Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. June 11, 2014) [Docket No. 1158] (approving exculpation of the debtor and the creditors' committee, among others); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Mar. 14, 2014) [Docket No. 1225] (confirming plan containing exculpation of debtor's pre-petition first-lien lenders and the prepetition first-lien indenture trustee); *see also In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. Dec. 11, 2013) [Docket No. 6066] (approving exculpation of certain prepetition lenders); *In re Almatis, B.V.*, No. 10-12308 (Bankr. S.D.N.Y. Sept. 20, 2010) [Docket No. 444] (approving exculpation of debtors' prepetition lenders and holders of senior secured notes for both prepetition and postpetition conduct); *In re Uno Rest. Holdings Corp.*, No. 10-10209 (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 559] (approving

exculpation of certain prepetition lenders from liability related to acts taken, including, "in connection with, or arising out of, the Chapter 11 cases . . . [or] the formulation, dissemination, confirmation, consummation, or administration of the Plan"); *In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395 (BRL) 2007 WL 2779438, at *8 (Bankr. S.D.N.Y. Sept. 17, 2007) (exculpation of prepetition noteholders and new investors); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (exculpation of controlling shareholder as well as estate fiduciaries); *In re Enron Corp.*, 326 B.R. at 500 (upholding exculpation provision that precluded liability for, inter alia, "any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 cases").

92.     Accordingly, the Exculpation Provision should be approved.

**C.     The Injunction Provision is Appropriately Tailored to Implement the Revised First Amended Plan and Should be Approved**

93.     The Revised First Amended Plan generally enjoins all persons or entities from commencing or continuing any suit, action, or other proceeding related to the Claims, Interests, or Liens discharged by, released by, or subject to exculpation under the Revised First Amended Plan (the "<u>Injunction</u>").  *See* Revised First Amended Plan, Section 11.6.  An injunction is a standard provision of any plan with releases and is authorized by the Bankruptcy Code.  *See* 11 U.S.C. § 524(g).  Here, the Injunction is narrowly tailored to achieve its purpose and, as authorized by the Bankruptcy Code, simply puts into effect the discharge, release, and exculpation provisions of the Revised First Amended Plan.  *See* Davis Declaration ¶ 41.  Similar injunctions have been approved by courts, including this Court, in other chapter 11 cases in this district to effectuate release and exculpation provisions.  *See, e.g.*, *In re Rubie's Costume Company, Inc., et al.*, Case Nos. 20-71970 thru 20-71975 (AST) (Bankr. E.D.N.Y. Oct. 7, 2020) [Docket No. 724]; *In re: Absolut Facilities Management, LLC, et al.*, Case No. 19-76260 (AST) (Bankr. E.D.N.Y. May 18, 2020)

[Docket No. 583]; *In re: Orion Healthcorp, Inc., et al.*, Case No. 18-71748 (AST) (Bankr. E.D.N.Y. Feb. 26, 2019) [Docket No. 701]; *In re: Interfaith Medical Center, Inc.*, Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. June 11, 2014) [Docket No. 1158]; *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Mar. 14, 2014) [Docket No. 1225]; *see also In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. Dec. 11, 2013) [Docket No. 6066]; *In re Almatis, B.V.*, No. 10-12308 (Bankr. S.D.N.Y. Sept. 20, 2010) [Docket No. 444]; *In re Uno Rest. Holdings Corp.*, No. 10-10209 (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 559]; *In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395 (BRL) 2007 WL 2779438, at *8 (Bankr. S.D.N.Y. Sept. 17, 2007).

94.      Section 11.6 of the Revised First Amended Plan provides an injunction that, in general, enjoins the prosecution of any claim or Cause of Action released pursuant to the Revised First Amended Plan.  The injunction is necessary to effectuate the Revised First Amended Plan's releases, discussed above, and to protect the Reorganized Debtor from potential litigation by prepetition creditors as it implements the Revised First Amended Plan after the Effective Date. Such litigation could hamper the efforts of the Reorganized Debtor to effectively fulfill its responsibilities as contemplated by the Revised First Amended Plan and thereby to protect the interests of residents and maximize value for all holders of Claims.

## WAIVER OF STAY OF CONFIRMATION ORDER

95.      Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  Bankruptcy Rule 7062(a), which incorporates Rule 62 of the Federal Rules of Civil Procedures, provides that "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after is entry."  Fed. R. Bankr. P. 7062(a).

96.     The Plan Support Agreement requires a September 8, 2021 Effective Date. The Debtor and its professionals have taken all required steps to be prepared to issue the new bonds in a timely fashion.  It is respectfully requested that the Court provide relief under Bankruptcy Rule 3020(e).


[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

For all of the reasons set forth herein and in the Declarations, the Debtor respectfully requests that the Bankruptcy Court enter an order confirming the Revised First Amended Plan, overruling any objections to confirmation of the Revised First Amended Plan, and granting such other and further relief as is just and proper.

Dated:  August 20, 2021
       New York, New York

**SIDLEY AUSTIN LLP**

/s/ *Thomas R. Califano*
Thomas R. Califano
William E. Curtin
Shafaq Hasan
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
Email: tom.califano@sidley.com
      wcurtin@sidley.com
      shafaq.hasan@sidley.com

   – and –

Jackson T. Garvey
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (212) 853-7036
Email: jgarvey@sidley.com

COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION